UNITED STATES DICTRICT COURT
DISTRICT OF RHODE ISLAND

SHIRLEY SCHUMACHER }
Plaintiff, }
v. }
FAIRFIELD RESORTS INC., a foreign Corporation doing business in RI and }
CORE INC., a foreign Corporation doing Business in RI ; and A,B,C: Unknown, }
Defendants, }

CIVIL ACTION NO. 05-500T

**OBJECTION TO MOTION FOR SUMMARY JUDGEMENT**

Shirley Schumacher ("Schumacher"), through counsel hereby objects to the Motion for Summary Judgment filed by Fairfield Resorts, Inc. ("Fairfield"), in its entirety in that there are material facts in dispute that would deny a summary judgment motion as a mixed question of fact and law. In support hereof, Schumacher submits the accompanying Memorandum of Law and the accompanying Statement of Disputed Material Facts with Appendix of Exhibits.

Plaintiff Shirley Schumacher
By her Attorneys

Keven A. McKenna for (MLS)

Keven A. McKenna #662
McKenna Law, PC
23 Acorn Street
Providence, Rhode Island 02903
(401) 273-8200

And

Michael L. Solitro *(Pro Hac Vice)*
553 Dyer Avenue
Cranston, Rhode Island 02920
(401) 946-0877

DATE; August 10, 2006

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on August 10th, 2006, I caused a true copy of the forgoing to be served by first class mail, postage prepaid, to the following counsels of record:

John D. Doran, Esq.
Edwards Angel Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903

Timothy M. Bliss, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Michael J. Solitro

UNITED STATES DICTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHIRLEY SCHUMACHER<br>Plaintiff,<br>v.<br>FAIRFIELD RESORTS INC., a foreign Corporation doing business in RI and CORE INC., a foreign Corporation doing Business in RI; and A.B.C: Unknown,<br>Defendants, | }<br>}<br>}<br>}<br>}<br>} | CIVIL ACTION NO. 05-500T |

**MEMORANDUM OF SHIRLEY SCHUMACHER IN SUPPORT OF HER OBJECTION TO FAIRFIELD RESORTS, INC.'S MOTION FOR SUMMARRY JUDGMENT**

## I. FACTS

Plaintiff Shirley Schumacher ("Schumacher") was employed at Fairfield Resorts or its predecessor for approximately five and one half years. At the time of her demotion from sales manager to sales associate she was sixty-three years old. (Schumacher Affidavit¶ 2) In September 2003 Joseph Hutnick ("Hutnick") became her supervisor.

In late January 2004 shortly before Schumacher left for a scheduled vacation she had meeting with Hutnick and he advised her that Wisconsin had an Exit program that was doing very well. In an effort to learn if the successful Wisconsin Program was doing something that wasn't being done by Fairfield. Schumacher called Wisconsin and was told her that they did not have an Exit Program and that things were very slow. When Schumacher went to Hutnick and told him what Wisconsin had told her he became very angry and asked her why she had called Wisconsin. Schumacher responded by telling

him she wanted to improve her performance and that of the Exit program Hutnick became angry called her a "cunt" and walked away. (Schumacher Deposition, p.77)

Following this incident Schumacher complained to Fairfield employees Lemlar and Coppa that Hutnick had called her a "cunt" and "bitch" Both Lemlar and Coppa reported to Hutnick what Schumacher had told them. (Schumacher Deposition, p.88; Schumacher Affidavit Exhibit 4) Before Schumacher left for her scheduled vacation Hutnick told her that when she returned that she would no longer be manager. (Schumacher Deposition, p. 106) Schumacher went to Florida for vacation but was unable to relax and became more depressed over the demeaning incidents with Hutnick. Consequently, she quit her vacation early returned to Rhode Island and sought the care of her physician Dr. James D. Gloor.

Dr. Gloor began treating her for stress that Schumacher contributed to her hostile work environment. (Deposition of Dr. James D. Gloor ("Gloor Deposition") pp 9-13; attaced hereto as Exhibit C) Dr. Gloor provided Schumacher with a disability certificate indicating that she could not work from February 11, 2004 through April 11, 2004 which was provided to Hutnick. (Schumacher Deposition, pp. 92-93; (Schumacher Affidavit, Exhibit 8) Schumacher also contacted Jan Weber, Leave and Disability Coordinator at Fairfield to notify her that she would be requiring a leave of absence which Fairfield authorized. (Schumacher Deposition, p. 97; Schumacher Affidavit, Exhibit 7)

On February 26, 2004 Schumacher did contact Core, Inc. ("Core") to tell it that she was not making application to Core for short term-disability that she had elected instead to receive Temporary Disability Insurance ("TDI") through the policy provided

by the State of Rhode Island because she would receive more money. (Schumacher Deposition, pp.130-131; Schumacher Affidavit, Exhibit 18)

Fairfield contacted Schumacher by letter dated March 16, 2004 it was a Medical Leave of Absence Notification letter from Jan Weber advising her to have the attached Medical Certification Form completed by her physician and then return it. The letter stated that Fairfield would determine the length of approved leave based upon the information provided on the form. (Schumacher Deposition, pp.100-101; Schumacher Affidavit, Exhibits, 9, 14)

Fairfield again contacted Schumacher by telephone on March 30, 2004 Schumacher advised the caller that she had the forms for Dr. Gloor and that she would see him on the 9th and bring back on the 11th the caller advises Schumacher "OK". (Schumacher Affidavit, ¶ 14 exhibit 10)

Schumacher provided Jan Webber, Fairfield's Leave and Disability Coordinator with a note stating that her doctor would be mailing her all the information she needed. Schumacher also provided a Disability Certificate stating that She was totally disable from April 10,2004 through May 11,2004.(Schumacher Affidavit, ¶ 15, Exhibit 11)

Dr. Gloor sent Schumacher's Certification Forms to Fairfield. (Schumacher Deposition pp. 97-99; Schumacher Affidavit, ¶ 16) On April 16, 2004 a Physician's Certification form bearing Dr. Gloor's signature was mailed by his office. (Gloor Deposition, p. 35) (Schumacher Affidavit, ¶ 17; Exhibit, 13)

Fairfield received this Physicians Certification Form and produced it as part of Schumacher's personnel file. Schumacher Affidavit, ¶17; Exhibit, 13) Medical Certification Forms like Schumacher's were usually mailed by Dr. Gloor's office.(Gloor

Deposition, pp. 28-29) Fairfield received this Medical Certification Form and produced it as part of Schumacher's personnel file. Schumacher Affidavit, ¶ 18, Exhibit, 14)

In a letter dated April 20, 2004 Core denied Schumacher's FMLA application because it did not receive a Medical Certification. (Schumacher Affidavit, ¶20; Exhibit, 16) Hutnick terminated Schumacher in a letter dated April 21, 2004. (Schumacher Affidavit, ¶21; Exhibit, 17) The reason given for her termination was Core denied her FMLA application. (Schumacher Affidavit, ¶19; Exhibit, 15)

## II. **ISSUES**

1. Whether Schumacher presents sufficient facts to establish Age and Sex were a motivating factor for Discrimination?
2. Whether Schumacher presents facts sufficient to establish that she was subjected to a Hostile Work Environment?
3. Whether Schumacher's Hostile Work Environment claim is barred as a matter of law.
4. Whether Schumacher presents facts sufficient to establish that Fairfield interfered with her entitlement to FMLA and PFMLA leave.
5. Whether Schumacher's Retaliation claims should be dismissed for failing to exhaust administrative remedies?
6. Whether Schumacher presents facts sufficient to establish a Prima Facie Case of Retaliation?
7. Whether Schumacher present facts sufficient to show a causal connection?
8. Whether Schumacher's Breech of Contract claim should be dismissed because she was an employee at will?
9. Whether Summary Judgment is appropriate in this case?

## II. ARGUMENT

### A. Age an Sex were motivating factors in Schumacher's discharge

A Plaintiff may establish an unlawful employment practice by demonstrating that discrimination was a motivating factor for the challenge employment practice, even though other factors also motivated the practice. Desert Palace, Inc. v. Costa 590 U.S. 90 (2003) Direct evidence is not required to prove employment discrimination in a mixed- motive case. Estades-Negroni v. Assocs. Corp. 345 F. 3d 25 (1st Cir. 2003)

Joseph Hutnick, ("Hutnick") Schumacher's supervisor called her as an "old cunt" and ("bitch"). Schumacher Affidavit, ¶ 6) She complained to fellow employees about what Hutnick had called her. (Schumacher Deposition p.88; Schumacher Affidavit, Exhibit, 4) Shortly after learning of her complaint Hutnick demoted her from Sales Manager to Sales Associate ultimately terminating her employment. . Schumacher Affidavit, ¶21; Exhibit, 17)

### B. 1. Hutnicks's offensive comments and subsequent demotion of Schumacher created a hostile work Hostile Environment

Fairfield asserts that because Schumacher did not complain of a hostile environment that it has an affirmative defense to Schumacher's claim of hostile environment.

However, Schumacher did complain of harassment by Hutnick her supervisor to co-workers who reported her complaint to Hutnick. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) Hutnick made a report of the complaint of harassment and entered it into Schumacher's personnel file providing Fairfield notice or constructive notice that Schumacher had complained of harassment by Hutnick. (Schumacher Affidavit, Policy Manual, Access to Personal Files, Exhibit 2) The harassment report submitted by Hutnick stated Schumacher had accused him of calling her an "Old cuss and bitch" (Schumacher Affidavit, Exhibit 3) shortly after learning of her complaint

Hutnick demoted her from Sales Manager to Sales Associate. Demotions are generally tangible employment actions. Duram Life Ins. Co. v. Evens, 166 F.3d 139 (3rd Cir. 1999) the above harassment caused Schumacher stress sufficient to warrant her physician to classify her as disabled and unable to work.

**B. 2. Schumacher's claims not barred by Faragher and Ellerth**

The humiliating comments Hutnick made to Schumacher and his subsequent demotion of Schumacher deny Fairfield the benefit of an affirmative defense. Id. Ellerth 524 U.S. at 764- 76

Time and experience had shown Schumacher that the anti-harassment hot line Fairfield provided did not work. (Schumacher Deposition, 47) Other than receiving the policy manual itself Schumacher received no training or was she familiarized by Fairfield with the meaning of its contents. Despite an extensive list of policies and procedures promulgated by Fairfield. (Schumacher Affidavit. Exhibit 2, Policy Manual) Schumacher a manager never saw anti - harassment notices posted on a bulletin board and received no formal instruction in matters relating to policies and procedures. (Schumacher Deposition, p.49.)

**C. Schumacher was entitled to FMLA and RIPFMLA**

On February 26, 2004 Schumacher did contact Core, Inc. ("Core") to tell it that she was not making application to Core for short term-disability. She had elected instead to receive Temporary Disability Insurance ("TDI") through the policy provided by the State of Rhode Island because she would receive more money. (Schumacher Deposition, pp.130-131; Schumacher Affidavit, Exhibit 18) She had no further contact with Core until April 30, 2004. (Schumacher Affidavit, Exhibit 18)

. Fairfield provided Schumacher with her Medical Leave application form and Dr. Gloor returned it to Fairfield.(Schumacher Deposition, pp.100-101; Schumacher Affidavit,

Exhibits, 9, 14) Dr. Gloor sent all Schumacher's Certification Forms to Fairfield. (Schumacher Deposition pp. 97-99; Schumacher Affidavit, ¶ 16) On April 16, 2004 Dr.Gloor's office mailed a Physician's Certification form bearing Dr.Gloor's signature (Deposition of James D. Gloor("Gloor Deposition"),p. 35; attached hereto as Exhibit B; Schumacher Affidavit, ¶ 17; Exhibit, 12).

As stated above, Fairfield received a copy of the Physicians Certification Form dated April 16, 2004 and produced it as part of Schumacher's personnel file. Fairfield also received Schumacher's Medical Certification Form and produced it as part of Schumacher's personnel file.

In short, Fairfield terminated Schumacher for not supplying Medical information to Core. Despite Schumacher supplying that information to Fairfield as Fairfield requested and despite the undisputed fact Fairfield and not Core was the entity managing Schumacher's FMLA and RIPFMLA application.

Schumacher believed that Fairfield was processing her FMLA application based upon Fairfield's statements and conduct. Both Fairfield and Core said or did anything to suggest to Schumacher that by cooperating with Fairfield regarding her FMLA application that she would be jeopardizing her entitlement to FMLA protected leave. Therefore, Fairfield should not be permitted to use Schumacher's failure to provide a Medical Certification Form to Core as a justification to deny her FMLA protection and terminate her employment. "An employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave". Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579,582 (7th Cir.2000)

**Schumacher's Retaliation Claims**

1. Title VII

Schumacher complained before the Equal Opportunity Commission ("EEOC") of discriminatory treatment and harassment by Fairfield.(Amended Complaint, Exhibit 1.) Her claim that Hutnick retaliated against her for complaining that he discriminated against her is related to the complaint she made before the EEOC. "Retaliation Claims are preserved as long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency." Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 3 (1st Cir. 2003)

To prove retaliation under VII Schumacher must establish that (1) she engaged in protected activity (2) she suffered an adverse employment action after or contemporaneous with such activity (3) there exist a causal link between the protected activity and the adverse job action. Wyatt v.City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)

Here, Schumacher complained to fellow employees of being sexually harassed by her supervisor Hutnick. That complaint was reported to Hutnick who entered it into of her personnel file. Shortly thereafter, Hutnick demoted and terminated Schumacher's employment. Schumacher's complaint to co-workers is protected activity since she reasonably believed that the conduct she opposed violated Title VII. Benoit v. Tech. Mfg. Corp., 331 F.3d 1669 (1st Cir. 2003)

2. **FMLA - RIPFMLA**

To make out a prima facie case of retaliation, Schumacher must show (1) that she was engaged in a protected activity (here requesting FMLA leave); (2) that she suffered an adverse employment action (here being fired); (3) that there was some possibility of a causal connection between the employees protected activity and the employers adverse employment action, in that

the two were not wholly unrelated. Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir.1998).

Here, Schumacher requested FMLA leave from Fairfield. (Schumacher Affidavit, Exhibit 9) She received a letter dated April 21, 2004, from Fairfield terminating her employment. (Schumacher Affidavit, Exhibit 15) Fairfield terminated her employment because Core denied her FMLA application. (Schumacher Affidavit, Exhibit 15)

**E. Schumacher's Contract Claim**

Schumacher disputes Fairfield's claim that her employment was at-will and asserts that she entered into a written employment agreement with Fairfield on February 13, 2003. (Schumacher Affidavit, ¶ 3, Exhibit 1) Schumacher submits this agreement established an employment contract with Fairfield. Employment at will is a rule of construction, not a substantive limitation on contract formation. (inference that employment is terminable at –will may be rebutted by the specific terms of the agreement); Toussaint v. Blue Cross & Blue Shield of Michigan, 292 N.W.2d 880, 884 (1980)

Here, Schumacher argues that her agreement with Fairfield contains express and implied terms sufficient for the formulation of an employment contract. Specifically, the Indemnification clause contained in ¶ 7 pp. 3-4, ; the Covenant not to Compete, pp 5-6 ¶ 11 and ¶¶ 14, 15 of the agreement.

Lastly, Fairfield list conduct which is strictly prohibited in its employee manual that is subject to immediate termination. (Fairfield Policy Manual (Standards of Work Related Behavior) Schumacher Affidavit Exhibit, 2) Employee manuals that list types of misconduct that could result in discharge imply that just cause is required. Witkowski v. Thomas J. Lipton, Inc. 643 A.2d 546, (1994)

Schumacher if an at-will employee argues that Fairfield breeched its covenant of good faith and fair dealing. Here, following Schumacher's complained of discriminatory harassment by her supervisor. She was demoted, denied her FMLA entitlement and terminated. Where an employer discharges an employee for reporting employer conduct that violates an express statutory standard an at-will employee possesses a cause of action in tort against the employer. Cummins v. EG&G Sealol, Inc., 690 F.Supp, 134, 139 (D.R.I. 1988).

**D. Fairfield should be estopped from denying that its promise of equal treatment in all aspects of employment is unenforcible.**

Schumacher argues that Fairfield should be estopped from denying its written personnel policy promising not to discriminate and provide equal opportunity to all employees in every aspect of employment is unenforceable. That she relied on this promise to her detriment when she complained of harassment by her supervisor and subsequently demoted, denied her FMLA entitlement and terminated her. A written personnel policy promising non-discrimination and equal employment opportunity has been held to create an enforceable contract right. Stahl v. Sun Microsys., 19 F.3d 533 (10th Cir. 1994)

**E. Schumacher's Public Policy claim**

Where an employer discharges an employee for reporting employer conduct that violates an express statutory standard an at-will employee possesses a cause of action in tort against the employer. Cummins v. EG&G Sealol, Inc., 690 F.Supp, 134, 139 (D.R.I. 1988).
Here, following Schumacher's complained of discriminatory harassment by her supervisor. She was demoted, denied her FMLA entitlement and terminated

## SUMMARY JUDGMENT SHOULD BE DENIED IN THIS CASE

Schumacher has shown there are genuine issues of material facts in dispute that would preclude summary judgment.

**Conclusion**

For the foregoing reasons Fairfield's request for summary judgment should be denied

Respectfully submitted,

Plaintiff Shirley Schumacher
By her Attorneys

Keven A. McKenna (for MLS)

Keven A. McKenna #662
McKenna Law, PC
23 Acorn Street
Providence, Rhode Island 02903
(401) 273-8200

And

Michael L. Solitro *(Pro Hac Vice)*
553 Dyer Avenue
Cranston, Rhode Island 02920
(401) 946-0877

Dated: August 10, 2006

## CERTIFICATE OF SERVICE

I the undersigned, hereby certify that on August 10th 2006 I caused a true copy of the foregoing to be mailed first class postage pre-paid to the following counsel of record:

John D. Doran, Esq.
Edwards Angel Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903

Timothy M. Bliss, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Michael L. Solitro

Michael L. Solitro, Esq.