UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHIRLEY SCHUMACHER,
Plaintiff

VS. C.A NO. 05-500T

FAIRFIELD RESORTS, INC.,
a foreign Corporation doing
business in RI and CORE, INC.,
a foreign Corporation doing
business in RI; and
A, B, C; Unknown,
Defendants

DEPOSITION of JAMES D. GLOOR, M.D., a witness in the above-entitled cause, taken on behalf of the Defendant, Fairfield Resorts, Inc., before Lori L. Spremulli, Notary Public, R.P.R., in and for the State of Rhode Island, at the office of James D. Gloor, M.D., Wickford Junction Medical Walk-In, located at 1051 Ten Rod Road, Unit B, North Kingstown, Rhode Island 02903, on Friday, June 9, 2006, at 10:00 A.M.

PRESENT,
FOR THE PLAINTIFF,
M. L. SOLITRO & ASSOCIATES
BY: MICHAEL L. SOLITRO, ESQ.
FOR THE DEFENDANTS,
EDWARDS ANGELL PALMER & DODGE, LLP.
BY: JOHN D. DORAN, ESQ.
FOR: FAIRFIELD RESORTS, INC.
- and -
VETTER & WHITE
BY: TIMOTHY M. BLISS, ESQ.
FOR: CORE, INC.

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RI 02920
(401) 946-5500

February 11th of 2004?
A. Okay.
Q. And near the top of that document under the section labeled complaint, there are typed letters which say, patient states she is here for stress; do you see that?
A. Yes.
Q. Do you know who would fill out that part of the form?
A. That would be the medical secretary taking the complaints at the front desk.
Q. So that would be based on information that was supplied by Ms. Schumacher; correct?
A. By the patient, correct.
Q. And the next shaded section down is entitled nursing notes, and there is handwriting in there; would that be filled out by the nurse?
A. The nurse or nursing assistant.
Q. The statement there says, patient states she is having problems at work with employees being/making her feel uncomfortable that the stress is -- I believe that says -- overwhelming to her, and it states, "she is very shaky," do you see that?
A. Yes.
Q. That would be a nurse that would fill that out?
A. Yes.
Q. Now, the statement which says, she is very shaky, do

Q. Do you know if those statements by Ms. Schumacher were accurate or not?
A. I do not, I have to take the patient's story at face value.
Q. Did she have any -- I guess we talked about this -- physical manifestations of the stress -- you mentioned --
A. She had a deer-in-the-headlights look to her. You can often tell an individual who is under extreme stress by just their demeanor, and her demeanor was deer in the headlights, wide-eyed, tremors, voice shaky physically, tremors, teary, and I noted teary as one of my objective findings, and having had the nurse already note tremors, it was agreed that that was part of the physical finding.
Q. Continuing on to this medical record of February 11th of '04, there is a section on the bottom that says, light duty and total disability, do you see that?
A. Yes.
Q. And there is a notation next to it or above total disability that says, I believe that says, TDI; do you see that?
A. Yes, at the time, I recommended that she go on TDI, it being difficult to often establish a Workers' Compensation cause for stressors.

ɔn if not all of its details, ıs well to this part of ıckson directly governs his · U.S.S.G. § 3B1.1.

the amount of drug sales, l have preferred more de- from the district court ex- reached the calculations it ɜ Ellis a total offense level ubstantive counts), we are he record as a whole sup- .dings. The relevant con- U.S.S.G. § 1B1.3(a)(1), re- ·t to take into account not lant's personal conduct, but ıtities of contraband that ly foreseeable to him that ɜ scope of the joint criminal ıpplication Note 2. The dis- ·w this, it knew what was ɜseeable to the Governors, v large the operations were, ɔ can stand.

Ellis says that the court ven him a criminal history instead of a II. At offense criminal history category ɜrence anyway, because all carry the same Guideline ·e in prison. In addition, ıt is based on the fact that ·iminal history points was ·gravated assault charge for ·ed six months' supervision the record does not show d guilty to the charge, and supervision was based on than an admission or adm t. We think he is probably because Illinois permits r on a formal plea of guilty, ɔn by the defendant of the ıg the charge," as well as of guilt. 730 ILCS 5/5- ılation option appears to be nclusive as a plea of guilty wever, and those pleas, a v conviction of an offense .S.S.G. § 4A1.2(a). In any the point made no diff

ance to his sentence, any error the court may have committed was harmless.

D. Pink

[41] Pink makes three arguments about his sentence, in which he challenges (1) the enhancement he received for use of a gun under U.S.S.G. § 2D1.1(b)(1); (2) the leadership enhancement he received under U.S.S.G. § 3B1.1(b); and (3) his criminal history calculation. Accepting his first argument would require us to find that it was not reasonably foreseeable to him that guns were being used in the GD conspiracy. With all respect, such a finding would be impossible to make, even without taking into account the fact that this is another issue we review only for clear error. See *United States v. Taylor,* 111 F.3d 56, 59 (7th Cir.1997). With respect to the second argument, Pink asserts that the judge should have made specific findings about which participants were under his supervision. What the court said instead, referring to "Pink's Alley," was "That alley was running full blast with people all over it and they were working for him, and, however we get there, there's ample evidence to say five." The evidence supports the court's observation. Furthermore, § 3B1.1 also permits the three-level increase if the defendant "exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.*, Application Note 2. Pink managed "Pink's Alley" and thus qualified in this way for the enhancement as well.

[42] Last, Pink was assigned two criminal history points for two separate 1984 state charges for felony possession with intent to distribute marijuana. Pink says that these convictions were part of the same GD drug distribution conspiracy at issue here. He notes that the GD conspiracy allegedly began in the early 1970s, that the GDs controlled the neighborhood where Pink committed the earlier crimes, and that Pink was even then in their employ. The government responds that there is no evidence that Pink joined the GDs before 1990 or so, that there is no evidence that the earlier crimes took place in the same geographical area as his crimes here, and that the marijuana convictions were part of the same plan as the GD conspiracy. The district court was entitled to take the government's view of the evidence here. Indeed, Pink does not squarely admit that he was a GD at the earlier time, undoubtedly for good reason.

IV

In the end, therefore, we find no merit in any of the arguments any of the defendants have raised. This was a complex proceeding for all concerned: the prosecutors, defense counsel, the district court, and now us. We commend the lawyers who were appointed to represent these defendants for their vigorous efforts to do so. For the reasons stated, however, we Affirm the convictions and sentences of all seven appellants.

**Jennifer DORMEYER, Plaintiff–Appellant,**

**v.**

**COMERICA BANK-ILLINOIS, et al., Defendants–Appellees.**

**Nos. 99–1089, 99–3252.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 2000

Decided July 24, 2000

Former employee brought action against former employer under Family and Medical Leave Act (FMLA), Pregnancy Discrimination Act (PDA), and Fair Labor Standards Act (FLSA). After former

employee accepted offer of judgment on FLSA count, the United States District Court for the Northern District of Illinois, David H. Coar, J., 1998 WL 729591, entered summary judgment for former employer on remaining counts. The same Court, 1999 WL 608771, granted in part and denied in part former employee's motion for costs and attorney fees under FLSA. Former employee appealed. The Court of Appeals, Posner, Chief Judge, held that: (1) Department of Labor regulation, providing that employee would be deemed eligible for FMLA leave if employer failed to advise employee whether he or she was eligible for leave prior to date requested leave was to commence, was invalid; (2) employer did not violate PDA in terminating employee for excessive absenteeism during her pregnancy; and (3) order awarding $6,216 in costs and attorney fees under FLSA, rather than the almost $35,000 requested, was appropriate.

Affirmed.

**1. Civil Rights ⚷143**

Department of Labor regulation, providing that employee would be deemed eligible for FMLA leave if employer failed to advise employee whether he or she was eligible for leave prior to date requested leave was to commence, was invalid; regulation did not address interpretive issue that FMLA left open, FMLA's text was clear and covered the issue, and regulation was unreasonable in that it would allow employee to be eligible for leave without working 1,250 hours during 12 months preceding requested leave even if employer's conduct had not induced detrimental reliance. Family and Medical Leave Act of 1993, § 101(2)(A)(ii), 29 U.S.C.A. § 2611(2)(A)(ii); 29 C.F.R. § 825.110(d).

**2. Statutes ⚷219(6.1)**

Although the Department of Labor has the authority to issue regulations to carry out the duties that Congress has assigned to it in the FMLA, it has no authority to change the FMLA. Family and Medical Leave Act of 1993, § [...] U.S.C.A. § 2654.

**3. Civil Rights ⚷162**

Employer did not violate Pre[...] Discrimination Act (PDA) in term[...] employee for excessive absenteeism [...] her pregnancy, absent evidence that [...] ployee who allegedly made ugly com[...] about her pregnancy was in chain o[...] mand over employee or influenced [...] nation decision, or that absences o[...] pregnant employees were overlo[...] Civil Rights Act of 1964, § 701([...] U.S.C.A. § 2000e(k).

**4. Civil Rights ⚷162**

The Pregnancy Discrimination [...] (PDA) does not protect a pregnant [...] ployee from being discharged for [...] absent from work even if her absen[...] due to pregnancy or to complication[...] pregnancy, unless the absences of [...] pregnant employees are overlooked. C[...] Rights Act of 1964, § 701(k), 42 U.S.[...] § 2000e(k).

**5. Civil Rights ⚷162**

Disparate impact is a permissible t[...] ory of liability under the Pregnancy D[...] crimination Act (PDA). Civil Rights A[...] of 1964, § 701(k), 42 U.S.C.A. § 2000e[...]

**6. Civil Rights ⚷162**

Showing that an absenteeism poli[...] weighs more heavily on pregnant emplo[...] ees than on nonpregnant ones and that [...] is not justified by compelling consider[...] ations of business need is not sufficient to [...] demonstrate a disparate impact in viola[...] tion of the Pregnancy Discrimination Act [...] (PDA). Civil Rights Act of 1964, § 703(k)(1)(A)(i), 42 U.S.C.A. § 2000e-2(k)(1)(A)(i).

**7. Civil Rights ⚷162**

With respect to the Pregnancy Dis[...] crimination Act (PDA), the concept of dis[...] parate impact was developed and is intend[...] ed for cases in which employers impose [...] eligibility requirements that are not really [...] necessary for the job for which the appli[...]

[...]eing hired. [...] 703(k)(1)(A) [...]2(k)(1)(A)(i).

[...] Rights ⚷162

[...]ith respect to [...]ation Act (PDA [...] impact does no[...] [...]e a class of w[...] [...] 1964, § 7[...] [...]0e(k).

[...]deral Civil Proc[...] [...]bor Relations [...]

[...]rder awarding [...] [...]ey fees to em[...] [...] than the almo[...] [...] appropriate, and [...] [...]d be required t[...] [...]ld not be sanctio[...] [...]al from order, [...] [...] brief contained [...] [...] two pages lon[...] [...] to truisms and [...] [...] respond to distri[...] [...] attorney had su[...] [...] to fraudulent clai[...] [...] after case. Fai[...] [...]1938, § 1 et seq., [...] F.R.A.P.Rule [...]

[...]Ernest T. Rossie[...] [...] Associates, Chic[...] appellant.

Bennett L. Epste[...] [...]gued), Hopkins & [...] defendants–appelle[...]

Before POSNER [...] MANION and KA[...]

POSNER, Chief [...]

The plaintiff, wh[...] the defendant ba[...] and February 199[...] the bank and rela[...] to discuss chargin[...] ly and Medical [...] §§ 2601 *et seq.*, th[...] tion Act, 42 U.S.[...]

ERIES

Leave Act of 1993, § 404, 29
54.

ts ⟹162

r did not violate Pregnancy
n Act (PDA) in terminating
excessive absenteeism during
y, absent evidence that coem-
llegedly made ugly comments
egnancy was in chain of com-
mployee or influenced termi-
on, or that absences of non
mployees were overlooked
Act of 1964, § 701(k), 42
000e(k).

hts ⟹162

regnancy Discrimination Ac
not protect a pregnant
being discharged for bein
work even if her absence
gnancy or to complication
unless the absences of
nployees are overlooked.
of 1964, § 701(k), 42 U.S.C.

ghts ⟹162

ate impact is a permissib
ility under the Pregnanc
Act (PDA). Civil Right
701(k), 42 U.S.C.A. § 20

ghts ⟹162

g that an absenteeism
re heavily on pregnant
n nonpregnant ones an
tified by compelling
usiness need is not su
te a disparate impact
Pregnancy Discrimin
Civil Rights Act
)(A)(i), 42 U.S.C.A.
i).

ights ⟹162

respect to the Preg
n Act (PDA), the con
pact was developed an
ses in which employe
...irements that ar



ant is being hired. Civil Rights Act of 1964, § 703(k)(1)(A)(i), 42 U.S.C.A. § 2000e-2(k)(1)(A)(i).

Civil Rights ⟹162

With respect to the Pregnancy Dis-mination Act (PDA), the concept of dis-parate impact does not stretch so far as to subsidize a class of workers. Civil Rights Act of 1964, § 701(k), 42 U.S.C.A. § 2000e(k).

Federal Civil Procedure ⟹2840

Labor Relations ⟹1571

Order awarding $6,216 in costs and attorney fees to employee under FLSA, rather than the almost $35,000 requested, was appropriate, and employee's attorney would be required to show cause why he should not be sanctioned for filing frivolous appeal from order, where employee's ap-peal brief contained argument that was not two pages long, was entirely given to truisms and conclusions, and failed to respond to district judge's accusations attorney had submitted what amount-fraudulent claim, and had done so in after case. Fair Labor Standards Act 1938, § 1 et seq., 29 U.S.C.A. § 201 et F.R.A.P.Rule 38, 28 U.S.C.A.

---

Ernest T. Rossiello (argued), Rossiello Associates, Chicago, IL, for plaintiff-ant.

ett L. Epstein, David B. Goroff (ar-Hopkins & Sutter, Chicago, IL, for ants-appellees.

POSNER, Chief Judge, and ON and KANNE, Circuit Judges.

ER, Chief Judge.

plaintiff, who worked as a teller for endant bank between April 1994 uary 1996, brought suit against and related entities unnecessary charging violations of the Fami-Medical Leave Act, 29 U.S.C. seq., the Pregnancy Discrimina-

Fair Labor Standards Act, 29 U.S.C. §§ 206(a), 207(a), 215(a)(2). There were other charges as well, but they have fallen by the wayside. The defendant made an offer of judgment of $1,152 on the FLSA count (which sought overtime pay), and this was accepted. The district court granted summary judgment for the defen-dant on the other counts. The plaintiff then sought almost $35,000 in costs and attorneys' fees under the FLSA, which the judge cut down to $6,216. The appeals challenge both the dismissal of the FMLA and PDA counts and the reduction in the amount of fees awarded for the successful prosecution of the FLSA count.

The plaintiff had a problem of absentee-ism. The bank required her to attend a "coaching session" to help her overcome the problem. That was in August 1995. The problem continued and on January 26, 1996, roughly three weeks after she had become pregnant, she received a written warning about her excessive absences. She received a second such warning on February 12 and a third on February 21. All to no avail; she was AWOL again on February 23 and 24 and was fired two days later.

Of a total of 20 unexcused absences be-tween March 6, 1995, and the date of her discharge, nine occurred after she became pregnant, and she attributes these ab-sences to severe morning sickness, al-though there is little medical substantia-tion of this attribution. On January 8, 1996, shortly after she became pregnant, she requested leave under the FMLA on the basis of her morning sickness. The defendant did not respond to the request, and this nonresponse is the basis of her FMLA claim. Although it is conceded that she did not satisfy the requirement for eligibility for leave under the Act that she have worked at least 1,250 hours dur-ing the 12 months preceding the day on which she wanted to take family leave, 29 U.S.C. § 2611(2)(A)(ii) (it is unclear by how much she fell short), she appeals to a

Case 1:05-cv-00500-T-DLM Document 36-14 Filed 08/10/2006 Page 7 of 10



that waives statutory eligibility in cases in which the employer fails to respond promptly to a request for family leave. The regulation provides, so far as bears on this case, that "if the employer fails to advise the employee whether the employee is eligible [for family leave] prior to the date the requested leave is to commence, the employee will be deemed eligible." 29 C.F.R. § 825.110(d).

[1, 2] As several district courts have found (there are no appellate decisions), the regulation is invalid. E.g., *McQuain v. Ebner Furnaces, Inc.*, 55 F.Supp.2d 763, 773–76 (N.D.Ohio 1999); *Seaman v. Downtown Partnership of Baltimore, Inc.*, 991 F.Supp. 751, 754 (D.Md.1998); *Wolke v. Dreadnought Marine, Inc.*, 954 F.Supp. 1133, 1135–38 (E.D.Va.1997). Although the Department of Labor has, like other administrative agencies, the authority to issue regulations to carry out the duties that Congress has assigned to it in the Family and Medical Leave Act, 29 U.S.C. § 2654, it has no authority to change the Act. But that is what the regulation tries to do. It does not address an interpretive issue that the statute leaves open, and so the principle of the Chevron case is not in play. E.g., *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); *NLRB v. GranCare, Inc.*, 170 F.3d 662, 666 (7th Cir.1999) (en banc); *City of Chicago v. FCC*, 199 F.3d 424, 428 (7th Cir.1999). The statutory text is perfectly clear and covers the issue. The right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months. Yet under the regulation a worker who had worked 8 hours before seeking family leave would be entitled to family leave if the employer neglected to inform the employee promptly that he or she was ineligible. And this regardless of whether the employee had incurred any detriment as a result of the employer's silence.

The last point is critical. If ... reliance *were* required, the ... could be understood as creating ... estoppel (specifically a right to esto... is, forbid, the employer to raise ... of ineligibility for the statutory ... and such a right might be thoug... consistent with the statute and ... able method of implementing it, ... within the Department's rulemaking ... ers. Like other equitable doctrine... doctrine of estoppel is invoked in a ... of statutory contexts without refere... particular statutory language. True ... statute creates or excludes a right to ... estoppel, the creative power of the ... istering court or agency is suspen... But there is nothing in the Family ... and Medical Act that relates to misle... eligibility notices or absences of notice... far as notice is concerned, the ... merely requires the employer to po... general summary of the Act in the ... place. 26 U.S.C. § 2619. We do not ... this provision to exclude the applicatio... the doctrine of an estoppel in an appr... ate case. And so an employer who ... silence misled an employee concerning ... employee's entitlement to family ... might, if the employee reasonably re... and was harmed as a result, be estopp... to plead the defense of ineligibility to ... employee's claim of entitlement to fam... leave. See, e.g., *Rager v. Dade Behrin... Inc.*, 210 F.3d 776, 778–79 (7th Cir.200... *Athmer v. C.E.I. Equipment Co.*, 121 F.... 294, 296–97 (7th Cir.1997); *General Ele... tric Capital Corp. v. Armadora, S.A.*, ... F.3d 41, 45 (2d Cir.1994).

The plaintiff has made no effort to es... tablish the elements of an estoppel, howev... er, and anyway the regulation on which ... she relies to avoid the 1,250–hours require... ment is not limited to circumstances ... which an employer might be estopped ... deny eligibility because his conduct ha... induced detrimental reliance by the em... ployee. The regulation allows an employ... ee to claim benefits to which she is no... entitled as a matter of law or equity, this ...

... a windfall by ext... ...er's defense without ... principle. The challen... ...nly unauthorized; i...

We move on to the p... the Pregnancy Discr... Act forbids discriminat... ...yee on account of he... and of such discrimin... ...ce in this case, evid... of making out a case ... summary judgment f... some ugly comments a... pregnancy made by an ... not in the chain of co... ...tiff and did not (so f... ...ence in any way the ... "The fact that somec... ...ved in the employme... ...ich the plaintiff compl... ...iminatory feelings is n... decision had a discrimi... ..." *Hunt v. City of Mar...* ..., 652–53 (7th Cir.2000... ...ginal). Compare *Sheeh...* Corp., 173 F.3d 1039, 104... 1999).

[4] The plaintiff was fi... her absenteeism, not becau... ...ancy. There was a rela... some of the absences may ... to morning sickness, which ... a consequence of her pregn... Pregnancy Discrimination ... protect a pregnant emplo... discharged for being abs... even if her absence is due ... to complications of pregna... absences of nonpregnant ... overlooked. *Troupe v. M...* Co., 20 F.3d 734, 738–39 ... *Marshall v. American Ho...* F.3d 520, 526 (7th Cir.199... *Padlocker, Inc.*, 209 F.3d ... 2000) (per curiam); *In re* ... *Associates*, 129 F.3d 290, ... 1997); *Fisher v. Vassar* ... 1420, 1448 (1995) reheard ...

it is critical. If detrimental
required, the regulation
stood as creating a right of
fically a right to estop, that
employer to raise a defense
for the statutory benefits),
ght might be thought both
h the statute and a reason-
of implementing it, and so
partment's rulemaking pow-
her equitable doctrines, the
toppel is invoked in a variety
contexts without reference to
tutory language. True, if the
es or excludes a right to plead
creative power of the admin-
rt or agency is suspended
nothing in the Family Leave
Act that relates to misleading
tices or absences of notice; [illegible]
ce is concerned, the statute
uires the employer to post
mary of the Act in the work
J.S.C. § 2619. We do not re[illegible]
n to exclude the application
of an estoppel in an appro[illegible]
And so an employer who by [illegible]
led an employee concerning [illegible]
entitlement to family [illegible]
he employee reasonably re[illegible]
armed as a result, be estop[illegible]
e defense of ineligibility to [illegible]
claim of entitlement to fa[illegible]
e, e.g., *Rager v. Dade Be[illegible]*
F.3d 776, 778–79 (7th Cir.[illegible]
*C.E.I. Equipment Co.*, 12[illegible]
97 (7th Cir.1997); *Genera[illegible]*
*tal Corp. v. Armadora*, S[illegible]
5 (2d Cir.1994).

aintiff has made no effor[illegible]
e elements of an estoppel, [illegible]
anyway the regulation a[illegible]
s to avoid the 1,250-hour [illegible]
not limited to circumsta[illegible]
employer might be esto[illegible]
gibility because his con[illegible]
detrimental reliance by [illegible]
The regulation allows a[illegible]
aim benefits to which s[illegible]



conferring a windfall by extinguishing the employer's defense without any basis in legal principle. The challenged regulation is not only unauthorized; it is unreasonable.

[3] We move on to the plaintiff's claim under the Pregnancy Discrimination Act. The Act forbids discrimination against an employee on account of her being pregnant, and of such discrimination the only evidence in this case, evidence that falls short of making out a case that can withstand summary judgment for the employer, is some ugly comments about the plaintiff's pregnancy made by an employee who was not in the chain of command of the plaintiff and did not (so far as appears) influence in any way the decision to fire her. "The fact that someone who is not involved in the employment decision of which the plaintiff complains expressed [illegible]criminatory feelings is not evidence that [illegible] decision had a discriminatory motiva[illegible]" *Hunt v. City of Markham*, 219 F.3d [illegible] 652–53 (7th Cir.2000) (emphasis in [illegible]al). Compare *Sheehan v. Donlen* [illegible] 173 F.3d 1039, 1044–45 (7th Cir. [illegible]

[illegible] The plaintiff was fired because of [illegible]enteeism, not because of her preg[illegible] There was a relation, insofar as [illegible] the absences may have been due [illegible]ing sickness, which was, of course, [illegible]uence of her pregnancy. But the [illegible]cy Discrimination Act does not [illegible] pregnant employee from being [illegible]ed for being absent from work [illegible]er absence is due to pregnancy or [illegible]cations of pregnancy, unless the [illegible] of nonpregnant employees are [illegible] *Troupe v. May Dept. Stores* [illegible] 3d 734, 738–39 (7th Cir.1994); [illegible] *American Hospital Ass'n*, 157 [illegible] 926 (7th Cir.1998); *Armindo v.* [illegible] *Inc.*, 209 F.3d 1319 (11th Cir. [illegible]uriam); *In re Carnegie Center* [illegible] 129 F.3d 290, 296–97 (3d Cir. [illegible] *v. Vassar College*, 70 F.3d [illegible] 1995) reheard en banc on other grounds, 114 F.3d 1332 (2d Cir.1997). And of that there is no evidence.

[5–8] It might seem that a company's policy on absenteeism might be attacked from the direction of disparate impact, a permissible theory of liability under the Pregnancy Discrimination Act, e.g., *Troupe v. May Dept. Stores Co.*, *supra*, 20 F.3d at 738; *Scherr v. Woodland School Community Consolidated Dist. No. 50*, 867 F.2d 974, 979 (7th Cir.1988); *Lang v. Star Herald*, 107 F.3d 1308, 1314 (8th Cir. 1997); *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 813 (5th Cir.1996), if it could be shown that the policy weighed more heavily on pregnant employees than on nonpregnant ones and that it was not justified by compelling considerations of business need. But such an argument would not succeed. The concept of disparate impact was developed and is intended for cases in which employers impose eligibility requirements that are not really necessary for the job for which the applicant is being hired, such as requiring that applicants for a job as a dishwasher have a high school education. The statute makes this clear, see 42 U.S.C. § 2000e–2(k)(1)(A)(i) ("an unlawful employment practice based on disparate impact is established under this subchapter only if a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity"), as do the cases interpreting it. See, e.g., *Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161, 1164 (7th Cir.1992) ("the concept of disparate impact was developed for the purpose of identifying situations where, through inertia or insensitivity, companies were following policies that gratuitously—needlessly—although not necessarily deliberately, excluded black or female workers from equal employment opportunities"); *Lanning v. Southeastern*

Case 1:05-cv-00500-T-DLM Document 36-14 Filed 08/10/2006 Page 9 of 10

*Pennsylvania Transportation Authority*, 181 F.3d 478, 489 (3d Cir.1999) ("a discriminatory cutoff score is impermissible unless shown to measure the minimum qualifications necessary for successful performance of the job in question"). The argument here is not that the employer has adopted rules or practices that arbitrarily exclude pregnant women, but that the employer should be required to excuse pregnant employees from having to satisfy the *legitimate* requirements of their job. It is an argument for subsidizing a class of workers, and the concept of disparate impact does not stretch that far. *Troupe v. May Department Stores Co., supra*, 20 F.3d at 738; *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 207–08 (5th Cir. 1998); *Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308, 1317 (11th Cir.1994). Nor would pregnant women, or women in general, benefit from such a stretch. Firms would be deterred from employing women of childbearing age if required to overlook the inability of a particular woman, because of complications of pregnancy, to do the work for which she had been hired.

[9] We turn to the plaintiff's appeal from the award of attorneys' fees, which she contends was too meager. Her appeal brief (there is no reply brief) is a remarkable document. It is only five pages long, of which the argument section occupies not quite two pages entirely given over to truisms and conclusions. The perfunctory character of the appeal, which alone would justify an affirmance, *Kelly v. EPA*, 203 F.3d 519, 522 (7th Cir.2000); *Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1192 (7th Cir.1999); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 780–81 (7th Cir.1999), is remarkable rather than merely lamentable because of the serious accusations made by the district judge against the plaintiff's attorney, Ernest T. Rossiello, in support of the judge's decision to cut down the fees and costs sought by some 80 percent. Citing several previous judicial opinions criticizing (in … actually sanctioning) Mr. Rossiello … fee requests or affirming stiff cuts … requested fees, *Shea v. Galaxy Lu… Const. Co., Ltd.*, No. 94 C 906, 199… 138791, at *3 (N.D.Ill. Mar.2, 1999) … case is not the first time a federal … court has suspected a possible … lation or abuse of billing practices … regard to Shea's counsel [Rossiello] … FLSA case"); *Herrejon v. Appetizers…, Inc.*, No. 97 C 5149, 1999 WL 11659… (N.D.Ill. Feb.22, 1999); *Campbell v. … Managed Care Systems, Inc.*, No. … 1622, 1998 WL 417505 (N.D.Ill. Jul… 1998); *Uphoff v. Elegant Bath, Ltd.*, … F.3d 399, 406–11 (7th Cir.1999); *Spe… Catholic Bishop of Chicago*, 175 F.3d … (7th Cir.1999), but missing still o… (again including one case in which he … actually sanctioned), e.g., *Connolly … tional School Bus Service, Inc.*, 177 F.… 593, 598 (7th Cir.1999); *Scott v. S… Healthcare Corp.*, No. 95 C 1277, 1999 … 787624, at *5 (N.D.Ill. Sep.23, 1999) ("T… fee petition in this case, seeking $100,0… in fees and costs for a $600 recovery is, … put in mildly, unreasonable and irrespons… ble. The amount requested is absurd. N… effort has been made by plaintiff's couns… to segregate the fees attributable to the … successful FLSA claim"), the judge … cused Rossiello, just as the judge in Scott had done, of engaging in the dishonest … practice of joining to small valid claims, … here the plaintiff's FLSA claim, large in… valid and even frivolous claims, and seek… ing a large award of attorneys' fees for services ostensibly devoted to the small claim but actually devoted to the large.

In his application for fees, Rossiello allocated 124 hours, constituting half the total time that he and his associates put in on the plaintiff's entire case, to the FLSA claim, even though it was a tiny claim which required little more than the record of the days and hours worked by the plaintiff and which the defendant did not resist. The defendants had made an offer of judgment for the full amount sought before trial, which the plaintiff accepted. And … the offer was mad… …d in only the most … claim, consisting o… …nts, a single inter… … minutes of depos… … was rightly aghast … the total lawyer t… … A similar proble… …'s allocation of costs.

… his appeal brief … the brief) does n… …ations. Although … elaboration that the … him a higher h… …ing about the judg… …mitting what amou… … of attorneys' fees … moreover, in case aft… …umstances of confe… …ious charges of prof… … not only affirm the … denying Rossiello … sought; we also order … within 14 days of the … why he should not be … frivolous appeal fro… … order. Fed. R.Ap… *…Corp. v. Continental …* …, 938 (7th Cir.198… *…States v. Insurance …*, *Inc.*, 187 F.3d 755, 7… In addition we are r… … of his improper an… billing practices to t… …tee of the United St… the Northern Distri… … whether to insti… …ceedings against him.

AFFIRMED.

criticizing (in one case
ng) Mr. Rossiello for his
affirming stiff cuts in the
hea v. Galaxy Lumber &
No. 94 C 906, 1999 WL
D.Ill. Mar.2, 1999) ("this
irst time a federal district
ected a possible manipu-
of billing practices with
s counsel [Rossiello] in a
Terrejon v. Appetizers And
149, 1999 WL 116598, at *1
, 1999); *Campbell v. HSA*
*Systems, Inc.*, No. 97 C
, 417505 (N.D.Ill. July 21,
*v. Elegant Bath, Ltd.*, 176
1 (7th Cir.1999); *Spegon v.*
*of Chicago*, 175 F.3d 544
but missing still others
g one case in which he was
oned), e.g., *Connolly v. Na*
*Bus Service, Inc.*, 177 F.3d
Cir.1999); *Scott v. Sunri*
*rp.*, No. 95 C 1277, 1999 W
(N.D.Ill. Sep.23, 1999) ("Th
this case, seeking $100,00
sts for a $600 recovery is
unreasonable and irrespo
ount requested is absurd,
en made by plaintiff's coun
the fees attributable to
LSA claim"), the judge
llo, just as the judge in
f engaging in the disho
oining to small valid cla
intiff's FLSA claim, lar
en frivolous claims, and
award of attorneys' fee
ensibly devoted to the
ctually devoted to the
plication for fees, Rossiel
ours, constituting half the
e and his associates pu
f's entire case, to the F
though it was a tiny
ired little more than the
and hours worked by th
ich the defendant did no
lants had made an offer
the full amount sough
plaintiff accept

before the offer was made the parties had engaged in only the most limited discovery on the claim, consisting of one request for documents, a single interrogatory, and ten or so minutes of deposition time. The judge was rightly aghast at the allocation of half the total lawyer time to the FLSA claim. A similar problem attended Rossiello's allocation of costs.

In his appeal brief, Rossiello (who signed the brief) does not deny the judge's accusations. Although he complains without elaboration that the judge should have allowed him a higher hourly fee, he says nothing about the judge's accusing him of submitting what amounts to a fraudulent claim of attorneys' fees and of doing this, moreover, in case after case. In these circumstances of confession by silence to serious charges of professional misconduct, we not only affirm the district court's order denying Rossiello the fees and costs sought; we also order him to show cause within 14 days of the date of this order why he should not be sanctioned for filing a frivolous appeal from the district court's fee order. Fed. R.App. P. 38; *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc); *United States v. Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 761–62 (7th Cir.1999). In addition we are referring the question of his improper and possibly fraudulent billing practices to the executive committee of the United States District Court for the Northern District of Illinois to consider whether to institute disciplinary proceedings against him.

AFFIRMED.



**TUF RACING PRODUCTS, INC., Plaintiff–Appellee,**

**v.**

**AMERICAN SUZUKI MOTOR CORPORATION, Defendant–Appellant.**

**No. 99–3497.**

United States Court of Appeals, Seventh Circuit.

Argued March 31, 2000

Decided July 24, 2000

Motorcycle dealership brought suit against motorcycle manufacturer for wrongful termination of franchise agreement, in violation of Illinois Motor Vehicle Franchise Act. The United States District Court for the Northern District of Illinois, Philip G. Reinhard, J., entered judgment on jury verdict awarding dealership $137,000 in damages, and awarded over $391,000 in attorney fees to dealership, 1999 WL 669226. Manufacturer appealed. The Court of Appeals, Posner, Chief Judge, held that: (1) Act does not allow franchisee to complain about a pretextual termination of a franchise agreement where there is a good cause for the termination; (2) agreement created exhaustive list of permissible bases for termination; (3) CPA could testify as expert for dealership with respect to damages, and was not subject to qualification under *Daubert* standard; (4) award of damages would not be set aside as speculative; (5) dealership, which recovered more than 10% of damages sought, substantially prevailed, and was entitled to attorney fees under Act; and (6) attorney fee award was reasonable even though it exceeded damages.

Affirmed.

**1. Contracts ⚷217, 303(1)**

In the law of contracts, while procuring a breach by the other party to your