UNITED STATES DICTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHIRLEY SCHUMACHER | } | CIVIL ACTION NO. 05-500T |
| Plaintiff, | } | |
| v. | } | |
| FAIRFIELD RESORTS INC., a foreign Corporation doing business in RI and | } | |
| CORE INC., a foreign Corporation doing Business in RI; and A.B.C: Unknown, | } | |
| Defendants, | } | |

AMENDED MEMORANDUM OF SHIRLEY SCHUMACHER IN SUPPORT OF HER OBJECTION TO FAIRFIELD RESORTS, INC.'S MOTION FOR SUMMARRY JUDGMENT

Plaintiff Shirley Schumacher ("Schumacher") submits this Memorandum of Law in support of her objection to Defendant Fairfield Resorts, Inc.'s Motion for Summary Judgment. Schumacher's Amended Complaint alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq*., on the basis of her sex; The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*.; the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et* seq.; the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et* seq., the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42- 112-1, *et* seq., on the basis of her sex and her age; violation of the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-2, *et seq.*; breach of contract; estoppel; and retaliation in violation of public policy, Title VII and the FMLA.

## PRELIMINARY STATEMENT

Plaintiff Shirley Schumacher was the oldest and only female sales manager at Fairfield's Newport facility when she was demoted by Joseph Hutnick ("Hutnick") her supervisor. She was demoted and terminated in retaliation for complaining about her mistreatment by Joseph Hutnick. Schumacher was subjected to a hostile work environment after Hutnick learned of her complaint.

## SUMMARY OF FACTS[1]

Schumacher initially began working as a salesperson in the time share industry in 1983 for a corporate predecessor to Fairfield. After Fairfield took over corporate ownership, Schumacher was promoted to a sales manager, she was responsible for the recruitment and management of sales associates. Schumacher would also assist sales associates with closing sales.

In late January 2004 shortly before Schumacher left for a scheduled vacation she had meeting with Hutnick and he advised her that a company in Wisconsin had an Exit program that was doing very well. In an effort to learn if the successful program in Wisconsin Program was doing something that wasn't being done by Fairfield. Schumacher called Wisconsin and was told her that they did not have an Exit Program and that things were very slow. When Schumacher went to Hutnick and told him what Wisconsin had told her he became very angry and asked her why she had called Wisconsin. Schumacher responded by telling him she wanted to improve her performance and that of the Exit program Hutnick became angry called her a "cunt" and walked away. (Schumacher Deposition, p.77)

[1] The following facts are drawn from the Statement of Disputed Material Facts submitted by Schumacher pursuant to Local Rule 56, and the Appendix of Exhibits submitted therewith.

Following this incident Schumacher complained to Fairfield employees Lemlar and Coppa that Hutnick had called her a “cunt” and “bitch” Both Lemlar and Coppa reported to Hutnick what Schumacher had told them. (Schumacher Deposition, p.88; Schumacher Affidavit ¶ 4Exhibit 2) Before Schumacher left for her scheduled vacation Hutnick told her that when she returned that she would no longer be manager. (Schumacher Deposition, p. 106) Schumacher went to Florida for vacation but was unable to relax and became more depressed over the demeaning incidents with Hutnick. Consequently, she quit her vacation early returned to Rhode Island and sought the care of her physician Dr. James D. Gloor.

Dr. Gloor began treating her for stress that Schumacher contributed to her hostile work environment. Gloor provided Schumacher with a disability certificate indicating that she could not work from February 11, 2004 through April 11, 2004 which was provided to Hutnick. (Deposition of Dr. James D. Gloor (“Gloor Deposition”) pp 9-13; attached hereto as Exhibit E) Schumacher also contacted Jan Weber, Leave and Disability Coordinator at Fairfield to notify her that she would be requiring a leave of absence that Fairfield authorized. (Schumacher Deposition, p. 97; Schumacher Affidavit, ¶ 7 Exhibit 5)

On February 26, 2004 Schumacher did contact Core, Inc. (“Core”) to tell it that she was not making application to Core for short term-disability that she had elected instead to receive Temporary Disability Insurance (“TDI”) through the policy provided by the State of Rhode Island because she would receive more money. (Schumacher Deposition, pp.130-131; Schumacher Affidavit ¶ 18, Exhibit 14)

Fairfield contacted Schumacher by letter dated March 16, 2004 this letter was a Medical Leave of Absence Notification letter from Jan Weber advising her to have the attached Medical Certification Form completed by her physician and then return it. The letter stated that Fairfield would determine the length of approved leave based upon the information provided on the form. (Schumacher Affidavit, ¶ 9, Exhibit 6)

Fairfield again contacted Schumacher by telephone on March 30, 2004 Schumacher advised the caller that she had the forms for Dr. Gloor and that she would see him on the 9th and bring back on the 11th the caller advises Schumacher “OK”. (Schumacher Affidavit, ¶ 10, Exhibit 7)

Schumacher provided Jan Webber, Fairfield’s Leave and Disability Coordinator with a note stating that her doctor would be mailing her all the information she needed. Schumacher also provided a Disability Certificate stating that She was totally disable from April 10,2004 through May 11,2004.(Schumacher Affidavit, ¶ 11, Exhibit 8)

Dr. Gloor sent Schumacher’s Certification Forms to Fairfield. (Schumacher Deposition pp. 97-99) On April 16, 2004 a Physician’s Certification form bearing Dr. Gloor’s signature was mailed by his office. (Gloor Deposition, pp.34, 35) (Schumacher Affidavit, ¶ 12; Exhibit, 9)

Fairfield received this Physicians Certification Form and produced it as part of Schumacher’s personnel file. Schumacher Affidavit, ¶13, Exhibit, 10) Medical Certification Forms like Schumacher’s were usually mailed by Dr. Gloor’s office.(Gloor Deposition, pp. 28-29) Fairfield received this Medical Certification Form and produced it as part of Schumacher’s personnel file. (Schumacher Affidavit, ¶ 14, Exhibit, 11)

Hutnick terminated Schumacher in a letter dated April 21, 2004. (Schumacher Affidavit, ¶15; Exhibits, 12) The reason given for her termination was Core denied her FMLA application. (Schumacher Affidavit, ¶16; Exhibit, 13)

II. **ISSUES**

1. Whether Schumacher presents sufficient facts to establish age and sex were a motivating factor for Discrimination?
2. Whether Schumacher presents facts sufficient to establish that she was subjected to a Hostile Work Environment?
3. Whether Schumacher's Hostile Work Environment claim is barred as a matter of law.
4. Whether Schumacher presents facts sufficient to establish that Fairfield interfered with her entitlement to FMLA and PFMLA leave.
5. Whether Schumacher's Retaliation claims should be dismissed for failing to exhaust administrative remedies?
6. Whether Schumacher presents facts sufficient to establish a Prima Facie Case of Retaliation?
7. Whether Schumacher present facts sufficient to show a causal connection?
8. Whether Schumacher presents facts sufficient to show an employment contract with Fairfield?
9. Whether Summary Judgment is appropriate in this case?

**I. ARGUMENT**

**A. Age an Sex were motivating factors in Schumacher's discharge.**

A Plaintiff may establish an unlawful employment practice by demonstrating that discrimination was a motivating factor for the challenge employment practice, even though other

factors also motivated the practice. Desert Palace, Inc. v. Costa 590 U.S. 90 (2003) Direct evidence is not required to prove employment discrimination in a mixed- motive case. Estades-Negroni v. Assocs, Corp, 345 F. 3d 25 (1st Cir. 2003)

Joseph Hutnick, ("Hutnick") Schumacher's supervisor called her as an "old cunt" and ("bitch"). Schumacher Affidavit, ¶ 4) She complained to fellow employees about what Hutnick had called her. (Schumacher Deposition p.88; Schumacher Affidavit, Exhibit, 2) Shortly after learning of her complaint Hutnick demoted her from Sales Manager to Sales Associate ultimately terminating her employment. . Schumacher Affidavit, ¶15; Exhibit, 13)

**B. 1. Hutnicks's offensive comments and subsequent demotion of Schumacher created a hostile environment.**

Fairfield asserts that because Schumacher did not complain of a hostile environment that it has an affirmative defense to Schumacher's claim of hostile environment.

However, Schumacher did complain of harassment by Hutnick her supervisor to co-workers who reported her complaint to Hutnick. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) Hutnick made a report of the complaint of harassment and entered it into Schumacher's personnel file providing Fairfield notice or constructive notice that Schumacher had complained of harassment by Hutnick. (Schumacher Affidavit, ¶ 4, Exhibit 2) Personnel files are the property of Fairfield Resorts and access to the information they contain is restricted. (Policy Manual, Exhibit D, p. 502-1) The harassment report submitted by Hutnick stated Schumacher had accused him of calling her an "Old cuss and bitch" (Schumacher Affidavit,¶ 4 Exhibit 2) shortly after learning of her complaint Hutnick demoted her from Sales Manager to Sales Associate. Demotions are generally tangible employment actions. Duram Life Ins. Co. v. Evens, 166 F.3d 139 (3rd Cir. 1999)

the above harassment caused Schumacher stress sufficient to warrant her physician to classify her as totally disabled and unable to work. ( Exhibit E, Gloor Deposition, p.17)

**B. 2. Schumacher's claims not barred by Faragher and Ellerth**

The discriminatory comments Hutnick made to Schumacher and his subsequent demotion of Schumacher should deny Fairfield the benefit of an affirmative defense. Id. Ellerth 524 U.S. at 764- 76

Time and experience had shown Schumacher that the anti-harassment hot line Fairfield provided did not work. (Schumacher Deposition, 47) Other than receiving the policy manual itself Schumacher received no training or was she familiarized by Fairfield with the meaning of its contents. (Policy Manual, Exhibit, D, p.i) Despite an extensive list of policies and procedures promulgated by Fairfield. (Policy Manual, Exhibit, D, pp.iv,v) Schumacher a manager never saw anti -harassment notices posted on a bulletin board or did she receive any instruction in matters related to policies and procedures. (Schumacher Deposition, p.49.)

**C. Schumacher was entitled to FMLA and RIPFMLA**

On February 26, 2004 Schumacher did contact Core, Inc. ("Core") to tell it that she was not making application to Core for short term-disability. She had elected instead to receive Temporary Disability Insurance ("TDI") through the policy provided by the State of Rhode Island because she would receive more money. (Schumacher Deposition, pp.130-131; Schumacher Affidavit, Exhibit 14) She had no further contact with Core until April 30, 2004. (Schumacher Affidavit, Exhibit 14)

. Fairfield provided Schumacher with her Medical Leave application form and Dr. Gloor returned it to Fairfield (Schumacher Affidavit,¶ 9 Exhibits, 6 ) Dr. Gloor sent all Schumacher's Certification Forms to Fairfield. (Schumacher Deposition pp. 97-99) On April 16,

2004 Dr.Gloor's office mailed a Physician's Certification form bearing Dr.Gloor's signature (Gloor Deposition, pp.34, 35; Schumacher Affidavit, ¶ 12, Exhibit, 9).

As stated above, Fairfield received a copy of the Physicians Certification Form dated April 16, 2004 and produced it as part of Schumacher's personnel file. Fairfield also received Schumacher's Medical Certification Form and produced it as part of Schumacher's personnel file.

In short, Fairfield terminated Schumacher for not supplying Medical information to Core. Despite Schumacher supplying that information to Fairfield as Fairfield requested and despite the undisputed fact Fairfield induced Schumacher to believe that it and not Core was the entity managing Schumacher's FMLA and RIPFMLA application. Fairfield's articulated reason for terminating Schumacher raises a question of pretext. Cicero v. Borg-Warner Automotive, Inc. 280 F3d 579 (6th Cir 2002)

Schumacher held a reasonable belief that Fairfield was processing her FMLA application based upon Fairfield's statements and conduct. Schumacher had no reason to believe that by cooperating with Fairfield regarding her FMLA application that she would be jeopardizing her entitlement to FMLA protected leave. "An employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave". Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579,582 (7th Cir.2000)

**Schumacher's Retaliation Claims**

1. Title VII

Schumacher complained before the Equal Opportunity Commission ("EEOC") of discriminatory treatment and harassment by Fairfield.(Amended Complaint, Exhibit 1.) Her claim that Hutnick retaliated against her for complaining that he discriminated against her is related to the complaint she made before the EEOC. "Retaliation Claims are preserved as long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency." Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 3 (1st Cir. 2003)

To prove retaliation under VII Schumacher must establish that (1) she engaged in protected activity (2) she suffered an adverse employment action after or contemporaneous with such activity (3) there exist a causal link between the protected activity and the adverse job action. Wyatt v.City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)

Here, Schumacher complained to fellow employees of being sexually harassed by her supervisor Hutnick. That complaint was reported to Hutnick who entered it into of her personnel file. Shortly thereafter, Hutnick demoted and terminated Schumacher's employment. Schumacher's complaint to co-workers is protected activity since she reasonably believed that the conduct she opposed violated Title VII. Benoit v. Tech. Mfg. Corp., 331 F.3d 1669 (1st Cir. 2003)

**2. FMLA - RIPFMLA**

To make out a prima facie case of retaliation, Schumacher must show (1) that she was engaged in a protected activity (here requesting FMLA leave); (2) that she suffered an adverse employment action (here being fired); (3) that there was some possibility of a causal connection between the employees protected activity and the employers adverse employment action, in that the two were not wholly unrelated. Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir.1998).

The RIPMLA Act provides in relevant part;

(a) It shall be unlawful for any employer to interfere with, restrain or deny the exercise of or the attempt to exercise any right provided by this chapter.

(b) It shall be unlawful for any employer to discharge, fine suspend, expel, discipline, or in any other manner discriminate against any employee for exercising any right provided by this chapter.

Here, Schumacher returned documents provided by Fairfield requesting FMLA leave to Fairfield. (Schumacher Affidavit,¶ 7, Exhibit 6) She received a letter dated April 21, 2004, from Fairfield terminating her employment because Core denied her FMLA application (for failing to provide medical certification) that Schumacher provided to Fairfield as requested. (Schumacher Affidavit, ¶16, Exhibit 13)

**E. Schumacher's Contract Claim**

Schumacher entered into a written employment agreement with Fairfield on February 13, 2003. (Exhibit B, Contract) Schumacher submits this agreement established an employment contract with Fairfield. Employment at will is a rule of construction, not a substantive limitation on contract formation. (inference that employment is terminable at –will may be rebutted by the specific terms of the agreement); Toussaint v. Blue Cross & Blue Shield of Michigan, 292 N.W.2d 880, 884 (1980)

Here, Schumacher's contract with Fairfield contains express and implied terms of an employment contract. Specifically, the Indemnification clause contained in ¶ 7 pp. 3-4, which could imply termination only for cause; the Covenant not to Compete which required Schumacher to provide additional consideration beyond performance that could rebut the presumption that she was an employee at will, pp 5-6 ¶ 11 and ¶¶ 14, 15 which also required additional consideration that could also imply a limitation to dismiss only for just cause.

In addition, Fairfield list conduct which is strictly prohibited in its employee manual that is subject to immediate termination. (Exhibit D, Policy Manual, p.103-1) Employee manuals that list types of misconduct that could result in discharge imply that just cause is required. Witkowski v. Thomas J. Lipton, Inc. 643 A.2d 546, (1994)

Fairfield breeched its covenant of good faith and fair dealing implied in all contracts. Restatement of Contracts, (Second) Section 205 (3d ed. 1981). also Larson, Unjust Dismissal, § 305(2). Fairfield's wrongful termination of Schumacher was done in bad faith because it violated community standards of decency, fairness and reasonableness. Cleary v. American Airlines, Inc, 111 Cal. App.3d 443, 453, 168 Cal. Rptr. 722, 728 (1980).

**D. Fairfield should be estopped from denying as enforcible its promise of equal treatment in all aspects of employment.**

Fairfield should be estopped from denying as enforceable its written personnel policy promising not to discriminate and to provide equal opportunity to all employees in every aspect of employment. (Exhibit D, Policy Manual, p.102-1)Schumacher relied on this promise to her detriment when she complained of harassment by her supervisor and was subsequently demoted, denied her FMLA entitlement and terminated. A written personnel policy promising non-discrimination and equal employment opportunity has been held to create an enforceable contract right. Stahl v. Sun Microsys., 19 F.3d 533 (10th Cir. 1994) Implied contract rights were created by handbook provision promising non discrimination. Black v. Baker Oil Tools, 107 F.3d 1457 (10th Cir. 1997).

**SUMMARY JUDGMENT SHOULD BE DENIED IN THIS CASE**

Schumacher has shown there are genuine issues of material facts in dispute that would preclude summary judgment.

**Conclusion**

For the foregoing reasons Fairfield's request for summary judgment should be denied.

Respectfully submitted,

Plaintiff Shirley Schumacher
By her Attorneys

/s/ Keven A. McKenna
Keven A. McKenna #662
McKenna Law, PC
23 Acorn Street
Providence, Rhode Island 02903
(401) 273-8200

/s/ Michael L. Solitro
Michael L. Solitro *( Pro Hac Vice)*
553 Dyer Avenue
Cranston, Rhode Island 02920
(401) 946-0877

**CERTIFICATE OF SERVICE**

I the undersigned, hereby certify that on the 22nd day of September, 2006 a copy of the within was served by ECF on the following counsel of record:

Raymond M. Ripple, Esq.
Edwards Angel Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903

Timothy M. Bliss, Esq.
Brooks Magratten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Michael L. Solitro
.