# EXHIBIT C

SALESPERSON: READ THIS AGREEMENT CAREFULLY BEFORE SIGNING IT.

## SALESPERSON AGREEMENT

THIS SALESPERSON AGREEMENT ("Agreement") is entered into this 13 day of Feb., 2003, by and between FAIRFIELD RESORTS, INC. ("FRI") and Shirley H Schumacher ("Salesperson").

1. EMPLOYMENT. FRI hereby employs Salesperson and Salesperson hereby accepts employment on the terms set forth herein to render such services as may be directed from time to time by FRI through its supervisory personnel, including but not limited to the sale of FRI's real estate and/or non-real estate products and services ("Product(s)"). The parties agree that, notwithstanding anything to the contrary stated herein or in any other materials provided by FRI, Salesperson is employed by FRI "at will" and either party may terminate such employment at any time, with or without cause. Salesperson recognizes that he/she may be promoted, demoted, or transferred to one or more positions within FRI, and may work at one or more locations, during the term of Salesperson's employment. The provisions of this Agreement, including without limitation those contained in Paragraphs 5, 6, 7, 8, 9, 10 and 11, shall continue in effect and to be binding upon Salesperson despite such promotion(s), demotion(s), or transfer(s).

2. COMPENSATION. Subject to the conditions set forth herein, Salesperson shall be paid Commissions (as defined below) on the sale of FRI Products pursuant to FRI's Schedule of Commissions ("Commission Schedule") and FRI's Contract Standards ("Contract Standards") both of which are incorporated herein by this reference as if attached hereto. Salesperson acknowledges that copies of the current Contract Standards and Commission Schedule are available to Salesperson at a location designated by the Vice President of Sales for the site at which Salesperson is employed. FRI retains the exclusive right to revise or replace the Commission Schedule and/or Contract Standards from time to time at FRI's discretion, and Salesperson agrees that any such revision or replacement shall be effective from its date regardless of whether such change comes to Salesperson's attention before or after the effective date of such change. For purposes of this Agreement, the term "Commissions" shall include any commissions, salaries, bonuses and/or incentive payments which may be offered by FRI from time to time at FRI's discretion, as described in the

CONFIDENTIAL

Commission Schedule and/or Contract Standards. The terms "payday" and "pay cycle" shall mean those paydays and pay cycles established in the Contract Standards.

Salesperson acknowledges and agrees that, for purposes of both this Agreement and applicable wage and hour laws, no Commission shall be earned, due or calculable until the sale upon which such Commission is based becomes a Commission Qualified Sale as defined in the Contract Standards. Such Commissions shall be paid in accordance with the pay cycles established in the Contract Standards. Notwithstanding the foregoing, in the event of a rescission or cancellation of a sales contract, Commissions shall be subject to adjustment and/or refund to FRI as provided in the Contract Standards. No provision of this Agreement and no payment (whether intentional or unintentional) of Commissions by FRI shall limit FRI's right to offset or seek refund of Commissions from Salesperson pursuant to the Contract Standards or any other provision of this Agreement.

3. PAYMENT UPON TERMINATION. For purposes of both this Agreement and applicable wage and hour laws, Salesperson acknowledges and agrees that any Commissions which, pursuant to the Contract Standards, have not been paid as of the date of termination of Salesperson's employment with FRI shall not be fully earned, due or calculable for up to three (3) calendar months ("Verification Period") following the date of Salesperson's termination, whether Salesperson's employment is terminated by Salesperson or by FRI. Such Commissions shall be paid at the end of the Verification Period as provided in the Contract Standards, subject to any charge backs made during the Verification Period. Salesperson acknowledges and agrees that the Verification Period is reasonably necessary for FRI to determine the finality of all sales upon which Salesperson is to be paid a Commission, and therefore acknowledges and agrees that no Commission shall be earned, due or calculable unless the sale upon which the Commission is based becomes a Commission Qualified Sale before the end of the Verification Period.

Salesperson further acknowledges and agrees that to the extent Commissions paid by FRI during Salesperson's employment exceed the actual amount earned by Salesperson (whether due to the cancellation or rescission of a contract or otherwise), Salesperson shall be obligated immediately to return to FRI any Commissions paid in excess of the actual amount earned by Salesperson. Salesperson therefore acknowledges and agrees that FRI may deduct from any payments due and owing to Salesperson all or any portion of such excess Commission payments. This right of deduction shall be in addition to and not to the exclusion of other remedies that may be available to FRI as a result of such overpayment.

CONFIDENTIAL

4. CANCELLATION OF SALES CONTRACTS. FRI reserves the right to cancel a sales contract, with or without refund to the purchaser, under such circumstances as FRI deems appropriate, in its sole judgment. If a sales contract is cancelled, Salesperson shall be entitled to Commissions (including incentive compensation) calculated in accordance with the Contract Standards only on monies actually collected and not refunded by FRI under such sales contract. Any Commission (including incentive compensation) previously paid to Salesperson in excess of the amount provided for above shall, at FRI's discretion, be (a) repaid by Salesperson directly to FRI; or (b) charged against Salesperson's unpaid or future Commissions. Sales volumes will be recalculated as provided in the Contract Standards.

5. LIMITATION ON OUTSIDE ACTIVITIES. Salesperson shall devote his/her entire employment time and attention to the business of FRI. Salesperson shall report to his/her supervisor outside employment or business activity, whether or not such activity is pursued for gain, profit or other consideration, and shall not, without the express written approval of FRI, engage in any such outside business activity.

6. DISCLOSURE OF INFORMATION. Salesperson agrees and acknowledges that, as an employee of FRI, Salesperson may be given or be privy to certain valuable, proprietary or confidential information, including but not limited to sales, marketing, and training materials and information, Product pricing data and strategies, and prospect or purchaser lists. Except in the normal course of Salesperson's duties hereunder, Salesperson shall not, while employed by FRI or at any time thereafter, copy or disclose any such information to any person or entity for any reason or purpose, nor shall Salesperson utilize such information. Salesperson agrees that all such information, including any copies thereof, is the property of FRI and that immediately upon termination of Salesperson's employment with FRI all such property, information and data, including any copies, recordations (whether in written or electronic form) or abstracts thereof, shall be returned to FRI.

7. INDEMNIFICATION. Salesperson agrees to protect, defend and indemnify FRI for all losses, costs, liabilities, claims (including costs of investigation), refunds, fines, damages or expenses, including attorneys' fees and expenses, which FRI may incur in consequence of any act or omission by Salesperson: (a) in violation of the Contract Standards or any other provision of this Agreement, including but not limited to Salesperson's obligations under Paragraphs 6, 8, 9 and 11; (b) in violation of the Conflict of Interest Statement; or (c) which constitutes a material misrepresentation by Salesperson. FRI agrees to protect, defend and indemnify Salesperson for all losses, costs,

liabilities, refunds, fines, damages or expenses, including attorneys' fees and expenses, which Salesperson may incur as a result of any violation by FRI of any provision of this Agreement.

8. PROFESSIONAL STANDARDS. Salesperson hereby agrees that, throughout his/her employment with FRI, Salesperson will:

(a) be informed on and abide by all policies and procedures established by FRI, including but not limited to personnel policies, dress codes and standards of conduct, whether or not such policies are referenced herein;

(b) answer all calls and letters factually and promptly;

(c) conduct himself/herself in a courteous, professional manner so that his/her behavior reflects high business standards and moral values;

(d) be informed on and abide by all laws and regulations governing the sale of FRI's Products in order to protect the company and clients;

(e) quote only such prices, terms and conditions for the sale of Products as FRI shall prescribe for quotation;

(f) bear and pay all personal expenses (e.g., mileage, entertainment expenses, real estate licensure);

(g) maintain general liability insurance on his/her automobile and provide FRI with proof of same upon request; and

(h) annually execute FRI's Conflict of Interest Statement.

9. REGULATORY AGENCIES. Salesperson acknowledges that FRI's Products are, or may become, registered under various state laws and regulations and that maintaining a reputation for legal and ethical dealing, as well as meeting all legal requirements pertaining to Product registration, is essential to FRI's business operation and the ability of Salesperson to sell FRI Products pursuant to the terms of this Agreement. Salesperson agrees to:

(a) Read and comply with all regulations promulgated by state agency(ies) governing the sale of FRI's Products;

(b) Not engage in the following practices:

1. Permitting the false announcement that a Product is being sold or repetitive announcements of the same product being sold, in order to induce a sense of urgency in a prospective purchaser.

2. Failing to give the property report to a purchaser or giving the property report to a purchaser along with other materials in such a manner that the property report is concealed from the purchaser.

3. Giving a contract to a purchaser before delivery of the property report.

CONFIDENTIAL

4. Referring to the property report or offering statement as anything other than a property report or offering statement.

5. Discriminating against any person for reason of race, creed, sex, country of national origin, religion, handicap, age, ~~or~~ familial status, or any other status protected by law.

6. Selling a product as an investment, rather than emphasizing its use for recreational value.

7. Making any false, misleading or fraudulent statement as to the product, its value or its potential for resale or rental.

8. Making any discourteous, demeaning or derogatory comments about or in the presence of any customer.

(c) Promptly notify the sales manager or other authorized person of any cancellation or rescission or attempted cancellation or rescission, in accordance with the procedures established in the Contract Standards.

Salesperson agrees and acknowledges that, in order to assure compliance with the provisions set forth herein, FRI may from time to time evaluate Salesperson's performance through the use of various methods, including but not limited to "secret shoppers," undisclosed recordings and/or monitoring of sales and telephone presentations or conversations with customers or potential customers.

10. <u>LICENSE</u>. Prior to participating in any sales activity on behalf of FRI, Salesperson shall deliver to the Broker of Record (as designated by FRI's senior manager at each site) Salesperson's license to sell real estate if such license is required by law in the state in which he/she is employed by FRI, which license shall be displayed in a conspicuous place on the premises.

11. <u>COVENANT NOT TO COMPETE</u>. In consideration for the employment or continued employment of Salesperson as provided herein, the ongoing training of Salesperson, and the disclosure to Salesperson of the information described in Paragraph 6 above, Salesperson agrees that, during Salesperson's employment with FRI and for a period of six (6) months after termination of such employment, whether such termination is at Salesperson's or FRI's initiative and whether for cause or without cause, Salesperson will not, without the prior written consent of FRI (i) sell, procure purchasers for, or otherwise provide timeshare, vacation club or related products or services on Salesperson's own behalf or for any person or entity having a sales office or a timeshare or resort located within a twenty-five (25) mile radius of the FRI sales office(s) or site(s) at which Salesperson was employed at any time during the six (6) months prior to termination, or (ii) become or remain interested in, associated with or employed by any person, firm, business,

corporation or other entity that is engaged in the business of building, developing, managing, marketing, or selling timeshare, vacation club or related products or services, or any other business similar to FRI's business that is operating within a twenty-five (25) mile radius of the FRI sales office(s) or site(s) at which Salesperson was employed at any time during the six (6) months prior to termination.

Salesperson further agrees that, for a period of twelve (12) months after Salesperson's termination of employment, whether such termination is at Salesperson's or FRI's initiative and whether for cause or without cause, Salesperson will not, for himself/herself or for any person, firm, business, corporation or other entity with which he/she is or may become associated in any capacity, engage in any of the following: (i) hire, offer to hire, recommend for hiring, contact, solicit, suggest, persuade, attempt to persuade, or identify for recruiting purposes any employee of FRI or any person who worked or provided services for FRI for employment or for the establishment of any other business relationship, including retention as a consultant or independent contractor; (ii) contact, solicit, suggest, persuade, or attempt to persuade any individual or entity that is a customer of or owner with FRI to discontinue his, her, or its relationship with FRI; (iii) contact, solicit, suggest, persuade, attempt to persuade, or identify for sales or marketing purposes any person whom Salesperson, as a result of her/her employment with FRI, met, communicated with, contacted, identified, or whose identity became known to Salesperson as a potential purchaser of timeshare, vacation club or related products or services for the establishment of any business or contractual relationship relating to the purchase of timeshare, vacation club or related services, and (iv) contact, solicit, suggest, persuade, or attempt to persuade any persons or entities with which FRI has contracted to provide goods or services to discontinue their relationship with FRI.

12. TERMINATION; SURVIVAL OF COVENANTS. Salesperson's employment with FRI can be terminated at any time by either party, with or without cause; provided, however, that the provisions of this Agreement contained in paragraphs 6, 7 and 11 shall survive termination of Salesperson's employment.

13. REMEDIES FOR BREACH. In the event of a breach or threatened breach of any provision hereof by Salesperson and in addition to all other remedies available at law or in equity, including the right to recover damages sustained as a result of Salesperson's breach, FRI shall be entitled to an injunction against such breach, without the requirement to post a bond or other security or to prove irreparable injury or inadequate remedy at law.

14. GOVERNING LAW. This Agreement shall be construed according to the laws of the State in which Salesperson was last employed by FRI.

15. SEVERABILITY. If any provision of this Agreement conflicts with any present or future law or regulation contrary to which the parties have no legal right to contract, such provision shall be automatically conformed to such law or regulation and this Agreement shall otherwise continue in full force and effect. If any court of competent jurisdiction deems any provision hereof (including any provision of Paragraph 11) unenforceable, such provision shall be deemed modified to the extent necessary to render such provision enforceable and this Agreement shall remain valid and enforceable as so modified.

16. AMENDMENT; WAIVER. This Agreement may not be modified or amended, and no provision hereof may be waived, except with the written consent of a duly authorized representative of FRI (who must, at the time of providing such written consent, hold the position of Senior Vice President or higher), and then only as and to the extent provided in such written document. No waiver by FRI of any breach of this Agreement shall be deemed a waiver of any preceding or succeeding breach.

17. ENTIRE AGREEMENT. The parties agree that this Agreement terminates and supersedes all prior contracts and/or agreements between the parties with respect to the matters addressed herein and that this Agreement, including the documents incorporated herein, constitutes the entire agreement between FRI and Salesperson with respect to the matters addressed herein. In the event of any inconsistency or conflict between any provision of this Agreement and any other publication or policy of FRI or any other provision hereof, FRI shall have the sole right to declare which shall control.

SALESPERSON: FAIRFIELD RESORTS, INC.:

Shirley Schumacher By: ____________________

VICE PRESIDENT OF SALES



FFR-000334