UNITED STATES DICTRICT COURT
DISTRICT OF RHODE ISLAND

SHIRLEY SCHUMACHER

Plaintiff,

v.

CIVIL ACTION NO. 05-500T

FAIRFIELD RESORTS INC., a foreign Corporation doing business in RI and CORE INC., a foreign Corporation doing Business in RI; and A.B.C: Unknown,

Defendants,

**MEMORANDUM OF SHIRLEY SCHUMACHER IN SUPPORT OF HER SECOND AMENDED OBJECTION TO FAIRFIELD RESORTS, INC.'S MOTION FOR SUMMARRY JUDGMENT**

Plaintiff Shirley Schumacher ("Schumacher") submits this Memorandum of Law in support of her objection to Defendant Fairfield Resorts, Inc.'s Motion for Summary Judgment. Schumacher's Amended Complaint alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.,* on the basis of her sex; The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §62 1, *et seq.;* the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et* seq.; the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et* seq., the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42- 112-1, *et* seq., on the basis of her sex and her age; violation of the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-2, *et seq.;* breach of contract; estoppel; and retaliation in violation of public policy, Title VII and the FMLA.

## PRELIMINARY STATEMENT

The Plaintiff Shirley Schumacher ("Schumacher") was verbally and emotionally abused by her supervisor Joseph Hutnick ("Hutnick"). Hutnick's discriminatory conduct caused Schumacher emotional stress sufficient to warrant her physician to require that she take a medical leave of absence. Schumacher who had complained to co-workers about Hutnick's discriminatory comments was demoted and terminated by Hutnick after her co-workers' informed him of her complaints. Schumacher was on leave authorized by Fairfield when her FMLA leave was denied and Hutnick terminated her. The pretext used by Hutnick to terminate Schumacher was her failure to provide information to CORE necessary to substantiate her medical leave. Information that Hutnick knew Fairfield had requested and Fairfield received from Schumacher. Before she was demoted and terminated Schumacher was Fairfield's only woman sales manager as well as it's oldest. These facts raise an inference that Schumacher's termination was discriminatory and that summary judgment is not appropriate in this case.

## SUMMARY OF FACTS[1]

Schumacher initially began working in the timeshare industry in 1983 and was employed by a corporate predecessor to Fairfield. After Fairfield took over corporate ownership, Fairfield promoted Schumacher to sales manager she was responsible for the recruitment and management of sales associates. In January, 2004, Schumacher was managing a sales program called Discover when her recently appointed supervisor Joseph Hutnick ("Hutnick") changed its name to Exit and made her "acting" manager (Schumacher Deposition, pp.80-81).

---

[1] The following facts are drawn from the Statement of Disputed Material Facts submitted by Schumacher pursuant to Local Rule 56, and the Appendix of Exhibits submitted therewith.

In late January 2004 shortly before Schumacher left for a scheduled vacation she had a meeting with Hutnick regarding the Exit program. Hutnick advised her that a time-share company in Wisconsin called DELLS also had an Exit program that was doing very well. In an effort to learn if the successful Exit Program in Wisconsin was doing something that wasn't being done by Fairfield. Schumacher called Wisconsin; she was told that they did not have an Exit Program and that things were very slow. When Schumacher went to Hutnick and told him what Wisconsin had told her he became very angry (Schumacher Deposition, p.87).

Hutnick asked her why she had called Wisconsin, Schumacher responded by telling him she wanted to improve her performance and that of the Exit program. Hutnick still very angry called her a "cunt" and walked away. (Schumacher Deposition, p.77)

Following this incident Schumacher complained to Fairfield employees Lemlar and Coppa that Hutnick had called her a "cunt" and "bitch" Both Lemlar and Coppa reported to Hutnick what Schumacher had told them. (Schumacher Deposition, p.88) (Schumacher Affidavit, ¶ 4, Exhibit, 2). Shortly thereafter, and before Schumacher left for her scheduled vacation Hutnick told her that when she returned that she would no longer be manager (Schumacher Deposition, p. 106). Schumacher went to Florida for vacation but was unable to relax and became more depressed over the demeaning incidents with Hutnick. Consequently, she quit her vacation early, returned to Rhode Island and sought the care of her physician Dr. James D. Gloor.

Dr. Gloor began treating Schumacher for stress and provided her with a disability certificate indicating that she could not work from February 11, 2004 through April11, 2004 (Deposition of Dr. James D. Gloor ("Gloor Deposition") pp 9-13).

Schumacher also contacted Jan Weber, Leave and Disability Coordinator at Fairfield and requested leave, which Fairfield authorized. (Schumacher Deposition, p. 97; Schumacher Affidavit, ¶ 7 Exhibit 5)

On February 26, 2004 Schumacher did contact Core, Inc. ("Core") to tell it that she was not making application to Core for short term-disability that she had elected instead to receive Temporary Disability Insurance ("TDI") through the policy provided by the State of Rhode Island because she would receive more money. (Schumacher Deposition, pp.130-131) ;(Schumacher Affidavit ¶ 18, Exhibit 14).

Fairfield contacted Schumacher by letter dated March 16, 2004 this letter was a Medical Leave of Absence Notification letter from Jan Weber advising her to have the attached Medical Certification Form completed by her physician and then return it. The letter stated that Fairfield would determine the length of approved leave based upon the information provided on the form. (Schumacher Affidavit, ¶ 9, Exhibit 6)

Fairfield again contacted Schumacher by telephone on March 30, 2004 Schumacher advised the caller that she had the forms for Dr. Gloor and that she would see him on the 9th and bring it back on the 11th the caller advises Schumacher that it was "OK". (Schumacher Affidavit, ¶ 10, Exhibit 7).

Schumacher provided Jan Webber, Fairfield's Leave and Disability Coordinator with a note stating that her doctor would be mailing her all the information she needed. Schumacher also provided a Disability Certificate stating that She was totally disable from April 10,2004 through May 11,2004. (Schumacher Affidavit, ¶ 11, Exhibit 8)

Dr. Gloor sent Schumacher's Certification Forms to Fairfield (Schumacher Deposition, pp. 97-99). On April 16, 2004, his office mailed Schumacher's Physician's

Certification form. (Gloor Deposition, pp.34, 35) (Schumacher Affidavit, ¶ 12, Exhibit, 9).

Fairfield received the Physicians Certification Form that Dr. Gloor's office mailed on April 16, 2004 and produced it as part of Schumacher's personnel file. Schumacher Affidavit, ¶13, Exhibit, 10) Fairfield also received Schumacher's Medical Certification Form and produced it as part of Schumacher's personnel file. (Schumacher Affidavit, ¶ 14, Exhibit, 11)

Hutnick terminated Schumacher in a letter dated April 21, 2004. (Schumacher Affidavit, ¶15; Exhibit, 12) The reason given for her termination was that Core had denied her FMLA application. (Schumacher Affidavit, ¶16; Exhibit, 13)

## II. ISSUES

1. Whether Schumacher presents sufficient facts to establish age and sex were a motivating factor for Discrimination?

2. Whether Schumacher presents facts sufficient to establish that she was subjected to a Hostile Work Environment?

3. Whether Schumacher's Hostile Work Environment claim is barred as a matter of

4. law.

5. Whether Schumacher presents facts sufficient to establish that Fairfield interfered with her entitlement to FMLA and PFMLA leave.

6. Whether Schumacher's Retaliation claims should be dismissed for failing to exhaust administrative remedies?

7. Whether Schumacher presents facts sufficient to establish that Retaliation was a motivating factor in the denial of her FMLA entitlement?

7. Whether Schumacher presents facts sufficient to establish that Retaliation was a motivating factor in her demotion and termination?

8. Whether Schumacher present facts sufficient to show a causal connection?

9. Whether Schumacher presents facts sufficient to show an employment contract with Fairfield?

10. Whether Schumacher presents facts sufficient to show Fairfield breached her employment contract by breeching its covenant of good faith and fair dealing?

11. Whether Summary Judgment is appropriate in this case?

## ARGUMENT

## Schumacher can establish that Age and Sex were Motivating Factors in Schumacher's Demotion and Discharge

Schumacher is pursuing her Employment Discrimination and Family Medical Leave claims under both the burden- shifting method of proof outlined in McDonnell-Douglas v. Green, 411 U.S. 792 (1973), Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981) and the mixed-motive analysis standards articulated in Price Water House v. Hopkins, 490 U.S. 228 (1989), Desert Palace v. Costa, 590 U.S. 90(2003). The Plaintiff may elect to proceed simultaneously on both fronts and the trial court, at the appropriate time in the litigation, will channel the case into one format or the other Fernandez v. Costa Bros. Masonry, Inc., 199 F.3d 572, 581 (1st. Cir. 1999).

Fairfield argues that Schumacher cannot establish a prima facie case of age and gender discrimination because she was not performing her job at a level that met its legitimate expectations (Fairfield Memorandum ("Memorandum") at 10). Fairfield alleges that Schumacher failed to meet its legitimate expectation because in 2002 approximately two years

before her demotion and discharge she received two Notices of Corrective Action from a former supervisor. In addition, Fairfield also alleges that Hutnick noted Schumacher's performance deficiencies and caused him to consider demoting her (Memorandum at 12).

The burden of making out a prima facie case belongs to the plaintiff, but it is not an "onerous one," Snachez v. Puerto Rico Oil Co., 37 F.3d 712 (1st Cir. 1994). It requires a small showing Reed v. LePage Bakeries Inc., 224 F3d 254, 259 (1st Cir. 2001).

Prior to Schumacher's demotion and discharge she was Fairfield's oldest manager and the only woman. (Exhibit A, Schumacher Affidavit ("Affidavit"), ¶ 2, Exhibit 1). Her work performance was equal to and in instances superior to other managers (Affidavit ¶5 Exhibit, 3). The Corrective Action Notices she received were based on misinformation. (Schumacher Deposition, pp.61 -65) The supervisor, who issued these Notices, amended a Corrective Action Notice because a portion of it was erroneous. (Affidavit, ¶ 6 Exhibit 4) The unknown deficiencies that may have been noted by Hutnick concerning Schumacher's work performance (Memorandum at 12) apparently did not violate Fairfield policy or were of sufficient severity to warrant their memorialization in the form Corrective Action Notices since he did not issue any to Schumacher.

## Schumacher can show Pretext and that Discrimination was a Motivating Factor in Fairfield's reason for her termination

Fairfield argues that its legitimate nondiscriminatory reason for terminating Schumacher was her failure to properly support her request for FMLA leave by failing to provide medical documentation to Core (Memorandum at 12). A plaintiff can show that the employer's stated reasons are pretextual in a number of ways Santiago-Ramos v. Centential P.R. Wireless Corp., 217 F.3d 46,54 (1st Cir. 2000). Pretext can be established by showing weaknesses,

implausibility's, inconsistencies or contradiction in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted nondiscriminatory reason Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir.1998).

Here, Fairfield provided Schumacher with the medical documentation forms to support her FMLA leave and requested that she complete the forms and return them to Fairfield. Schumacher returned the completed medical documentation to Fairfield as instructed (Affidavit ¶¶ 9, 14 Exhibits, 6, 11). Fairfield argues that Schumacher's failure to provide those medical forms to Core served as a legitimate basis for her termination by Hutnick who knew that Fairfield had requested that Schumacher return the medical forms to Fairfield. Evidence that the employer's stated reasons for its actions are pretextual can be sufficient to show improper motive, and hence survive summary judgment Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 143 (2000); Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 6-7 (1st Cir (2000).

Hutnick called Schumacher an old bitch and cunt. Statements by supervisors carrying the inference that the supervisor harbored animus against protected classes of people or conduct are clearly probative of pretext. Kellyv. Airborne Freight Corp., 140 F3d. 335,347-48 (1stCir 1998) A Plaintiff can show that the employer's nondiscriminatory reason is pretextual by showing that discriminatory comments were made by the key decision maker or those in a position to influence the decision maker Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670 675 -76 (1st Cir 1996). Here, Hutnick demoted Schumacher after learning she had complained to coworkers about his discriminatory comments. Hutnick terminated her for not returning her medical forms to Core even though he was notified by Fairfield that it had requested that Schumacher return them to Fairfield. Theses facts are

sufficient to create an inference that Hutnick's stated reasons for demoting and terminating Schumacher were pretextual and that he harbored a discriminatory animus toward Schumacher.

**Hutnicks's offensive comments and subsequent demotion of Schumacher created a hostile environment**

Fairfield asserts that discriminatory comments by Hutnick were neither severe nor pervasive and therefore fails to create any hostile environment as a matter of law. And that Schumacher never complained of a hostile work environment. That therefore her claims are barred pursuant to the affirmative defense recognized in Faragher v. City of Boca Raton 524 U.S. 775,787-789 (1998) (Memorandum at 14).

There is no mathematically precise test for determining when conduct in the work place moves beyond the merely offensive and enters the realm of unlawful discrimination Harris v. Forklift Systems, Inc., 510 U.S. 17, 21(1993).

Schumacher complained to co-workers that Hutnick made discriminatory comments to her. These coworkers reported her complaint to Hutnick who then made a report of that complaint and entered it into Schumacher's personnel file. (Schumacher Affidavit, ¶ 4, Exhibit 2). The harassment report submitted by Hutnick stated Schumacher had accused him of calling her an "Old cuss and bitch" (Schumacher Affidavit, ¶ 4 Exhibit 2) shortly after learning of her complaint Hutnick demoted her from Sales Manager to Sales Associate. Hutnick's discriminatory comments and her demotion caused Schumacher stress sufficient to warrant a physician to classify her as totally disabled and unable to work (Gloor Deposition, p.17).

**Schumacher's claims not barred by Faragher and Ellerth**

Time and experience had shown Schumacher that the anti-harassment hot line Fairfield provided did not work. (Schumacher Deposition, 47) Other than receiving the policy manual itself

Schumacher received or training and was not familiarized by Fairfield with the meaning of its contents. Despite an extensive list of policies and procedures promulgated by Fairfield. Schumacher a manager never saw anti -harassment notices posted on a bulletin board or did she receive any instruction in matters related to policies and procedures. (Schumacher Deposition, p.49.) Even assuming Schumacher failed to avail herself to Fairfield's complaint procedures. The discriminatory comments Hutnick made to Schumacher and her subsequent demotion should deny Fairfield the benefit of an affirmative defense. No affirmative defense is available when the supervisor's harassment culminates in a tangible employment action such as discharge, demotion, or undesirable reassignment Faragher v. City of Boca Raton 524 U.S. 775,787-789 (1998), Arrieta - Colon v. Walmart 434 F.3d 75 (1st Cir. 2006).

## Schumacher was entitled to FMLA and RIPFMLA leave

Fairfield states that Schumacher applied for and was denied FMLA leave because she failed to timely provide any documentation to support her request for leave to Core, (Memorandum at 19). However, Schumacher never made application to Core for FMLA leave or short term Disability. Her application for FMLA leave was made to Fairfield and her application for Short Disability went through her Rhode Island, TDI insurance.

On February 26, 2004 Schumacher did contact Core, Inc. ("Core") to tell it that she was not making application to Core for short term-disability. She had elected instead to receive Temporary Disability Insurance ("TDI") through the policy provided by the State of Rhode Island because she would receive more money. (Schumacher Deposition, pp.1 30-131; Schumacher Affidavit, Exhibit 14) She had no further contact with Core until April 30, 2004. (Schumacher Affidavit, Exhibit 14)

Fairfield provided Schumacher with her Medical Leave application form and Dr. Gloor returned it to Fairfield as requested (Schumacher Affidavit, ¶ 9 Exhibits, 6) Dr. Gloor sent all Schumacher's Certification Forms to Fairfield. (Schumacher Deposition pp. 97-99) On April 16, 2004 Dr.Gloor's office mailed a Physician's Certification form bearing Dr.Gloor's signature (Gloor Deposition, pp.34, 35; Schumacher Affidavit, ¶ 12, Exhibit, 9).

As stated above, Fairfield received a copy of the Physicians Certification Form dated April 16, 2004 and produced it as part of Schumacher's personnel file. Fairfield also received Schumacher's Medical Certification Form and produced it as part of Schumacher's personnel file.

Schumacher held a reasonable belief that Fairfield was processing her FMLA application based upon Fairfield's statements and conduct. Schumacher had no reason to believe that by cooperating with Fairfield regarding her FMLA application that she would be jeopardizing her entitlement to FMLA protected leave. "An employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave". Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579,582 (7th Cir.2000)

Additionally, Fairfield argues that because Schumacher's illness would have prevented her from returning to work within protected time frame of 12 and 13 week she is not covered under FMLA and RIPFMLA and therefore her FMLA claims should be dismissed. (Memorandum at 21)

Fairfield cites Edgar v. JAC Products, Inc., 443 F.3d 501 (6th Cir. 2006) as a case similar to this matter (Memorandum at 20). In that case, the Court held that the Defendant was entitled

to Summary Judgment finding that the employee suffered no harm from Defendant's termination because she would not have been able to return to work at the end of the statutory period. Based on this finding Fairfield argues even if Schumacher properly supported her FMLA leave her termination can be justified because she would not have been able to return to work at the end of the statutory period and therefore suffered no harm. Employees seeking relief under the FMLA entitlement theory can do so by showing that the employer's wrongful denial of their entitlement caused them harm Ragsdale v. Wolverine Worldwide, Inc.,535 U.S. 81, 84 (2002).

Here, Fairfield provides its employees whose disability exceeds the time periods covered by Short Term Disability and FMLA leave with a Long Term Disability benefit (Schumacher Deposition, Defendant's Exhibit 5, Fairfield Bates Numbered FFR-0002660). This Long Term Disability program provides compensation to the employee while he or she is disabled. Schumacher was harmed when she lost the benefit of that Long Term Disability program and its compensation when she was wrongfully denied her FMLA entitlement and terminated.

**Schumacher's Retaliation Claims**

**1. Title VII**

Schumacher complained before the Equal Opportunity Commission ("EEOC") of discriminatory treatment and harassment by Fairfield. (Amended Complaint, Exhibit 1.) Her claim that Hutnick retaliated against her for complaining that he discriminated against her is related to the complaint she made before the EEOC. "Retaliation Claims are preserved as long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency." Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 3 (1st Cir. 2003)

To prove retaliation under VII Schumacher must establish that (1) she engaged in protected activity (2) she suffered an adverse employment action after or contemporaneous with

such activity (3) there exist a causal link between the protected activity and the adverse job action. Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)

Fairfield argues that Schumacher never engaged in protected conduct (Memorandum at 23). The Equal Employment Opportunity Commission ("EEOC") defines protected conduct as opposition to any practice made unlawful under Title VII and the ADEA. The EEOC holds that this protected opposition applies when an individual explicitly or implicitly communicates to his or her employer a belief that its activity constitutes a form of employment discrimination and that a complaint about alleged employment discrimination made to a co-worker constitutes protected opposition. Appendix E-10, EEOC Compliance Manual Section 8: Retaliation 3 -4 (1998)

In determining whether conduct is protected opposition, a court must balance the setting is which the activity arises and the interest and motivations of both employer and employee. Hochstadt v. Worcester Foundation of Experimental Biology, 545 F.2d 222 (1st. Cir. 1976)

Here, Schumacher complained to coworkers about discriminatory comments made by her supervisor Hutnick after he became very angry with her. Her complaint was reported to Hutnick by these same coworkers. Hutnick made a report of Schumacher's complaint and entered it into of her personnel file. Personnel files are the property of Fairfield Resorts, and access to the information they contain is restricted to Fairfield management (Schumacher Deposition, Defendant's Exhibit 5, Fairfield Bates Numbered FFR-000295). Shortly thereafter, Hutnick demoted and terminated Schumacher's employment. Schumacher's complaint is protected conduct because she reasonably believed that Hutnick's conduct violated Title VII. Benoit v. Tech. Mfg. Corp, 331 F.3d 1669 (1st Cir. 2003)

**2. FMLA - RIPFMLA**

To make out a prima facie case of retaliation, Schumacher must show (1) that she was engaged in a protected activity (here requesting FMLA leave); (2) that she suffered an adverse employment action (here being fired); (3) that there was some possibility of a causal connection between the employees protected activity and the employers adverse employment action, in that the two were not wholly unrelated. Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998)

Fairfield argues that Schumacher has failed to specify what activity protected by the FMLA she was engaged in which forms the predicate of her retaliation claim (Memorandum at 23). Schumacher must show a causal link between her termination and a retaliatory animus on the part ofFairfieldColburn v. Parker Hannifin/Nichols Portland Division, 429 F.3d 325 (1st Cir 2005).

Here, Schumacher's protected conduct was returning to Fairfield as requested medical leave documents provided by Fairfield requesting FMLA leave (Schumacher Affidavit, ¶ 7, Exhibit 6). Shortly after receiving Schumacher's medical certification forms and a Physicians Statement mailed by Dr. Gloor's office on April 16, 2004 (Schumacher Affidavit, ¶¶ 12,13, Exhibits, 9,10). Hutnick terminated Schumacher in a letter from Fairfield dated April 21, 2004, terminating her employment (Schumacher Affidavit, ¶16, Exhibit 13).

**Fairfield breeched its employment contract with Schumacher when it demoted and terminated her from employment for discriminatory reasons**

Fairfield argues that despite the employment agreement it had with Schumacher her breech of contract claim should be dismissed because she was an employee at will and that she has adduced no evidence that it breeched any terms of that agreement. In addition, Fairfield

argues that this agreement had nothing to do with the continuation or termination of her employment (Memorandum at 24).

Schumacher submits she entered into a written employment contract with Fairfield on February 13, 2003 (Schumacher Deposition, Defendant's Exhibit 4, Affidavit ¶ 3). That the employment at will is a rule of construction, not a substantive limitation on contract formation (Restatement (Second) of Agency § 442 (1971) (the general rule "is not a substantive limitation on the enforceability of employment contracts but merely a rule of construction'") (Toussaint v. Blue Cross & Blue Shield of Michigan, 292 N.W.2d 880, 884 (1980). A contract is an agreement between two or more people or entities, which creates an obligation to do or not to do a certain thing. The elements of a contract are an offer, an acceptance of the offer, legal consideration, mutuality of agreement and mutuality of obligation. Smith v. Boyed, 553 A.2d 131 (R.I. 1989); Lamareaux v. Burrillville Racing Assn. 161 A.2d 213; 91 R.I. 94 (R.I. 1960)

Here Schumacher's written agreement with Fairfield contained an offer, an acceptance of the offer, legal consideration, mutuality of agreement and mutuality of obligation. Fairfield made an offer of employment that Schumacher accepted. They had a bargained for exchange of work for pay providing legal consideration to which they mutually agreed establishing a mutual obligation. In addition, Clause 7 (Indemnification Clause) of the employment contract also incorporates all the above elements in the agreement.

In the case of Dovenmuehle Mortgage, Inc. v. Antonelli 790 A.2d 1113, 1115 (R.I. 2002) the Court stated that it is well established in Rhode Island that virtually every contract contains an implied covenant of good faith and fair dealing between the parties. That the implied covenant of good faith and fair dealing imposes a limitation upon one party adversely impacting

the contract's value to the other party Rhode Island Charities Trust v. Englehard Corp., 109 F. Supp.2.d 66, 73 (D.R.I. 2000).

The standard used in determining whether the implied covenant of good faith and fair dealing has been breeched is whether or not the actions in question are free from arbitrary or unreasonable conduct Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d.317, 329 (D.R.I. 1999). That good faith, under a subjective standard, is defined as honesty in fact Reid v, Key Bank of S. Maine, Inc.821 F.2d9,14(1st Cir. 1987).

Here, Fairfield breeched the covenant of good faith and fair dealing contained in its agreement with Schumacher when it denied her FMLA entitlement and terminated her from employment for discriminatory reasons.

**Fairfield should be estopped from denying as enforceable the promise made in its Policy Manual of equal treatment in all aspects of employment.**

Fairfield argues that Schumacher cannot sustain her claim for estoppel or detrimental reliance based on statements in its employee handbook (Memorandum at 26). It argues that Schumacher was subject to discharge for any permissible reason at any time that any reliance by her on promises regarding employment are unreasonable citing Galloway v. Roger Williams University,777 A.2d 148. 150 (R.I. 2000). However, this analysis is not applicable to the present matter. Unlike the Plaintiff in Galloway, Schumacher had a written contract and a right to continued employment. She was demoted and discharged not for permissible reasons but for discriminatory reasons. When she was discharged her agreement with Fairfield contained an enforceable covenant of good faith and fair dealing that Fairfield breeched when it terminated her.

Fairfield's Policy Manual contains a provision promising not to discriminate and to provide equal opportunity to all employees in every aspect of employment. (Schumacher Deposition, Defendant's Exhibit, 5 Fairfield Bates Numbered FFR-000212) After learning that Schumacher had complained about his discriminatory comments. Hutnick her supervisor demoted her, denied her FMLA leave entitlement and terminated her. Schumacher submits that Fairfield's Policy Manual was incorporated into its employment contract with Schumacher and that its promise not to discriminate became part of her contract. Terms of a written contract can be modified by a Policy Hand book, which then becomes part of the contract, when the contract expressly provides that it will be performed in accordance with the policies, rules and regulations of the employer. Robinson v. Bd. Of Trustees of East Central Junior College, 477 So. 2d 1352,1353 (Miss. 1985) Here, Clause 8 (a) of Schumacher's employment agreement with Fairfield incorporates compliance with Fairfield's Policy Manual as an enforceable term of the agreement. A written personnel policy promising non-discrimination and equal employment opportunity has been held to create an enforceable contract right. Stahl v. Sun Microsys 19 F.3d 533 (10th Cir. 1994) Implied contract rights were created by handbook provision promising non discrimination.Black v. Baker Oil Tools, 107 F.3d 1457 (10th Cir. 1997)

## **SUMMARY JUDGMENT SHOULD BE DENIED IN THIS CASE**

Schumacher has shown there are genuine issues of material facts in dispute that would preclude summary judgment.

## Conclusion

For the foregoing reasons Fairfield's request for summary judgment should be denied.

Respectfully submitted,
Plaintiff Shirley Schumacher
By her Attorneys

/s/ Keven A. McKenna
Keven A. McKenna #662
McKenna Law, PC
23 Acorn Street
Providence, Rhode Island 02903
(401) 273-8200

And

/s/ Michael L. Solitro
Michael L. Solitro *(Pro Hac Vice)*
553 Dyer Avenue
Cranston, Rhode Island 02920
(401) 946-0877

**CERTIFICATE OF SERVICE**

I the undersigned, hereby certify that on the 24th day of January, 2007 a copy of the within was served by ECF on the following counsel of record:

Raymond M. Ripple, Esq.
Edwards Angel Palmer & Dodge, LLP 2800 Financial Plaza
Providence, RI 02903

Timothy M. Bliss, Esq.
Brooks Magratten, Esq.
Vetter & White20 Washington Place
Providence, RI 0290

/s/ Michael L. Solitro