UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHIRLEY SCHUMACHER, Plaintiff, | : | |
| v. | : | CA 05-500 T |
| FAIRFIELD RESORTS INC., a foreign corporation doing business in RI, and CORE INC., a foreign corporation doing business in RI; and A, B, C: unknown, Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court are motions for summary judgment filed by Defendants Fairfield Resorts, Inc. ("Fairfield"), and CORE, Inc. ("CORE"), (collectively the "Corporate Defendants"), in the above entitled action. See Defendant Fairfield Resorts[,] Inc.'s Motion for Summary Judgment (Document ("Doc.") #24) ("Fairfield's Motion for Summary Judgment" or "Fairfield's Motion"); Motion for Summary Judgment of Defendant Core, Inc. (Doc. #26) ("CORE's Motion for Summary Judgment" or "CORE's Motion") (collectively the "Motions"). The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After reviewing the filings, listening to oral argument, and performing independent research, I recommend that Fairfield's Motion be granted in part and denied in part and that CORE's Motion be granted.

**Facts**

Fairfield is a corporation engaged in the sale of timeshare vacations. See Defendant Fairfield Resorts[,] Inc.'s Amended Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Doc. #48) ("Fairfield ASUF") ¶ 1; CORE's

Statement of Undisputed Facts (Doc. #27) ("CORE's SUF") ¶ 1. In her Amended Complaint (Doc. #21), Plaintiff Shirley Schumacher ("Plaintiff") alleges, *inter alia*, that Fairfield and/or CORE discriminated against her on the basis of her sex and age, violated her rights under the Family and Medical Leave Act[1] ("FMLA"), the Rhode Island Parental and Family Medical Leave Act[2] ("RIPFMLA"), the Rhode Island Fair Employment Practices Act[3] ("FEPA"), the Rhode Island Civil Rights Act[4] ("RICRA"), and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 and the FMLA. See Amended Complaint ¶¶ 19, 23, 26, 29, 32, 35, 47. Specifically, Plaintiff claims that one and/or both Corporate Defendants[5] demoted her, denied her medical leave, and terminated her employment. See id. ¶¶ 23, 26, 47.

Plaintiff began working in the time share industry in 1983 for a corporate predecessor to Fairfield. See Fairfield ASUF ¶ 2; CORE's SUF ¶ 2. After changes in corporate ownership, Plaintiff became a sales manager, who was responsible for the recruitment and management of sales associates. See Fairfield ASUF ¶ 3. Plaintiff would also assist sales associates with closing sales.[6] See id.

---

[1] 29 U.S.C. §§ 2601 et seq.

[2] R.I. Gen. Laws §§ 28-48-1 et seq. (2003 Reenactment).

[3] R.I. Gen. Laws §§ 28-5-1 et seq. (2003 Reenactment).

[4] R.I. Gen. Laws §§ 42-112-1 et seq. (2006 Reenactment)

[5] Plaintiff does not differentiate between the Corporate Defendants in her statement of claims. See, e.g., Amended Complaint (Doc. #21) ¶¶ 19, 23, 26, 29, 32, 33, 35, 38, 41, 44, 47.

[6] At her deposition, Plaintiff gave the following thumbnail description of her position: "My job is to watch my tables, to take care of them." Plaintiff's Deposition ("Plaintiff's Dep.") at 30. She later explained what this meant:

A. After a client had spent their two and a half hours

In January 2004, Plaintiff was employed by Fairfield as a sales manager, supervising a team of sales associates which varied in number from nine to thirteen. See Plaintiff's Deposition ("Plaintiff's Dep.") at 26-27, 32-33. Her supervisor was Joseph Hutnick ("Hutnick"). See Amended Complaint ¶ 10. In early January, Hutnick began to criticize Plaintiff. See id. On January 24, 2004, Hutnick met with Plaintiff and was very critical of Plaintiff's performance and of the performance of a particular sales program known as the "Exit program." Plaintiff's Dep. at 78-79; Amended Complaint ¶ 11. Hutnick told Plaintiff that the same program was being used in Wisconsin and that it was very successful. See Amended Complaint ¶ 11.

Following the meeting, Plaintiff called the Wisconsin office and inquired about the Exit program. See Plaintiff's Dep. at 84. Plaintiff was advised that the Wisconsin office did not have a

---

> with the sales representative and said no five times or more, a TO would go to the table and try to close it again.
>
> ....
>
> Q. What is a TO?
>
> A. Me, a manager[,] would go to the table and try to close it. If they couldn't close it, they would then say thank you for coming, have a nice day and your gifts are waiting. Then the Discovery department would go to the table and repitch them on what was called an Exit or Discovery program, they just changed the names. It would mean that they would get a trial program. They would get so many points to be used within a year, and it would be like $99 a month for a year, that way the company didn't lose -- if they didn't make the sale, they would have had a chance of getting it through the Discovery or the Exit program, and then when they came back to take their vacation, they would be pitched by a salesperson again, so they would have multiple chances of making a sale.

Plaintiff's Dep. at 42-43.

similar sales program and that, in fact, business was very slow.[7] See Amended Complaint ¶ 12; Plaintiff's Dep. at 85. When Plaintiff subsequently advised Hutnick of what she had learned, he became very angry. See Amended Complaint ¶ 12; Plaintiff's Dep. at 87. Hutnick asked Plaintiff why she had made the call. See Amended Complaint ¶ 12. When Plaintiff replied that she was seeking guidance so as to improve her performance and that of the program, Hutnick allegedly stated "you're a cunt,"[8] id., and turned and walked off, id.

Plaintiff was upset and distraught by Hutnick's statement. See id. ¶ 13. She complained about it to two other employees, Dave Lemlar and John Coppa.[9] See Affidavit of Plaintiff Shirley

---

[7] At her deposition, Plaintiff confirmed that after calling Wisconsin she told Hutnick that "Wisconsin Dells ... did not even have an Exit program[.]" Plaintiff's Dep. at 85. When asked if she was told by the Wisconsin office "that the Exit program was run through front line managers in Wisconsin," id., Plaintiff responded: "No. Wisconsin told me that their reps were selling the Exit program, and they were very slow and that was the reason for it. They told me they were in their down season," id. at 85-86.

[8] Hutnick denies making this statement.

[9] Although the Court accepts this allegation for purposes of deciding the instant Motions, Plaintiff's deposition testimony suggests that she may not have actually complained to Coppa:

Q. Did you have discussions with any of your co-workers about Mr. Hutnick?

A. I had mentioned what he did to me to a couple of workers.

Q. Was that Dave Lemlar, L-e-m-l-a-r?

A. Yes.

Q. Anyone else?

A. I believe Coppa heard, I believe he heard some of what was going on because his table was there.

Plaintiff's Dep. at 88.

Schumacher in Support of her Objection to Fairfield Resorts[,] Inc.'s Motion for Summary Judgment (Doc. #74) ("Plaintiff's Fairfield Aff.") ¶ 4; see also Plaintiff's Dep. at 88. Lemlar and Coppa reported to Hutnick what Plaintiff had told them, although their reports of what Plaintiff had related to them differed somewhat. See Plaintiff's Fairfield Aff., Exhibit ("Ex.") 2 (Hutnick Memorandum). According to Coppa, Plaintiff said that Hutnick had called her a "bitch." Id. Lemlar related that Plaintiff had come to him complaining that Hutnick had called her an "old cuss." Id. Hutnick wrote a memorandum documenting what Lemlar and Coppa had reported, see id., and allegedly entered it into Plaintiff's personnel file, see Memorandum of Shirley Schumacher in Support of her Second Amended Objection to Fairfield Resorts, Inc.'s Motion for Summary Judgment ("Plaintiff's Fairfield Mem.") at 11.

Shortly thereafter, but before Plaintiff left on or about February 1, 2004, for a scheduled vacation in Florida, Hutnick told her that when she returned she would no longer be a manager. See Plaintiff's Fairfield Mem. at 5;[10] see also Plaintiff's Dep.

---

[10] The sequence of Hutnick's allegedly obscene statement, the report by Coppa and Lemlar to Hutnick of what Plaintiff had said to them about the statement, and Hutnick's advisement that Plaintiff would no longer be a manager is not entirely clear from the record. See Plaintiff's Dep. at 105-06. The Court assumes that Hutnick's statement was made before the advisement of demotion and that the advisement was made after Coppa and Lemlar made their report to Hutnick as Plaintiff argues. See Memorandum of Shirley Schumacher in Support of her Second Amended Objection to Fairfield Resorts, Inc's Motion for Summary Judgment ("Plaintiff's Fairfield Mem.") at 5, 11.

Notwithstanding this assumption, the Court notes that Hutnick's memorandum could be read as suggesting that he had already informed Plaintiff of his decision to demote her prior to receiving the reports from Coppa and Lemlar. See Plaintiff's Fairfield Aff., Exhibit ("Ex.") 2 (Hutnick Memorandum)(stating that Plaintiff "behaves in this manner all the time, i.e., spreading rumors and gossiping trying to undermine people. This, in an attempt to remove people and *keep her job*.")(italics added). Cf. Burton v. Town of Littleton, 426 F.3d 9, 19-20 (1st Cir. 2005)(finding insufficient evidence of pre-termination animus where the decision to terminate plaintiff had been made before

at 106; Second Amended Statement of Disputed Material Facts in Objection to Defendant Fairfield Resorts[,] Inc.'s Motion for Summary Judgment (Doc. #73) ("Plaintiff's SADMF-F"[11]) ¶ 14.[12] Although the Florida vacation was planned to last ten days, Plaintiff returned after approximately one week because she was upset and very depressed about how Hutnick had treated her. See Plaintiff's Dep. at 89-91.

Plaintiff sought medical treatment from Dr. James D. Gloor on February 11, 2004 See id. at 90; see also Affidavit of Plaintiff Shirley Schumacher in Support of her Objection to CORE Inc.'s Motion for Summary Judgment (Doc. #77) ("Plaintiff's CORE Aff."), Ex. 2 (Disability Certificates). She told Dr. Gloor that she was not feeling well, that she had lost fourteen pounds in two and one-half weeks, that she could not sleep, and that she "had the shakes ...." Plaintiff's Dep. at 90. Dr. Gloor prescribed two medications and gave her a note stating that she was unable to work from February 11 to April 11, 2004. See id. at 91-92; Plaintiff's CORE Aff., Ex. 2. Plaintiff had a neighbor, who worked with her at Fairfield, leave the note in an

---

conversation in which superintendent allegedly called plaintiff "an old Jew bitch").

[11] The similar abbreviations for Plaintiff's Second Amended Statement of Disputed Material Facts in Objection to Defendant Fairfield Resorts[,] Inc.'s Motion for Summary Judgment (Doc. #73) ("Plaintiff's SADMF-F") and Plaintiff's Second Amended Statement of Disputed Material Facts in Opposition to Defendant CORE, Inc.'s Motion for Summary Judgment (Doc. #76) ("Plaintiff's SADMF-C") are distinguished by the last letter of the abbreviation for each.

[12] Although Plaintiff's SADMF-F ¶ 14 states that Plaintiff disputes ¶ 35 of Defendant Fairfield Resorts[,] Inc.'s Amended Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Doc. #48) ("Fairfield ASUF"), it appears from the content of ¶ 14 that Plaintiff actually intended to dispute ¶ 36 of Fairfield ASUF. Compare Fairfield ASUF ¶¶ 35-36 with Plaintiff's SADMF-F ¶ 14. In any case, the fact that Plaintiff left on or about February 1, 2004, for her Florida vacation appears to be undisputed.

envelope on Hutnick's desk. See Plaintiff's Dep. at 92.

On February 19, 2007, Hutnick signed a Personnel Action Form, indicating that he had approved a leave of absence for Plaintiff beginning February 11 and ending April 11, 2004.[13] See Plaintiff's Fairfield Aff. ¶ 8; see also id., Ex. 5 (Personnel Action Form). On or about the same date Fairfield notified CORE that Plaintiff had requested a leave of absence. CORE SUF ¶ 5. Fairfield utilized CORE as its third-party administrator for handling leaves of absences. See Fairfield's SUF ¶ 39; CORE's SUF ¶ 3. It was CORE's task to determine eligibility for benefits under the FMLA, see Fairfield's SUF ¶ 39, and also and the RIPFMLA, see CORE's SUF ¶ 3.

On February 25, 2004, CORE sent Plaintiff a letter informing her that she was eligible for leave.[14] See id. ¶ 9. The letter also stated:

> You have no further obligation to provide clinical documentation for FMLA as long as your absence is being reviewed for or is approved for short term disability

---

[13] The Personnel Action Form identifies Plaintiff's job title as "Sales Associate." Plaintiff's Fairfield Aff., Ex. 5 (Personnel Action Form). The form reflects "1st Level Approval," id., by Plaintiff's "Mgr/Supv," id., Richard McKenna, see Plaintiff's Dep. at 106, and "2nd Level Approval," Plaintiff's Fairfield Aff.,Ex. 5, by Hutnick as "Manager's Mgr," id.

[14] Although CORE states its February 25, 2004, letter informed Plaintiff that she was eligible for leave, see CORE SUF ¶ 9, and Plaintiff has not disputed this statement, see Plaintiff's SADMF-C, the Court notes that at least part of the letter states the opposite:

> The employee is ineligible because the employee has not worked the minimum hours required in the 12 months preceding the first day of this absence. Estimated date you will become eligible if you continue to work a normal work schedule: 2/17/2004.

Affidavit of Plaintiff Shirley Schumacher in Support of her Objection to CORE Inc.'s Motion for Summary Judgment ("Plaintiff's CORE Aff."), Ex. 4 (Letter from CORE to Plaintiff of 2/25/04) at 2. Read as a whole, the letter is contradictory and confusing. See id.

> benefits. If your short-term disability is not approved for the full length of your absence, the attached certification form must be completed by your physician and returned to CORE within 7 business days of the STD decision.

Plaintiff's CORE Aff., Ex. 4 at 2; see also CORE's SUF ¶ 9. A Family and Medical Leave Act Certification Form was enclosed with the February 25th correspondence to be completed by Plaintiff and her health care provider and returned to CORE. See id.

On February 26, 2004, Plaintiff called a CORE representative. See CORE SUF ¶ 10. Plaintiff told the representative that she had been approved to receive disability benefits from the State of Rhode Island and that she did not want CORE to process her claim for short-term disability benefits. See CORE's SUF ¶ 10;[15] Plaintiff's CORE Aff. ¶ 6. The CORE representative told Plaintiff that CORE managed her claim "and offsets RI benefit." Plaintiff's CORE Aff., Ex. 5 (CORE log regarding Plaintiff). Plaintiff stated that she did not want CORE to manage her claim. See id. The CORE representative advised Plaintiff that she would "check with AM[16] regarding [the] issue and have AM contact her." Id.

On March 16, 2004, Fairfield's Leave and Disability Coordinator, Jan Weber ("Weber"), sent Plaintiff a letter, stating that Plaintiff had requested a medical leave and that Plaintiff and her physician were required to complete an attached "Medical Certification" form. Plaintiff's Fairfield Aff., Ex. 6 (Letter from Weber to Plaintiff of 3/16/04). The letter also

---

[15] In an affidavit Plaintiff states that she "did not make application for short term disability to Core." Plaintiff's CORE Aff. ¶ 8. However, Plaintiff has not disputed CORE's statement "that she did not want CORE to process her claim for short-term disability benefits," CORE SUF ¶ 10; see also Plaintiff's SADMF-C.

[16] It is unclear from the present record who or what "AM" is. Plaintiff's CORE Aff., Ex. 5.

stated: "We will determine the length of approved leave based on the information provided on this form." Id.

Fairfield telephoned Plaintiff on March 30, 2004. See Plaintiff's Fairfield Aff. ¶ 10; id., Ex. 7 (Continuous Performance Appraisal). Plaintiff advised the caller that she had the Medical Certification forms[17] for Dr. Gloor and that she would see him on April 9 and return the form on the 11th. See id. The caller from Fairfield told Plaintiff that this was "ok." Id.

Shortly thereafter, Plaintiff sent a note to Weber at Fairfield, advising her that Plaintiff's doctor was mailing "all the information you need[.]" Id., Ex. 8 (Note from Plaintiff to Weber undated); see also Plaintiff's Fairfield Aff. ¶ 10. Enclosed with the note was a Disability Certificate signed by Dr. Gloor which stated that Plaintiff was unable to work from April 10 through May 11, 2004. See Plaintiff's Fairfield Aff. ¶ 11; see also id., Ex. 8.

On April 16, 2004, Dr. Gloor's office mailed a Physician's Statement of Fitness-For-Duty Release to Fairfield. See Plaintiff's Fairfield Aff., Ex. 10 (Physician's Statement of Fitness-For-Duty Release); see also Deposition of James D. Gloor, M.D. ("Gloor Dep.") at 35. In the statement Dr. Gloor indicated that he had examined Plaintiff on April 10, 2004, that she was not able to return to work, and that it was "unknown" when she would be able to do so. Plaintiff's CORE Aff., Ex. 10 at 2. In a Medical Certification Form which he signed on April 12th, Dr. Gloor described Plaintiff as: "agitated; unable to focus;

---

[17] Although Weber's letter of March 30th uses the singular "Medical Certification form," Plaintiff's Fairfield Aff., Ex. 6 (Letter from Weber to Plaintiff of 3/16/04), it appears that there was more than one form in the letter because Plaintiff uses the plural "[f]orms," Plaintiff's Fairfield Aff. ¶ 10, and the record contains both a Medical Certification Form, see id., Ex. 11, and a Physician's Statement of Fitness-For-Duty Release, see id., ex. 10.

increased situational stress - recent death of spouse[.]" Id.

CORE sent a letter to Plaintiff on April 20, 2004, advising her that her request for leave had been denied. See Plaintiff's Core Aff., Ex. 6 (Letter from CORE to Plaintiff of 4/20/04). However, this letter was sent to the wrong address, and Plaintiff did not receive it. See Plaintiff's CORE Aff. ¶ 10. CORE also advised Fairfield that Plaintiff's request for leave had been denied. See Affidavit of Andrew J. Bernstein (Doc. #47) ("Bernstein Aff.") ¶ 13. On April 21, 2004, Weber sent Plaintiff a letter, the first paragraph of which stated:

> Our vendor, CORE, has informed us that your application for FMLA was denied on 3-30-2004. As a consequence of this decision, you are being discharged effective 3-30-2004.

Plaintiff's Fairfield Aff., Ex. 13 (Letter from Weber to Plaintiff of 4/21/04).

Plaintiff called CORE on April 30, 2004, and told the CORE representative "that she d[id] not understand why she was denied by CORE because she did not request disability thru CORE." Plaintiff's CORE Aff., Ex. 5. Plaintiff called again on May 6, 2004, and inquired about appealing the denial. See id. Plaintiff subsequently submitted a handwritten appeal to CORE. See id., Ex. 8 (Appeal). However, in a letter dated May 25, 2004, CORE denied Plaintiff's appeal because "the appeal request was received after the allowable time frame." Id., Ex. 9 (Letter from CORE to Plaintiff of 5/25/04) at 2.

On September 22, 2004, Plaintiff filed a charge of discrimination against Fairfield with the Equal Employment Opportunity Commission ("EEOC") and the Rhode Island Commission for Human Rights ("RICHR"). See Amended Complaint, Ex. A (Charge of Discrimination). In her charge Plaintiff alleged that Fairfield had discriminated against her in violation of Title VII, the ADEA, and the Americans with Disabilities Act

and applicable state laws. See Amended Complaint ¶¶ 3-4; see also id., Ex. A. Specifically, Plaintiff complained that Fairfield had allowed her to be subjected to "a constant barrage of explicit[] sexual comments by [her] younger male co-workers."[18] Amended Complaint, Ex. A. Plaintiff stated that "[t]his hostile work environment became so intolerable that I was forced to go on Temporary Disability Insurance on February 3, 2004[,] for work related stress." Id. On June 24, 2005, the RICHR issued Plaintiff a right to sue letter. See id., Ex. B (Notice of Right to Sue).

**Travel**

Plaintiff originally filed this action in the Providence County Superior Court, but it was removed to this Court by Fairfield on December 1, 2005. See Docket. The instant Motions were filed on July 17, 2006. See id. Plaintiff filed her responses to the Motions on August 10, 2006. See id. On August 22, 2006, Senior (then Chief) Judge Ernest C. Torres issued an Order (Doc. #41), striking certain exhibits and an affidavit which the Corporate Defendants and/or Plaintiff had filed in connection with the Motions. See Order of 8/22/06. The Order gave the Corporate Defendants and Plaintiff discretion to file amended versions of the stricken documents. See id. They did so. See Docket. However, on September 29, 2006, the Corporate Defendants filed a joint motion to strike Plaintiff's amended

---

[18] Plaintiff's Amended Complaint does not contain any allegations regarding harassment by younger male co-workers. Plaintiff testified that her former supervisor, John Thomas ("Thomas"), had conversations with another manager in Plaintiff's presence in which Thomas used crude and sometimes obscene language. See Plaintiff's Dep. at 70-72. However, these incidents predated the arrival on September 1, 2003, of Joseph Hutnick as her supervisor, see Fairfield ASUF ¶ 22. Plaintiff has not relied upon these earlier incidents for any of her claims. See Plaintiff's Fairfield Mem.; Memorandum of Shirley Schumacher in Support of her Second Amended Objection to Core, Inc.'s Motion for Summary Judgment ("Plaintiff's CORE Mem.").

version. See Joint Motion on Behalf of Fairfield Resorts, Inc. and Core Inc., to Strike Plaintiff's Affidavits and Exhibits Filed in Support of her Oppositions to Defendants' Motions for Summary Judgment (Doc. #60) ("Motion to Strike"). Plaintiff filed an objection to this motion. See Objection on Behalf of Shirley Schumacher to Defendant Fairfield Resorts, Inc. and CORE, Inc.'s Joint Motion to Strike her Affidavits and Exhibits in Support of her Opposition to Defendant's Respective Motions for Summary Judgment (Doc. #61).

At a hearing held on October 24, 2006, this Magistrate Judge granted the Motion to Strike. See Docket; see also Order Granting Joint Motion to Strike (Doc. #62). Plaintiff appealed this ruling, but on December 6, 2006, Judge Torres affirmed the decision. See Order Affirming the Decision of Magistrate Judge David L. Martin (Doc. #65). Thereafter, Plaintiff sought leave to file amended responses to the Motions. See Motion for Leave to File Amended Responses to Defendants' Fairfield Resorts, Inc. and Core Inc.'s Motions for Summary Judgment (Doc. #66). Leave was granted by Judge Torres on January 8, 2007, see Docket, and on January 26, 2007, Plaintiff filed her amended responses to the Motions, see id.

On March 19, 2007, the Court conducted a hearing on the Motions. Thereafter, the matters were taken under advisement.

**Summary Judgment Standard**

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence

about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

The non-moving party, however, may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]o defeat a properly supported motion for summary judgment,

the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993))(alteration in original)(internal quotation marks omitted).

## Discussion

## I. Discrimination Claims (Counts 1, 2, 4, & 5)

### A. Law

In Counts 1, 2, 4, and 5 of the Amended Complaint, Plaintiff alleges that she was subjected to unlawful discrimination because of her gender and age in violation of Title VII, the ADEA, the FEPA, and the RICRA. See Amended Complaint ¶¶ 18-24, 28-33. Employment discrimination claims arising under Title VII and the ADEA are analyzed under the burden-shifting method of proof outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25 (1973), and further delineated in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-260, 101 S.Ct. 1089, 1093-97 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-24, 113 S.Ct. 2742, 2747-56 (1993).[19] See Santiago-Ramos v. Centennial

[19] The McDonnell Douglas burden-shifting analysis is applicable in cases where there is no direct evidence of discrimination and a plaintiff relies upon circumstantial evidence. See Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 64 (1st Cir. 2002); see also Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (stating that McDonnell Douglas applies to plaintiff's ADEA claim where there is no direct evidence of discrimination); Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 119 (1st Cir. 2005)(stating that in order to prevail on a claim of pretextual age discrimination, an ADEA claimant who lacks direct evidence must first make out a prima facie case); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)("When considering circumstantial evidence of sex discrimination, we apply a three-stage burden shifting framework that was first articulated in McDonnell Douglas ... and further delineated in ... Burdine ... and St. Mary's Honor Center ...."); Hodges v. Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)("[W]hen there is no

P.R. Wireless, Corp., 217 F.3d 46, 53 (1st Cir. 2000); Smith v. F.W. Morse & Co., 76 F.3d 413, 421 n.4 (1st Cir. 1996)(noting that same burden-shifting framework applies in both Title VII and ADEA cases); Smith v. Stratus Computer, Inc., 40 F.3d 11, 15-16 (1st Cir. 1994)(explaining application of McDonnell Douglas and Burdine); see also Dichner v. Liberty Travel, 141 F.3d 24, 30 n.5 (1st Cir. 1998)("We regard Title VII, ADEA, ERISA, and FLSA as standing in *pari passu* and endorse the practice of treating judicial precedents interpreting one statute as instructive in decisions involving another.")(quoting Serapion v. Martinez, 119 F.3d 982, 985 (1st 1997)); cf. Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n.4 (1st Cir. 2002)(noting that "many of the relevant legal standards applicable in employment-discrimination cases arising under the ADEA, the ADA, and Title VII are closely comparable").

Plaintiff's discrimination claims based on state law (FEPA and RICRA) are analyzed under the same framework. See Neri v. Ross-Simons, Inc., 897 A.2d 42, 48 (R.I. 2006)("This Court has adopted the federal legal framework to provide structure to our state employment discrimination statutes."); id. at 48-50 (applying the McDonnell Douglas analysis to plaintiff's age and gender claims under FEPA); Casey v. Town of Portsmouth, 861 A.2d 1032, 1036-38 (R.I. 2004)(same in case involving claims under FEPA and RICRA); Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897-98 (R.I. 1984)(stating that trial justice in considering plaintiff's state law employment

---

direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies to claims that an employee was discriminated against for availing himself of FMLA-protected rights."); Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994)("Where a Title VII plaintiff is unable to offer direct proof of her employer's discrimination—as is usually the case ... we allocate the burden of producing evidence according to the now-familiar framework set forth in McDonnell Douglas ....").

discrimination claims "should have looked for guidance ... to decisions of the federal courts in construing Title VII"); see also Donnelly v. Rhode Island Bd. of Governors for Higher Educ., 110 F.3d 2, 6 (1st Cir. 1997)(applying same prima facie standard to plaintiffs' Title VII and FEPA claims).

When a plaintiff alleges discrimination resulting in a Title VII violation, she must first prove a prima facie case by showing that: 1) she is a member of a protected class; 2) her employer took an adverse employment action against her; 3) she was qualified for the employment she held; and 4) and her position remained open or was filled by a person whose qualifications were similar to hers. Douglas v. J.C. Penney Co., 474 F.3d 10, 13-14 (1st Cir. 2007); see also Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005)(explaining that "[b]ecause employment discrimination cases arise in a variety of contexts, the prima facie elements must be tailored to the given case"); id. (stating the four elements a plaintiff must show in a wrongful termination case); Smith v. Stratus Computers, Inc., 40 F.3d 11, 15 (1st Cir. 1994)(stating elements of prima facie case where plaintiff alleged her dismissal was due to impermissible sex discrimination).

The elements of a prima facie case of age discrimination where there is no direct evidence of discrimination are similar. A plaintiff must establish that: 1) she was at least forty years old; 2) she met the employer's legitimate job performance expectations; 3) she experienced an adverse employment action; and 4) the employer had a continuing need for services provided previously by the plaintiff. Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007); Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 17 (1st Cir. 2006); Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 119 (1st Cir. 2005); Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002).

The burden for establishing a prima facie case is not onerous. Douglas v. J.C. Penney Co., 474 F.3d at 14; Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000); Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000); see also Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003)("the prima facie case is 'a small showing that is not onerous and is easily made'")(quoting Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003))(citations and internal quotation marks omitted). After the plaintiff establishes a prima facie case, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for its adverse employment action. Douglas v. J.C. Penney Co., 474 F.3d at 14; Cordero-Soto v. Island Fin., Inc., 418 F.3d at 119; Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d at 384. If the employer demonstrates such a reason, the burden returns to the employee to show that the proffered reason was mere pretext and that the true reason was prohibited discrimination. Douglas v. J.C. Penney Co., 474 F.3d at 14; Cordero-Soto v. Island Fin., Inc., 418 F.3d at 119 ("Once an employer has made a successful proffer, the claimant must then establish that the employer's given reason 'was pretextual' and that the record evidence would permit a reasonable jury to infer that the real reason was 'discriminatory animus' based on [her] age."); Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d at 384 (stating that after employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, "it falls to the plaintiff to show both that the employer's proffered reason is a sham, and that discriminatory animus sparked [its] actions")(alteration in original); Dichner v. Liberty Travel, Inc., 141 F.3d 24, 30 (1st Cir. 1998)("a plaintiff must show both that the employer's articulated reason is false[] and that discrimination was the actual reason for its

employment action")(internal quotation marks omitted).[20]

**B. Application**

**1. Discrimination Claims Against Fairfield**

**a. Prima Facie Case**

Fairfield appears to concede that Plaintiff is able to satisfy three of the four elements required to establish a prima facie case for her Title VII and ADEA claims, namely that she was at least forty years of age, that it subjected her to an adverse employment action, and that it had a continuing need for the services previously provided by Plaintiff. See Memorandum of Law on Behalf of Fairfield Resorts, Inc. in Support of its Motion for Summary Judgment ("Fairfield Mem.") at 11-12. However, Fairfield disputes that Plaintiff met its legitimate expectations. See id. Fairfield notes that in the summer of 2002, Plaintiff received two Notices of Corrective Action and that a third such notice would have resulted in her termination. See id. at 11; see also Plaintiff's Dep. at 65-66; Fairfield ASUF, Ex. A (Affidavit of Walter Carey ("Carey Aff.")), Ex. 5 (Notice of Corrective Action dated 6/14/02); id., Ex. 6 (Notice of Corrective Action dated 8/15/02). Additionally, Fairfield points to the fact that in January 2004, after Plaintiff had been running the Exit Program for several weeks, Hutnick met with her to discuss the fact that not a single sale had been made. See Fairfield ASUF ¶ 30; see also Plaintiff's Dep. at 79.

Although it is a close question, the Court finds that

[20] The First Circuit also stated in Dichner, however, that "the Supreme Court's decision in Hicks leaves open the possibility that '[w]hen the *prima facie* case is very strong and disbelief of the proffered reason provides cause to believe that the employer was motivated by a discriminatory purpose, proof of pretext [alone]' may be sufficient". Dichner v. Liberty Travel, Inc., 141 F.3d 24, 30 (1st Cir. 1998)(quoting Lattimore v. Polaroid Corp., 99 F.3d 456, 465 (1st Cir. 1996)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993)))(alterations in original).

Plaintiff satisfies this element of her prima face case based on the following evidence in the record.[21] Plaintiff had worked in the time share industry since 1983, see Fairfield ASUF ¶ 2; see also Plaintiff's Dep. at 19, and had been promoted to manager around 2001 because of her good performance, see Plaintiff's Dep. at 23, 25. She has affirmed that her performance was equal to and in some instances superior to other managers, see Plaintiff's Fairfield Aff. ¶ 5, and she has supported this claim by submitting copies of sales reports from April through May of 2002, see id., Ex. 3 (Sales Reports). The reports show that her sales substantially exceeded those of the other two managers during those months. Id.; cf. Woods v. Friction Materials, Inc., 30 F.3d 255, 261 (1st Cir. 1994)(finding that plaintiff's "long experience in the industry and history of largely favorable

---

[21] The Court believes it is a close question because almost all of the evidence which favors a finding that Plaintiff met Fairfield's legitimate expectations predates the issuance of the Notices of Corrective action in the summer of 2002 and also predates Plaintiff's failure to achieve any sales while manager of the Exit Program in January 2004. In finding that Plaintiff has, nevertheless, satisfied this requirement, the Court is influenced by the First Circuit's opinion in Douglas v. J.C. Penney Co., 474 F.3d 10 (1st Cir. 2007). The plaintiff in Douglas had received negative evaluations for at least two years preceding his termination, and two of the evaluations had warned that he could be terminated if his performance did not improve. See id. at 12-13. He was ranked 23rd out of 23 and 23rd out of 24 in sales among men's department managers. See id. His sales had declined 9.2% in the year preceding his termination. See id. at 13. Notwithstanding these deficiencies, the Court of Appeals agreed with the district court's determination that the plaintiff had made a prima facie case. See id. at 14.

Given that Plaintiff's deficiencies appear to be no greater than those of the plaintiff in Douglas, this Court concludes that a similar determination is warranted here. Cf. Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 760 (1st Cir. 1994)(finding plaintiff established prima facie case even though the evidence she produced "does not extend fully to the time at which [she] was discharged"). But cf. Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 55-56 (1st Cir. 2006)(finding plaintiff could not show that he met employer's legitimate expectations where he did not perform well in the last two positions even though he performed well in earlier positions and had been promoted into one of them).

reviews, and [his personnel manager's] opinion that he was qualified to fill one of the openings ..." sufficient to create a genuine issue as to plaintiff's ability to meet employer's legitimate expectations); Keisling v. Ser-Jobs for Progress, Inc., 19 F.3d 755, 760 (1st Cir. 1994)(stating that plaintiff's testimony that while employed by defendant "her responsibilities were increased substantially, she received positive feedback ... regarding her performance, and she received regular pay increases," plus her introduction of a favorable letter of recommendation from defendant's former executive director supported an inference that her job performance at the time of her discharge was adequate to meet defendant's legitimate needs). As for the notices of corrective action, Plaintiff points out that the June 14, 2002, Notice of Corrective Action was "substantially modified and there were no company policy violations," Plaintiff's Fairfield Aff. ¶ 6, and she appears to dispute the validity of August 15, 2002, Notice of Correction Action, see Plaintiff's Dep. at 61-62 (stating that when John Thomas, her former supervisor, told her she "was not hiring any people ...," id. at 61, she showed him her figures and he said "it was the first he had seen those figures," id. at 62).

**b. Fairfield's Reasons**

Having made out a prima facie case, the burden shifts to Fairfield to establish a legitimate, non-discriminatory reason for its adverse employment action. Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007); Douglas v. J.C. Penney, Inc., 474 F.3d at 14; Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 17 (1st Cir. 2006). Fairfield in its memorandum does not explicitly state that Plaintiff was demoted for poor performance, but clearly that is Fairfield's

explanation.[22] As for Plaintiff's termination, Fairfield states that its legitimate reason for this action was Plaintiff's "failure to properly support a request for FMLA leave." See Fairfield Mem. at 12. Thus, the Court finds that Fairfield has articulated legitimate, non-discriminatory reasons for its action in demoting and terminating Plaintiff.

**c. Plaintiff's Response**

Fairfield having made the required proffer, the burden shifts back to Plaintiff to show that the proffered reasons were mere pretexts and that the true reason was prohibited discrimination. See Douglas v. J.C. Penney Co., 474 F.3d at 14; see also Cordero-Soto v. Island Fin., Inc., 418 F.3d at 119; Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005)("[T]he plaintiff must then demonstrate that the defendant's proffered reason was pretext for discrimination."). "The plaintiff-employee may meet her burden of proof by showing that the employer's proffered reason for the challenged employment action was pretextual from which the factfinder in turn may, but need not, infer the alleged discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d at 69 (internal citation omitted); see also Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d at 11 ("[T]he final burden of persuasion rests with the employee to show, by a preponderance of the evidence, that the reason offered by the employer is merely a pretext and the real motivation for the adverse job action was age discrimination."); Hoffman v. Applicators Sales & Serv.,Inc., 439 F.3d at 17 ("[T]he ultimate burden on the plaintiff is to show that discrimination

---

[22] This conclusion is inescapable from Fairfield's filings. See Fairfield Mem. at 10 (stating that Plaintiff "was not performing her job at a level that met Fairfield's legitimate expectations") id. at 12 ("Hutnick had considered demoting her after noting her performance deficiencies."); see also Fairfield ASUF ¶¶ 30-32 (noting total lack of sales in the Exit Program, describing Plaintiff as a poor manager, and citing conduct Hutnick regarded as insubordinate).

is the or a motivating factor, a showing which may, but need not be, inferred, depending on the facts from the showing of pretext.”).

As Plaintiff complains of two separate adverse employment actions, demotion and termination, the Court finds it helpful to discuss them separately. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073 (2002)(“Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.”)(internal quotation marks omitted).

**i. Demotion**

With regard to her demotion, Plaintiff is able to point to the following evidence to support her claim that Fairfield’s claim of poor performance was pretext. She was the only female manager and also the oldest manager. See Plaintiff’s Fairfield Aff. ¶ 2; see id., Ex. 1 (chart listing 2003-2004 sales managers). Her sales had at times exceeded the sales of two other male managers. See Plaintiff’s Fairfield Aff. ¶ 5; id., Ex. 3. Plaintiff testified that the Exit Program “was a very difficult program. They were asking as much money in the Exit program as the sales person could get at a table.” Plaintiff’s Dep. at 81; cf. Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 56 (1st Cir. 2006)(affirming summary judgment where plaintiff had “not presented evidence from which to conclude that [employer’s] job expectations were illegitimate”); Rossy v. Roche Prods., Inc., 880 F.2d 621, 625 n.4 (1st Cir. 1989)(stating that “[t]he reasonableness of the employer’s reasons may of course be probative of whether they are pretexts”)(alteration in original)(citation and quotation marks omitted). Her demotion occurred shortly after Hutnick allegedly called her “an old cunt and

bitch," Plaintiff's Aff. ¶ 4, and Plaintiff complained about his comments to Coppa and Lemlar who reported her statements to Hutnick, see id., Ex. 2.[23] The person who made the discriminatory comments, Hutnick, was the decision maker regarding Plaintiff's termination. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (explaining that one way in which plaintiff can establish that defendant's stated reasons for her dismissal are a pretext for discrimination "is to show that discriminatory comments were made by the key decisionmaker ...."); cf. Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 60 (1st Cir. 2005) (noting that "comments by a supervisor questioning whether a woman could work and raise children made within two weeks of the female employee's termination was sufficient to create a jury question on a gender discrimination claim")(citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 55); Kelley v. Airborne Freight Corp., 140 F.3d 335, 347 (1st Cir. 1998)("It is settled that statements made by decisionmakers can evidence age discrimination."). Plaintiff further testified that she had offered to pay her own way to the Wisconsin Dells to find out how they were making the program work. See Plaintiff's Dep. at 79. She denied telling Hutnick that he had lied to her when she informed him that she had learned that the Wisconsin Dells did not have an Exit program. See id. at 85.

There is no mechanical formula for finding pretext. Che v. Massachusetts Bay Trans. Auth., 342 F.3d at 39; cf. Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000)("In evaluating whether [defendant's] reason for firing her was pretextual, the question is not whether [plaintiff] was actually performing below expectations, but whether [defendant] believed that she was."). From the evidence

[23] See n.10.

cited above, a factfinder could find that Fairfield's claim that it demoted Plaintiff because of poor performance and insubordinate conduct was a pretext for discrimination. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d at 7 (agreeing with plaintiff that, viewed in the light most favorable to her, plaintiff's explanations regarding defendant's problems, coupled with her salary raise and commendations, would permit a reasonable trier of fact to infer that defendant did not actually believe that she was doing her job poorly). Specifically, a jury could find that Plaintiff's failure to achieve any sales in the Exit program was a pretext for her demotion because the program was structured in such way so as to make that result almost preordained. See Plaintiff's Dep. at 81. A jury could further find that Plaintiff had not been insubordinate in informing Hutnick of the result of her call to the Wisconsin Dells and could conclude that she had called Wisconsin in a attempt to improve her sales, see id. at 79, and that she informed Hutnick of the result of the call in a sincere attempt to correct a misapprehension under which she believed he was laboring, see id. at 81 (testifying that she liked Hutnick); id. at 85 (denying that she told Hutnick he had lied to her); cf. Che v. Massachusetts Bay Trans. Auth., 342 F.3d at 39 (finding that "the jury could have concluded that [the plaintiff] was not insubordinate to begin with and that the [defendant's] stated reason for his demotion was contrived"). Accordingly, I find that a factfinder could conclude from this evidence that Fairfield's reasons for demoting Plaintiff were pretextual. Cf. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)(cautioning that "courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent.").

I further find that a jury could rationally conclude from

Hutnick's alleged statement that Plaintiff was "an old cunt and bitch," Plaintiff's Fairfield Aff. ¶ 4, uttered shortly before he demoted her, and the fact that Plaintiff was the only female and the oldest manager that the demotion was motivated by discrimination based on Plaintiff's sex and age. Accordingly, I find that Plaintiff has proffered sufficient admissible evidence, which, if believed, is sufficient to show by a preponderance of the evidence that Fairfield's proffered nondiscriminatory reasons for her demotion were pretextual and that the actual reason was discrimination based on gender and age. Cf. Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d at 11 (stating "final burden of persuasion" which plaintiff must meet); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir. 1995)(same); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994)(explaining that "the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus").

**ii. Termination**

Fairfield claims that it terminated Plaintiff because she allegedly failed to properly support her request for FMLA leave. See Fairfield Mem. at 12. However, the February 25, 2004, letter from CORE which Fairfield contends instructed Plaintiff to provide the required documentation is contradictory and confusing. See Plaintiff's CORE Aff., Ex. 4. It indicates some thirty-six times that Plaintiff is "Eligible" for FMLA and RIPFMLA, see id., then states that "[t]he employee is ineligible ...," id. at 2, followed by four paragraphs which further add to the letter's uncertainty by suggesting the possibility that Plaintiff has been found eligible and also the possibility that she has been found ineligible, see id. Ensconced within one of the paragraphs is the instruction with which Fairfield contends Plaintiff failed to comply. See id. Moreover, when Plaintiff

advised CORE then she did not want it managing her claim, the CORE representative told Plaintiff that she would "check with AM regarding [this] issue and have AM contact her." Plaintiff's CORE Aff., Ex. 5. Although the record indicates that the CORE representative subsequently determined that CORE needed to follow Plaintiff's claim, CORE failed to make contact with Plaintiff to notify her of this fact. Thus, Plaintiff had no reason to think that she was required to submit anything to CORE for her FMLA leave.

Further complicating and confusing matters, Fairfield's March 16, 2004, letter to Plaintiff indicates that she should submit the medical forms to Fairfield. See Plaintiff's Fairfield Aff., Ex. 6. It states explicitly: "We will determine the length of approved leave based on the information provided on this form." Id. The letter makes no reference to CORE. See id. Given that Plaintiff had advised CORE on February 26, 2004, that she did not want CORE managing her claim, Plaintiff reasonably could have concluded that Fairfield's March 16th letter was prompted by her earlier advisement to CORE and that she should deal henceforth with Fairfield. Further solidifying such a conclusion, the letter, signed by Weber, includes the statement: "If you require additional time, please contact me to arrange for a possible extension of your leave." Plaintiff's Fairfield Aff., Ex. 6. Such statement clearly conveys the impression that Fairfield, and not CORE, is the decision maker with regard to Plaintiff's request for FMLA leave.

Finally, Fairfield's representative spoke with Plaintiff on March 30, 2004, and told her that it was "ok" to return the medical forms from her doctor on April 11. See id., Ex. 7. Notwithstanding this explicit grant of permission to submit the medical forms after March 30th, Fairfield subsequently terminated Plaintiff because CORE had denied her application for FMLA on

March 30, 2004. See id., Ex. 13.

Given this record, the Court has no difficulty concluding that there is evidence from which a jury could find that the reason given by Fairfield for terminating Plaintiff is pretextual.[24] See Rossy v. Roche Prods., Inc., 880 F.2d 621, 625 n.4 (1st Cir. 1989)("[T]he reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one.")(quotation marks and citation omitted).

The more difficult question is whether Plaintiff is able to show that the actual reason for her termination was based on her age and/or gender. Unlike the situation which existed relative to Plaintiff's managerial status, where she was the only female and the oldest manager, the record indicates that of the one hundred individuals employed as sales associates in Fairfield's Newport office in 2004 and 2005, thirty-three were over the age of forty and thirty were women, including Tijuana Goldstein, who was seventy-eight years old and still employed by the company. See Fairfield ASUF ¶¶ 5-6; see also Carey Aff., Ex. 1 (Sales Department Employees). Also unlike her demotion, Plaintiff's termination was not immediately preceded by comments by the decision maker evidencing a discriminatory animus. Indeed, the

[24] As noted previously, see Discussion section I.B.1.c.i. supra at 23, in evaluating whether Fairfield's stated reason for terminating Plaintiff was pretextual, the question is not whether Plaintiff actually failed to properly support a request for FMLA leave, but whether Fairfield believed that she had, see Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000). Given that Fairfield's representative had granted permission for Plaintiff to submit the medical forms on April 11, 2004, see Plaintiff's Fairfield Aff., Ex. 7, it is difficult to see how Fairfield could actually have believed that Plaintiff had failed to support her request and that such failure warranted her termination as of March 30, 2004, see id., Ex. 13 (Letter from Weber to Plaintiff of 4/21/04).

record indicates that Hutnick approved (or recommended for approval) Plaintiff's request for medical leave on February 19, 2004. See Plaintiff's Fairfield Aff., Ex. 5. Plaintiff is not able to point to any other evidence indicating age or gender discrimination in connection with her termination.

While it is true that the falsity of the employer's explanation for an adverse employment action may permit the jury to infer a discriminatory motive, such a finding does not compel it. See Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir. 2000); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49, 120 S.Ct. 2097, 2109 (2000)("Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for a judgment as a matter of law."); cf. Woodman v. Haemonetics Corp., 51 F.3d at 1092 ("The plaintiff-employee may rely upon the same evidence to establish both pretext and discrimination, provided it is adequate to enable a rational factfinder reasonably to infer that intentional age-based discrimination was a determinative factor in the adverse employment action.").

Here, while a jury could conclude that Fairfield's reason for terminating Plaintiff was pretextual, no factfinder could rationally conclude from the record that the termination was motivated by discrimination based upon Plaintiff's age or sex. Cf. Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d at 18 ("[R]egardless of whether the defendants' stated reasons for termination could be found to be pretextual, no factfinder could rationally conclude from the record before the district court that the termination–whatever its precise motivation–was

motivated by discrimination based upon [the plaintiff's] age."). Indeed, it appears far more likely, based on the totality of the evidence, that Plaintiff's termination was due to a lack of coordination between Fairfield and CORE. To use a common phrase, the left hand appears not to have known what the right hand was doing. Plaintiff received conflicting and confusing instructions from CORE and Fairfield regarding when and to whom she should submit the medical forms. Fairfield apparently failed to realize that Plaintiff's failure to submit the required forms to CORE was the result of Fairfield's own communications to Plaintiff. However, the fact that Plaintiff's termination was unfair and unjustified does not make it a violation of Title VII, the ADEA, the FEPA, or the RICRA. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994)("Title VII does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless the facts and circumstances indicate that discriminatory animus was the reason for the decision.")(citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991).). For the above reasons, the Court finds that to the extent Plaintiff relies on her termination as a basis for her discrimination claims under Counts 1, 2, 4, and 5, such claims fail because Plaintiff is unable to make the necessary showing under the McDonnell Douglas burden shifting framework.

**d. Mixed Motive**

Plaintiff states that she is also pursuing her employment discrimination and FMLA claims under the mixed-motive analysis standards articulated in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989), and Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148 (2003). See Plaintiff's Fairfield Mem. at 8. Mixed-motive employment discrimination claims are claims in which both legitimate and illegitimate reasons motivated the adverse employment decision. See Ramírez Rodríguez v. Boehringer

Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 78 n.12 (1st Cir. 2005). Accordingly, the Court also analyzes Plaintiff's employment discrimination claims using the alternative mixed motive analysis. See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 n.3 (1st Cir. 2005)(noting existence of "alternative framework involv[ing] mixed-motive analysis")(internal quotation marks omitted).

"Mixed-motive analysis is appropriate where evidence exists that an employer considered both a proscribed factor (for example, race or disability) and one or more legitimate factors (for example, competence) in making an adverse employment decision." Id. Under the mixed-motive framework, a plaintiff must present evidence of discrimination on the basis of a forbidden bias, at which point the defendant must either deny the validity or the sufficiency of the employee's evidence and have the jury decide whether the employee has proved discrimination by a preponderance of the evidence or prove that the defendant would have made the same decision, even if it had not taken the protected characteristic into account. Burton v. Town of Littleton, 426 F.3d 9, 19 (1st Cir. 2005); Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429 (1st Cir. 2000). Thus, "[e]ven under the more generous Desert Palace standard, [Plaintiff] 'must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias.'" Burton v. Town of Littleton, 426 F.3d at 20 (quoting Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003)).

Having already determined that Plaintiff's claim that she was unlawfully demoted survives the McDonnell Douglas burden shifting analysis, it is unnecessary to apply the alternative mixed-motive analysis to that adverse employment action. Thus,

the Court considers only whether Plaintiff's claim that she was terminated as a result of unlawful discrimination survives under a mixed-motive analysis. The Court concludes that it does not.

Plaintiff is unable to present sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence that her sex or age was a motivating factor in her termination. See Burton v. Town of Littleton, 426 F.3d at 20 (quoting standard stated in Desert Palace). As already explained, out of one hundred employees employed in Fairfield's Newport office during 2004 and 2005, thirty-three were over the age of forty and thirty were women. See Carey Aff., Ex. 1. The highly offensive remark by Hutnick, which for purposes of the instant Motion the Court must assume was in fact uttered, occurred at the end of January. The decision to terminate Plaintiff was not made until April 21, 2004, more than two and one-half months later. Hutnick approved (or recommended approval of) Plaintiff's request for medical leave on February 19, 2004. See Plaintiff's Fairfield Aff., Ex. 5. The substantial time interval between the making of the remark and the decision to terminate Plaintiff detracts from the weight which can be given to this evidence. The fact that Hutnick took favorable action towards Plaintiff on February 19, 2004, in approving her leave request further detracts from it. Plaintiff is unable to point to anything in the record other than the remark which indicates that her termination was the result of age and/or gender bias. See Fairfield ASUF ¶ 53. No reasonable jury could find on this evidence that Plaintiff was terminated based on the prohibited factors of age or gender. Accordingly, even analyzing Plaintiff's claim of unlawful termination using a mixed-motive analysis, this portion of Plaintiff's discrimination claim still fails. Cf. Rivera Rodríguez v. Sears Roebuck de Puerto Rico, Inc., 432 F.3d 379, 381 (1st Cir. 2005)("In the end, the question is whether a rational trier of fact could conclude

that the reason, in whole or in part, that [plaintiff] was not hired for either position was age discrimination, or that she was not hired for the second position due to retaliation for having filed an age discrimination claim.").

**e. Hostile Work Environment**

Plaintiff asserts that "Hutnick's offensive comments and subsequent demotion of [Plaintiff] created a hostile work environment." Plaintiff's Mem. at 11. As an initial matter, the Court notes that Plaintiff has not alleged in her Amended Complaint that she was subjected to a hostile work environment. See Amended Complaint; cf. Bass v. DuPont de Nemours & Co., 324 F.3d 761, 765-66 (4th Cir. 2003)(affirming dismissal under Rule 12(b)(6) of plaintiff's "hostile work environment" claim where plaintiff failed to plead facts in support of her claim). Indeed, the words "hostile work environment" do not appear in her pleading. See Amended Complaint. Although this Court believes that a plaintiff who contends she has been subjected to a hostile work environment should at least clearly allege such contention in her complaint, in the absence of First Circuit authority that such an omission bars consideration of this claim, the Court will overlook this pleading deficiency.

To establish a prima facie case for a hostile work environment claim, a plaintiff must prove: 1) that she is a member of a protected class; 2) that she was subjected to unwelcome sexual or racial harassment; 3) that the harassment was based upon sex or race; 4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; 5) that sexually or racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim did perceive it to be so; and 6) that some basis for employer liability has been

established. Douglas v. J.C. Penney, 474 F.3d at 15; O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 371 (1993)(holding that to succeed on a hostile work environment claim plaintiff is not required to prove that it seriously affected her psychological well being, only that the environment was reasonably perceived as being hostile); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 23 (R.I. 2005)("Title VII, and therefore FEPA and RICRA, are violated [w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult *** that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment.")(alterations in original)(internal quotation marks and citation omitted).

There is no mathematically precise test to determine whether a plaintiff has presented sufficient evidence that she was subjected to a severely or pervasively hostile work environment. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006); see also Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006)("In order for [plaintiff] to succeed on her hostile work environment claim, she must demonstrate 'that the complained-of conduct was so severe or pervasive that it altered the terms of her employment.'")(quoting Pomales v. Celulares Telefónica, Inc., 447 F.3d at 83). The Court examines all the attendant circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interfered with an employee's work performance. See Pomales v. Celulares Telefónica, Inc., 447 F.3d at 83; Carmona-Rivera v. Puerto Rico, 464 F.3d at 19. Because this inquiry is fact specific, the determination is often reserved for the fact finder, but "summary judgment is an

appropriate vehicle for 'polic[ing] the baseline for hostile environment claims.'" Pomales v. Celulares Telefónica, 447 F.3d at 83 (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999)(en banc))(alteration in original).

It is clear that the record does not provide a sufficient basis from which a reasonable factfinder could conclude that Plaintiff was subject to a hostile work environment. The alleged statement by Hutnick, while highly offensive, comprised only a single incident. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S.Ct. 1508, 1510 (2001)("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment")(internal quotation marks omitted); id. at 270, 121 S.Ct. at 1509-10 ("Only harassing conduct that is severe or pervasive can produce a constructive alteratio[n] in the terms or conditions of employment.")(alteration in original)(internal quotation marks omitted); Pomales v. Celulares Telefónica, Inc., 447 F.3d at 83 (holding that where the alleged harassing conduct consisted of a single incident, plaintiff failed to establish prima case of hostile work environment); id. at 84 ("While we do not preclude the possibility of a single-incident hostile work environment claim based on exclusively verbal conduct, successful single-incident claims typically have involved unwanted physical contact."); id. ("concluding that it was 'highly doubtful' that five sexual advances by a supervisor 'could be considered severe or pervasive to support a sexual discrimination claim of the hostile environment variety'")(quoting Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990)); Morgan v. Massachusetts Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990)(holding that conduct was not sufficiently severe or pervasive where, over two-week period, a coworker stood behind a plaintiff to create physical contact, surreptitiously looked at the plaintiff's

genitals in the restroom, and engaged in unwanted touching); see also Farragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2284 (1998)("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment ...."); Burnett v. Tyco Corp., 203 F.3d 980, 984-85 (6th Cir. 2000)(holding that evidence of a single battery and two offensive remarks over a six month period did not establish a hostile environment).

To the extent Plaintiff contends that the act of demoting her also contributed to the hostile work environment and that it should be considered in determining whether she has established a prima facie case, the Court has considered this piece of evidence and finds that it adds negligibly to Plaintiff's case. Accordingly, I find that Plaintiff has failed to establish a prima facie case for a hostile work environment claim because she is unable to show that the harassment was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive work environment.[25]

**2. Discrimination Claims Against CORE (Counts 4 & 5)**[26]

Although Plaintiff alleges in her Amended Complaint that "the defendants" violated the FEPA and the RICRA, see Amended Complaint ¶¶ 28-33, she makes no argument in opposition to CORE's

---

[25] Having reached this conclusion, it is therefore unnecessary to address Fairfield's additional argument that Plaintiff's hostile work environment claim is barred as a matter of law because she failed to take advantage of Fairfield's policies and procedures prohibiting discrimination. See Fairfield Mem. at 17; see also Faragher v. City of Boca Raton, 524 U.S. 775, 806-08, 118 S.Ct. 2275, 2293 (1998) (explaining that proof that an employee unreasonably failed to use any complaint procedure provided by employer will normally be sufficient to satisfy second element of employer's affirmative defense against hostile work environment claim).

[26] At the March 19, 2007, hearing Plaintiff's counsel indicated that Counts 1 and 2 were directed at Fairfield only. See Tape of 3/20/07 hearing.

contention that it is entitled to summary judgment on Counts 4 and 5, see Memorandum of Shirley Schumacher in Support of her Second Amended Objection to CORE, Inc.'s Motion for Summar[]y Judgment ("Plaintiff's CORE Mem."). Indeed, she argues only that CORE is an employer for purposes of the FMLA and that CORE interfered with Plaintiff's FMLA and RIPFMLA entitlement. See Plaintiff's CORE Mem. at 4-6. Thus, the Court finds Plaintiff has in effect conceded that summary judgment should be granted to CORE as to these counts. See Rivera-García v. Sistema Universitario Ana G. Méndez, 442 F.3d 3, 7 n.4 (1st Cir. 2006) ("'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived' because 'a litigant has an obligation to spell out its arguments squarely and distinctly'")(citation omitted); Saccoccia v. United States, 69 F.Supp.2d 297, 299 (D.R.I. 1999)(holding that issues raises without comprehensible arguments accompanied by relevant factual allegations are deemed waived).

Putting aside the issue of waiver, it is undisputed that Plaintiff was not employed by CORE and never performed any services on behalf of CORE. See CORE SUF ¶ 4. Therefore, Plaintiff's FEPA and RICRA claims against CORE cannot succeed. Moreover, even if CORE in some manner could be considered to have been Plaintiff's employer, Plaintiff has failed to make a prima facie case with respects to Counts 4 and 5 as required under the McDonnell Douglas framework. See Plaintiff's CORE Mem. Plaintiff has also failed to make any argument or showing that these claims can succeed under the alternative mixed-motive analysis. Accordingly, I recommend that CORE's Motion be granted as to Counts 4 and 5. See Ashley v. Paramount Hotel Grp., Inc., 451 F.Supp.2d 319, 333 (D.R.I. 2006)(stating that because plaintiff failed to make out a prima facie case on her FEPA claim, the court "must grant summary judgment"); cf. Barber v.

Verizon New England, Inc., No. Civ. A. 05-390-ML, 2006 WL 3524465, at *3, *7 (D.R.I. Dec. 6, 2006)(stating elements of a prima facie case of disability discrimination under FEPA and RICRA and finding that "plaintiff fails to make it past the first stage").

**II. FMLA and RIPFMLA Claims (Counts 3 and 6)**

**A. Law**

In Counts 3 and 6, Plaintiff alleges that Fairfield and CORE[27] violated the FMLA by denying Plaintiff medical leave and summarily terminating her employment. See Amended Complaint ¶¶ 26, 35. The FMLA entitles "eligible employees to, inter alia, 'a total of 12 workweeks of leave,' ... for 'a serious health condition that makes the employee unable to perform the functions of [her] position.'"[28] Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005)(quoting 29 U.S.C. §§ 2612(a)(1)(D), 2612(b)). "With limited exceptions, upon the employee's return from a qualified leave, the employer must reinstate the employee to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority." Id. (internal citation omitted).

The RIPFMLA is a state statute which corresponds to the FMLA

---

[27] In treating Counts 3 and 6 as directed against both Fairfield and CORE, the Court grants Plaintiff an indulgence. These Counts employ the singular possessive "defendant's" or "Defendant's," Amended Complaint ¶¶ 26 and 35, and they do not identify either Corporate Defendant by name. At the March 19, 2007, hearing, Plaintiff's counsel responded to the Court's question regarding the identity of the defendant in each count by stating that both Fairfield and CORE were Defendants in Counts 3 and 6. Plaintiff's counsel is advised that precision is important in pleading a case with multiple defendants and that in the future the Court may not grant a similar indulgence.

[28] The RIPFMLA provides for thirteen weeks of parental or family leave in any two calendar years. See R.I. Gen. Laws § 28-48-2 (2003 Reenactment).

and requires essentially the same elements. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 158 n.1 (1st Cir. 1998); see also Tardie v. Rehab. Hosp. of Rhode Island, 168 F.3d 538, 544 (1st Cir. 1999)(finding that because no genuine issue of fact existed with regard to plaintiff's ADA, Rehabilitation Act, and FMLA claims, no genuine issue of fact existed with regard to plaintiff's state law claims under FEPA and RIPFMLA).

**B. FMLA and RIPFMLA Claims Against Fairfield**

Fairfield contends that Plaintiff's failure to provide CORE with the required medical certification is fatal to her claim. Fairfield Mem. at 19. However, the Court has already determined that the February 25, 2004, letter from CORE was contradictory and confusing and that Fairfield compounded that confusion by communicating directly with Plaintiff and telling her to submit the medical certification to Fairfield. See Discussion section I.B.1.c.ii. supra at 25-26. The fact that Fairfield specifically granted Plaintiff permission on March 30 to submit the medical forms on April 11 undermines Fairfield's contention that it was justified in denying Plaintiff leave because she failed to submit documentation to CORE by March 30, 2004. Therefore, this argument by Fairfield is rejected.

Fairfield next argues that Plaintiff's medical absence far exceeded the twelve and thirteen week period of protected leave guaranteed by the FMLA and RIPFMLA. See Fairfield Mem. at 19-20. Fairfield contends that because it is undisputed that Plaintiff could not have returned to work until September 13, 2004, at the earliest, see Fairfield ASUF ¶ 47, Plaintiff's leave would not have been protected under any circumstance and Fairfield was entitled to terminate her employment as a matter of law, see Fairfield Mem. at 20.

The Court agrees. In Colburn v. Parker Hannifin/Nichols Portland Division, the First Circuit found that the district

court was "plainly correct," 429 F.3d at 332, in granting summary judgment on the plaintiff's claim that the defendant employer had violated his substantive rights under the FMLA where plaintiff admitted at his deposition that he was unable to return to work due to his medical condition until "well past the expiration date of his FMLA leave," id. at 329. The Sixth Circuit has similarly found that "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." Edgar v. JAC Prods., Inc., 443 F.3d 501, 506-507 (6th Cir. 2006); see also id. at 507 ("[T]he FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.")(quoting Throneberry v. McGehee Desha Cty. Hosp., 403 F.3d 972, 978 (8th Cir. 2005)) (second alteration in original); see also 29 C.F.R. § 825.216(a) (explaining that employers are permitted to "deny restoration to employment" if they can "show that an employee would not otherwise have been employed at the time reinstatement is requested"); Williams v. Toyota Motor Mfg., Kentucky, Inc., 224 F.3d 840, 845 (6th Cir. 2000)(affirming summary judgment for employer that fired plaintiff with time still remaining in the FMLA leave period where employee was medically restricted for at least nine months thereafter from doing any kind of work), rev'd on other grounds, 534 U.S. 184, 122 S.Ct. 681 (2002); Cehrs v. Ne. Ohio Alzheimer's Research Ctr., 155 F.3d 775, 784-85 (6th Cir. 1998)(holding that a company does not violate the FMLA when it terminates an employee who is incapable of returning to work at the end of the 12-week leave period allowed by the act); cf. Edgar v. JAC Prods., Inc., 443 F.3d at 510 (discussing Williams and explaining that because plaintiff suffered no damages "the employer was entitled to summary judgment even if it had 'improperly denied [plaintiff] FMLA leave'")(quoting Williams,

224 F.3d at 844).

Plaintiff asserts that Fairfield provides its employees whose disability exceeds the time periods covered by Short Term Disability and FMLA leave with a Long Term Disability benefit ...." Plaintiff's Fairfield Mem. at 14. According to Plaintiff, this Long Term Disability program provides compensation to the employee while he or she is disabled. See id. Thus, Plaintiff argues that she was harmed when she lost the benefit of that Long Term Disability program and its compensation when she was wrongfully denied her FMLA entitlement and terminated. See id.

The Court, however, fails to find in the record the document on which Plaintiff bases these assertions: "(Schumacher Deposition, Defendant's Exhibit 5, Fairfield Bates Numbered FFR-0002660)." Id. Plaintiff did not mention long term disability during her deposition, and there is no reference to it in either Plaintiff's SADMF-F or Plaintiff's SADMF-C. Cf. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d at 334 (observing that "theoretically, [plaintiff] could have suffered damages in the form of lost value of employment benefits (say, health and dental insurance) in the period between his termination and the expiration of the unpaid leave. But he proffered no evidence showing that the alleged retaliatory firing resulted in such losses")(internal citation omitted). Plaintiff's argument is, therefore, rejected.[29] Cf. Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 101-102 (1st Cir. 2004)(stating that

---

[29] The Court recognizes that the exhibits appended to Plaintiff's memoranda in support of her objections to Fairfield's and CORE's motions for summary judgment were stricken for failure to comply with Rule 7(d)(2). See Order (Doc. #41). Because of the possibility that Plaintiff may have included the missing document (Fairfield Bates Numbered FFR-0002660) in those exhibit and inadvertently failed to include it with her amended exhibits, the Court has reviewed the stricken exhibits (which were filed electronically and therefore still available). The missing document is not among them.

"[a] summary judgment motion should be granted if 'the pleadings, depositions, answers to interrogatories, and admissions **on file**, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law")(quoting Fed. R. Civ. P. 56(c))(bold added). Accordingly, I recommend that Fairfield's Motion be granted as to Counts 3 and 6.

**C. FMLA and RIPFMLA Claims Against CORE**

CORE argues that because it did not employ Plaintiff, it is entitled to summary judgment as to Plaintiff's FMLA claim (Count 3).[30] See CORE Mem. at 7. With regard to Plaintiff's RIPFMLA claim, CORE states that it is undisputed that Fairfield, not CORE, terminated Plaintiff. See id. at 9. Therefore, CORE contends that its motion for summary judgment should be granted as to Count 6.

The Court will assume, without deciding, that CORE falls within the definition of employer under the FMLA and the RIPFMLA. Cf. Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002)("Employer is defined as 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.] 29 U.S.C. § 2611(4)(A)(ii)(I). This language plainly includes persons other than the employer itself.")(alteration in original). Notwithstanding this assumption, however, CORE is still entitled to summary judgement as to Counts 3 and 6 for the

---

[30] 29 U.S.C. § 2611(4)(A) provides in relevant part that:

The term "employer"--
....
(ii) includes:
(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer ....

29 U.S.C. § 2611(4)(A).

same reason that Fairfield is entitled to such relief. Plaintiff was unable to return to work until September 13, 2004, at the earliest, see Fairfield ASUF ¶ 47, and this was well beyond the twelve and thirteen week periods provided by the FMLA and RIPFMLA. Therefore, I recommend that CORE's Motion be granted as to Counts 3 and 6.

**III. Retaliation Claims (Counts 7 and 10)**

In Count 7 Plaintiff alleges that Fairfield's termination of her employment was retaliatory and a violation of public policy of the State of Rhode Island. See Amended Complaint ¶ 38. In Count 10 she alleges that Fairfield retaliated against her by terminating her employment and denying her employment opportunities on the basis of her participation in activity protected by Title VII and the FMLA. See id. ¶ 47. The Court addresses first Plaintiff's retaliation claim pursuant to Title VII and FMLA.

**A. Count 10 (Retaliation in Violation of Title VII and FMLA)**

**1. Title VII Exhaustion of Administrative Remedies**

Fairfield argues that Plaintiff did not include a retaliation claim in the administrative charge which she filed with the EEOC and the RICHR and that, therefore, Plaintiff has failed to exhaust her remedies and her Title VII retaliation claim should be dismissed. See Fairfield Mem. at 22; see also Amended Complaint, Ex. A (Copy of Administrative Charge); cf. Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 3 (1st Cir. 2001)("Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC ...."). Plaintiff responds that "[h]er claim that Hutnick retaliated against her for complaining that he discriminated against her is related to the complaint she made before the EEOC." Plaintiff's Fairfield Mem. at 14.

The First Circuit has held that "retaliation claims are

preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency ...." Clockedile, 245 F.3d at 6. In the charge filed with the EEOC, Plaintiff complained that she had been subjected to sexual harassment by Fairfield to such an extent that the work environment had become intolerable and she "was forced to go on Temporary Disability Insurance on February 3, 2004[,] for work related stress," Amended Complaint, Ex. A., and that on April 21, 2004, she had received notification from Fairfield that she had been terminated as of March 30, 2004, see id. Plaintiff makes no mention in her EEOC filing of the statement allegedly made by Hutnick. See id. In fact, her complaint is "that my employer allowed my co-workers to subject me to sexual harassment which I neither wanted nor encouraged." Id. She also does not allege in her charge that she was demoted, but states that she was employed as a sales manager until she was terminated on or about March 30, 2004. Id.

Given that Plaintiff contends that Hutnick retaliated against her for complaining to the two employees, Lemlar and Coppa, about his statement, see Plaintiff's Mem. at 14-15, and that the retaliation took the form of Hutnick making an entry in her personnel file, demoting her, and ultimately terminating her, see id. at 15, the fact that Plaintiff does not make any mention of harassment or offensive conduct by her supervisor, Hutnick, (other than, perhaps, allegedly allowing Plaintiff's co-workers to subject her to a constant barrage of explicit sexual comments) in her EEOC complaint, gives the Court considerable concern. Also troubling to the Court is the fact that when asked in her deposition to state the facts supporting her retaliation claim, Plaintiff answered "I can't remember right now." Fairfield ASUF ¶ 56; see also Plaintiff's Dep. at 125. While the Court is cognizant of "the danger of mouse-trapping complainants, who

often file their agency complaints without counsel," Clockedile, 245 F.3d at 4, at the same time it cannot ignore the fact that allowing a plaintiff to "offer[] new incidents of discrimination or an entirely new theory," id., would circumvent the exhaustion requirement which the statute requires, see 42 U.S.C. § 2000e-5(e)(1); id. § 2000e-5(f)(1).

Although the matter is not free from doubt, the Court will give Plaintiff the benefit of a liberal interpretation of Clockedile and find that her complaint of retaliation is reasonably related to and grows out of the discrimination complained of to the EEOC and RICHR. See Clockedile, 245 F.3d at 6. Fairfield's argument to the contrary is, therefore, rejected.

**2. Title VII Retaliation Law**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: 1) she engaged in protected conduct; 2) she suffered an adverse employment action after or contemporaneous with such activity; and 3) there was a causal connection between the protected conduct and that adverse employment action. Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004); Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003): see also Velez v. Janssen Ortho, LLC, 467 F.3d 802, 806 (1st Cir. 2006)("[C]laims of retaliatory discrimination under [§ 704(a) of Title VII] must begin with a prima facie showing of three elements: (1) protected opposition activity, (2) an adverse employment action, and (3) a causal connection between the protected conduct and the adverse action.").

If a plaintiff establishes a prima facie case, the burden then shifts back to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d at 336; Che v. Massachusetts Bay Transp. Auth., 342 F.3d at 39. If

the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating her was in fact a pretext for retaliating against her for having engaged in protected conduct. See Colburn, 429 F.3d at 336 (stating this for FMLA retaliation claim); see also McDonough v. City of Quincy, 452 F.3d 8, 17 (1st Cir. 2006)(stating this for Title VII retaliation claim). "Evidence that the defendant's reason was pretext may, but need not, ground a finding of liability." McDonough v. City of Quincy, 452 F.3d at 17 (citing Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir. 2000)).

**a. Application of Title VII Retaliation Law**

**i. Protected Activity**

Fairfield notes that Plaintiff was unable at her deposition to state any facts supporting her retaliation claims. See Fairfield Mem. at 23; Fairfield ASUF ¶ 56; see also Plaintiff's Dep. at 124-25. Fairfield further notes that Plaintiff admitted that she never complained of any type of discrimination or harassment during her employment. See Fairfield Mem. at 23; see also Plaintiff's Dep. at 87.[31] Thus, Fairfield contends that Plaintiff cannot establish a prima facie case of retaliation under Title VII because she is unable to show that she engaged in protective activity. See Fairfield Mem. at 23 (citing Gonzalez v. City of Minneapolis, 267 F.Supp.2d 1004, 1011 (D. Minn. 2003)(stating that retaliation claims under Title VII and FMLA follow the same burden-shifting paradigm set forth in the Civil

---

[31] Q. Did you make any complaint about Mr. Hutnick at any time during your employment?

A. No.

Plaintiff's Dep. at 87.

Rights Act of 1991). In making this argument, Fairfield pointedly observes that: "[Plaintiff] has failed to specify what activity protected by the FMLA she engaged in which forms the predicate for her retaliation claim." Fairfield Mem. at 23. Plaintiff appears to contend that the Title VII protected activity was her complaint to Coppa and Lemlar about Hutnick's statement. See Plaintiff's Fairfield Mem. at 10, 15.

"[I]n determining whether conduct is protected opposition, a court must balance the setting in which the activity arises and the interests and motivations of both employer and employee." Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 232 (1st Cir. 1976); cf. Benoit v. Tech. Mfg. Corp., 331 F.3d at 174 ("[T]he employment activity or practice that [plaintiff] opposed need not be a Title VII violation so long as [plaintiff] had a reasonable belief that it was, and [s]he communicated that belief to [her] employer in good faith."); Garcia-Paz v. Swift Textiles, Inc., 873 F.Supp. 547, 560 (D. Kan. 1995)(explaining that in determining whether employee has engaged in protected opposition "[t]he relevant question ... is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner."). The Court also bears in mind that Plaintiff's retaliation claim may be viable even if her underlying discrimination claim is not. See Benoit v. Tech. Mfg. Corp., 331 F.3d at 174.

Giving Plaintiff the benefit of the doubt, the Court concludes that Plaintiff's action in telling Coppa and Lemlar about Hutnick's statement constitutes protected activity. In reaching this conclusion the Court is persuaded by the following circumstances. First, as noted by the Sixth Circuit in Johnson v. University of Cincinnati, 215 F.3d 561 (6th Cir. 2000),

complaints made to co-workers about discrimination based on sex are protected activity under Title VII.

> Under Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII. The Equal Employment Opportunity Commission ("EEOC") has identified a number of examples of "opposing" conduct which is protected by Title VII, including **complaining to** anyone (management, unions, **other employees**, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer-e.g., former employers, union, and co-workers. EEOC Compliance Manual, (CCH) ¶ 8006.

Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000)(bold added). Viewing the evidence in the light most favorable to Plaintiff, the Court accepts Plaintiff's statement that she "complained to fellow employees about [Hutnick's statement]," Plaintiff's Fairfield Aff. ¶ 4, and assumes that the much milder description of this activity which she gave in her deposition[32] was simply an inartful response to the question of whether she had "discussions" with any of her co-workers about Hutnick, see id.

Second, the Court finds it reasonable that Plaintiff would have believed that the statement allegedly made by Hutnick constituted sexual harassment and violated Title VII. It was obscene and clearly was directed against Plaintiff because of her sex.

Third, the Court is influenced by the fact that Plaintiff need only make a small showing to make out a prima facie case. See Calero-Cerezo v. United States Dep't of Justice, 355 F.3d at 26 (noting that plaintiff's burden of establishing a prima facie

---

[32] "I had mentioned what he did to me to a couple of workers." Plaintiff's Dep. at 88.

case of retaliation "is not an onerous one"); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)(same).

**ii. Adverse Employment Action**

Although Plaintiff implies that the adverse employment action after she complained to Lemlar and Coppa includes Hutnick's action in writing a report of her complaint and placing it in her personnel file, see Plaintiff's Fairfield Mem. at 15, the Court declines to consider this action in determining whether Fairfield has articulated a legitimate, nondiscriminatory reason for the adverse employment action. This is because Fairfield had no way of knowing until Plaintiff advanced this suggestion in her memorandum that she contended that this particular action by Hutnick was retaliatory in nature. Indeed, this Court would not have considered such action to be retaliatory until Plaintiff appeared to suggest it in her memorandum. See id. Accordingly, to the extent that Plaintiff claims as part of her prima facie case that Hutnick's writing of the report and entering it into her personnel file constitutes adverse employment action, such claim is rejected because Plaintiff failed to reasonably communicate such contention to Fairfield, denying it the opportunity to respond to Plaintiff's contention and to articulate a legitimate, non-discriminatory reason for the action.[33] Thus, the Court finds that adverse employment action taken after Plaintiff complained to her co-workers is limited to her demotion and subsequent termination.[34] Cf. Calero-Cerezo v.

---

[33] Although the Court has determined that it is unnecessary for Fairfield to articulate a legitimate, nondiscriminatory reason for the making of the report by Hutnick and his entry of it into Plaintiff's personnel file, the report appears to have been written to document Plaintiff's continued disruptive behavior. See Plaintiff's Fairfield Aff., Ex. 2.

[34] It is worth noting that although Plaintiff alleges that Fairfield retaliated against her by terminating her employment, see Amended Complaint ¶ 47, she does not explicitly allege that her

United States Dep't of Justice, 355 F.3d at 25 ("a showing of discharge soon after the employee engages in an activity specifically protected by ... Title VII ... is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation")(quoting Oliver v. Digital Equip. Corp., 846 F.2d at 103, 110 (1st Cir. 1988)) (alterations in original).

**b. Finding Re Title VII Retaliation**

The Court has already determined that Fairfield has articulated legitimate non-discriminatory reasons for both its demotion and termination of Plaintiff, namely her poor performance as a manager and her failure to return medical forms. See Discussion section I.B.1.b. supra at 21. Accordingly, the burden then shifts back to Plaintiff to show that these reasons are pretextual and that the adverse job action was the result of Fairfield's retaliatory animus. See Calero-Cerezo v. United States Dep't of Justice, 355 F.3d at 26.

The Court concludes that there is insufficient evidence in the record which would allow a factfinder to find by a preponderance of the evidence that Plaintiff's demotion and termination were the result of retaliatory animus. Among the considerations which cause the Court to reach this conclusion are the following. First, while the Court has given Plaintiff the benefit of the doubt in finding that her reports to Coppa and Lemlar constituted a complaint about sexual harassment for purposes of determining whether she established a prima facie case of retaliation, a factfinder is likely to have serious difficulty reconciling her present contention that she complained about Hutnick to her coworkers with the testimony she gave at her

demotion was the result of retaliation, see id. For purposes of deciding Fairfield's Motion, the Court assumes that Plaintiff's demotion falls within the phrase "denying her employment opportunities ...," id.

deposition. See n.31; n.32. Indeed, her testimony suggests that she did not actually complain to Coppa, but rather that he overheard some of the conversation between Plaintiff and Hutnick. See Plaintiff's Dep. at 88. Second, based on the report which Hutnick made, it appears that Coppa and Lemlar do not support Plaintiff's claim that Hutnick called Plaintiff an obscenity. See Plaintiff's Fairfield Aff., Ex. 2. Plaintiff has not filed any affidavits from Coppa or Lemlar supporting her version of what she said regarding Hutnick's statement. The Court concludes from this and also from the wording of Hutnick's report that Coppa and Lemlar do not support Plaintiff's contention regarding what Hutnick allegedly said to her. See id. Third, the uncertainty regarding the chronology relative to when Plaintiff was advised that she was being demoted and when she spoke to Coppa and Lemlar further detracts from any inference that the demotion was in retaliation for Plaintiff's conduct.

As for Plaintiff's termination, it did not follow closely the protective activity. The letter notifying Plaintiff of her termination is dated April 21, 2004, almost three months after she complained to Coppa and Lemlar. See Plaintiff's Fairfield Aff., Ex. 13. Moreover, during the intervening period of time Hutnick had taken favorable personnel action towards Plaintiff by recommending that she be granted medical leave. See Plaintiff's Fairfield Aff., Ex. 5. This substantially undermines any contention that Hutnick's decision on or about April 21, 2004, to terminate Plaintiff was in retaliation for complaining to Coppa and Lemlar.

Accordingly, I find that Plaintiff's claim that Fairfield retaliated against her in violation of Title VII cannot succeed.

**3. FMLA Retaliation Law**

The elements of a prima facie case of retaliation under the FMLA are similar to the elements of a prima facie case of retaliation under Title VII. A plaintiff must show: 1) that she

availed herself of a protected right under the FMLA (such as requesting or taking FMLA leave); 2) that she suffered an adverse employment action; and 3) that there is a causal connection between the protected activity and the employer's adverse employment action. See Hodges v. Gen. Dynamics, Corp., 144 F.3d 151, 161 (1st Cir. 1998); see also Colburn v. Parker Hannifin/ Nichols Portland Div., 429 F.3d at 336 n.10 (stating third element of prima facie case of retaliation under FMLA: "that there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action, in that the two were not wholly unrelated"). The showing required for a plaintiff to establish a prima facie case of retaliation is "a small showing that is not onerous and is easily made." Che v. Massachusetts Bay Transp. Auth., 342 F.3d at 38 (quoting Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)).

**a. Application of FMLA Retaliation Law**

Plaintiff asserts that her "protected conduct was returning to Fairfield as requested medical leave documents provided by Fairfield requesting FMLA leave." Plaintiff's Fairfield Mem. at 16 (internal citation omitted). Plaintiff states that "[s]hortly after receiving [her] medical certification forms and a Physicians Statement mailed by Dr. Gloor's office on April 16, 2004[,] Hutnick terminated [Plaintiff] in a letter from Fairfield dated April 21, 2004, ...." Plaintiff's Fairfield Mem. at 16 (internal citations omitted).

**b. Finding Re FMLA Retaliation Claim**

Plaintiff's contention that Fairfield terminated her because she returned medical forms strains credulity. The Court dispenses with the burden shifting framework and finds that no reasonable factfinder could conclude on the evidence in this case that Plaintiff's termination was in retaliation for submitting medical forms. See Calero-Cerezo v. United States Dep't of

Justice, 355 F.3d at 26 ("[O]n summary judgment the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus.")(alteration in original).

**4. Finding Re Count 10**

For the reasons stated above, Plaintiff's claims of retaliation in violation of Title VII and the FMLA cannot succeed.[35] Fairfield is entitled to summary judgment on Count 10, and I so recommend.

**B. Count 7 ("violation of public policy")**

In Count 7 Plaintiff alleges that Fairfield's termination of her employment was retaliatory and a violation of public policy of the State of Rhode Island. See Amended Complaint ¶ 38. Plaintiff offers no argument regarding this claim in her memorandum, see Plaintiff's Fairfield Mem., and the basis for it is unclear to the Court. Thus, the Court finds Plaintiff has waived this issue and conceded, in effect, that summary judgment should be granted to Fairfield as to Count 7. Cf. Rivera-García v. Sistema Universitario Ana G. Méndez, 442 F.3d 3, 7 n.4 (1st Cir. 2006); Saccoccia v. United States, 69 F.Supp.2d 297, 299 (D.R.I. 1999).

Moreover, even disregarding Plaintiff's failure to offer any argument regarding this claim, the Court has already determined that Plaintiff's FMLA claim of retaliation based on Fairfield's termination of her employment cannot succeed. See Discussion section III.A.3.b. supra at 51. Thus, to the extent Count 7 is a retaliation claim, it fails for the reasons already expressed.

[35] In discussing her retaliation claims in her memorandum, Plaintiff includes a heading which suggests that she believes she has also pled a retaliation claim under the RIPFMLA. See Plaintiff's Mem. at 15. If so, she is mistaken. See Amended Complaint ¶ 47.

To the extent that Plaintiff is attempting to allege a claim for wrongful discharge, it fails because "in Rhode Island there is no cause of action for wrongful discharge." Pacheco v. Raytheon Co., 623 A.2d 464, 465 (R.I. 1993); see also Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1188 (1st Cir. 1996)(noting the "unequivocal[]" holding in Pacheco); Henderson v. Tucker, Anthony & RL Day, 721 F.Supp. 24, 27 (D.R.I. 1989)("Rhode Island law ... does not generally recognize wrongful discharge claims by employees at will."). Accordingly, I find that Fairfield's Motion should be granted as to Count 7. I so recommend.

**IV. Counts 8 and 9**

**A. Count 8 (Breach of Contract)**

In Count 8, Plaintiff alleges that Fairfield breached "the express and implied terms and conditions of the understanding and agreement between [Fairfield] and the plaintiff as employer and employee." Amended Complaint ¶ 41. Plaintiff contends that a Salesperson Agreement (the "Agreement") dated February 13, 2003, is a written employment contract. See Plaintiff's Fairfield Mem. at 17; see also Carey Aff., Ex. 2 (Agreement). This contention in untenable.

The Agreement states in the first paragraph that Plaintiff is an employee "at will," Agreement ¶ 1, and that "either party may terminate such employment at any time, with or without cause," id. Plaintiff's at-will status is reiterated in paragraph twelve: "Salesperson's employment with [Fairfield] can be terminated at any time by either party, with or without cause ...." Id. ¶ 12. The Agreement imposes almost no obligations upon Fairfield, but addresses the compensation which the salesperson will receive, see id. ¶¶ 2-3, and the conditions by which the salesperson must abide as part of his or her employment by Fairfield, see id. ¶¶ 4-11. In Paragraph 13, "REMEDIES FOR BREACH," the Agreement only speaks "of a breach or threatened breach of any provision hereof by Salesperson ...." Id. ¶ 13.

This is in contrast to the wording of the previous paragraph which states that "Salesperson's employment with [Fairfield] can be terminated at any time **by either party**, with or without cause ...," id. ¶ 12 (bold added). This is further evidence that the Agreement is not an employment contract, but simply a recitation of the terms on which the salesperson is employed. Finally, the Agreement concludes by stating that it "constitutes the entire agreement between [Fairfield] and Salesperson with respect to the matters addressed herein." Id. ¶ 17.

Plaintiff admitted at her deposition that no Fairfield employee ever promised her a job for a particular period of time:

> Q. So did anyone ever tell you that you would have a management job or any job, for that matter, for a particular period of time, that's the question? We're going to employ you for two years, five years, one year; did anyone state a duration?
>
> A. No.

Plaintiff's Dep. at 34.

When questioned at her deposition about the basis for her breach of contract claim, Plaintiff answered:

> A. They breached the contract by not allowing me my rights.
>
> Q. What rights?
>
> A. Any rights that I'm entitled to.
>
> Q. Is there some right in particular that you believe entitled you to continuing employment?
>
> A. No.

Id. at 124.

Plaintiff argues that Fairfield breached the covenant of good faith and fair dealing contained in its agreement when it denied FMLA entitlement and terminated her from employment for

discriminatory reasons. See Plaintiff's Mem. at 18. However, Plaintiff, as an at-will employee, had no right to continued employment under the Agreement. See DelSignore v. Providence Journal Co., 691 A.2d 1050, 1052 n.5 (R.I. 1997)("[I]n Rhode Island the general rule is that employees like plaintiff who are hired for an indefinite period with no contractual right to continued employment are at-will employees subject to discharge at any time for any permissible reason or for no reason at all."); Roy v. Woonsocket Inst. for Sav., 525 A.2d 915, 917 (R.I. 1987)(noting "the firmly established rule in Rhode Island that a contract to render personal services to another for an indefinite term is terminable at the will of either party at any time for any reason or for no reason at all."); id. at 918 (affirming direct verdict where plaintiff failed to point out anything in the defendant's operations manual or employee handbook that could give rise to a reasonable belief that plaintiff's status at the bank was something other than at-will employee.). This Court finds no basis in the Agreement for any claim pled in the Amended Complaint. Accordingly, Fairfield is entitled to summary judgment on Count 8. I so recommend.

**B. Count 9 (Estoppel)**

In Count 9, Plaintiff alleges that Fairfield "should be estopped to deny their promises and commitments to the plaintiff to follow the policies and procedures set fo[]rth in their personnel manual governing the application of equal treatment to its employees, which the plaintiff relied upon to her detriment." Amended Complaint ¶ 44. Plaintiff asserts that Fairfield's Policy Manual contains a provision promising not to discriminate and to provide equal opportunity to all employees in every aspect of employment.[36] See Plaintiff's Fairfield Mem. at 19. She

[36] Although Plaintiff cites to "Schumacher Deposition, Defendant's Exhibit 5, Fairfield Bates Numbered FFR-000212," Plaintiff's Fairfield Mem. at 19, for the Fairfield Policy Manual, the Court does not find

further asserts that Fairfield's Policy Manual was incorporated into her employment contract and that Fairview's promise not to discriminate became part of her contract. See id. As evidence of the need for application of estoppel, Plaintiff notes that after she complained about Hutnick's discriminatory comments, Hutnick demoted her, denied her FMLA leave, and terminated her. See id.

In support of her argument, Plaintiff cites Robinson v. Board of Trustees of East Central Junior College, 477 So.2d 1352, 1353 (Miss. 1985), for the proposition that "[t]erms of a written contract can by modified by a Policy Hand book, which then becomes part of the contract, when the contract expressly provides that it will be performed in accordance with the policies, rules and regulations of the employer." Plaintiff's Fairfield Mem. at 19. Plaintiff asserts that Paragraph 8(a) of the Agreement incorporates compliance with Fairfield's Policy Manual as an enforceable term of the agreement. See id.

As an initial matter, the holding in Robinson appears to be based on Mississippi law, see Robinson v. Bd. of Trustees of E. Cent. Junior Coll., 477 So.2d at 1353, which this Court does not find to be controlling here. Additionally, Plaintiff overlooks the fact that Paragraph 8(a) of the Agreement only requires the salesperson to "abide by all policies and procedures established by [Fairfield] ...." Agreement ¶ 8(a). There is no corresponding obligation placed upon Fairfield. See id. This weighs against Plaintiff's argument that the policies stated in the Policy Manual were incorporated into the Agreement. Furthermore, the concluding paragraph of the Agreement states that it constitutes the "entire agreement," id. ¶ 17, and that "[i]n the event of any inconsistency or conflict between any

this document in the record. However, presumably Plaintiff is referring to Section 102 (Equal Employment Opportunity) of Fairfield's Policy Manual. See Carey Aff., Ex. 3 at 2 (FFR-000106).

provision of this Agreement and any other publication or policy of [Fairfield] or any other provision hereof, [Fairfield] shall have the sole right to declare which shall control," id. Thus, even if Fairfield's Policy Manual were incorporated into the Agreement (and this Court concludes that it was not), to the extent that Plaintiff contends such incorporation limits Fairfield's freedom of action under the Agreement, Fairfield retains the right to declare which provision controls.

Plaintiff's citation of Stahl v. Sun Microsystems, Inc., 19 F.3d 533 (10th Cir. 1994), for the proposition that a written personnel policy promising non-discrimination creates an enforceable contract right is unpersuasive. See Plaintiff's Mem. at 19. The holding in Stahl was based on Colorado case law, see 19 F.3d at 536, and this Court fails to find any similar holdings by the Rhode Island Supreme Court. Indeed, in Galloway v. Roger Williams University, 777 A.2d 148 (R.I. 2001), the Rhode Island Supreme Court affirmed summary judgment against an at-will employee who claimed that the defendant's failure to reappoint him to his position as dean of admissions gave him a cause of action for negligent misrepresentation, breach of contract, and promissory estoppel, see id. at 149. Plaintiff claims that Galloway is distinguishable from her case because she "had a written contract and a right to continued employment." Plaintiff's Fairfield Mem. at 18. However, the Court has already determined that Plaintiff had no right to continued employment. See Discussion section IV.A. supra at 55. She was an at-will employee who could be terminated at any time with or without cause. See Agreement ¶ 1. Plaintiff's attempt to distinguish Galloway is rejected.

In short, Plaintiff's attempt to import obligations from Fairfield's Policy Manual into the Agreement as against Fairfield fails. Fairfield's Motion for Summary Judgment as to Count 9 should accordingly be granted. I so recommend.

## V. Claims Against Unidentified Defendants

In the caption of her Amended Complaint, Plaintiff also named as defendants "A, B, C: Unknown." Amended Complaint. Plaintiff makes no allegations against these unidentified defendants. See id. "Where a complaint asserting claims against 'John Doe' defendants has not been amended to substitute defendants who are real parties in interest as soon as the identity is known or reasonably should have been known or, in any event, before the close of discovery, such an assertion is mere surplusage and will be disregarded by the Court." Rodriguez v. City of Passaic, 730 F.Supp. 1314, 1319 n.7 (D.N.J. 1990). Accordingly, the claims against Defendants A, B, and C should be dismissed. I so recommend.

**Summary**

## I. Discrimination Claims

### A. Against Fairfield (Counts 1, 2, 4, & 5)

To the extent that Plaintiff's gender and age discrimination claims against Fairfield are based on her demotion, such claims are viable and Fairfield's Motion as to such claims should be denied. To the extent those same claims are based on Plaintiff's termination, such claims fail. Although there is evidence from which a jury could find that the reason given by Fairfield for Plaintiff's termination was pretextual, no jury could rationally conclude from the evidence that the termination was motivated by unlawful sex or age discrimination. This is true regardless of whether Plaintiff's claims are analyzed under the McDonnell Douglas burden shifting framework or the more general mixed motive alternative framework. To the extent that Plaintiff's discrimination claims allege a hostile work environment, such claims fail because she is unable to show that the harassment was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive work environment.

Accordingly, Fairfield's Motion should be denied as to

Counts 1, 2, 4, and 5 to the extent those claims are based on her demotion. To the extent those claims are based on anything other than Plaintiff's demotion, Fairfield's Motion should be granted.

**B. Against CORE (Counts 4 & 5)**

CORE's Motion should be granted as to the age and gender discrimination claims alleged in Counts 4 and 5. Plaintiff has waived these claims by failing to support them with any argument. In addition, CORE never employed Plaintiff, so the claims fail for that reason also. Even if CORE could be considered to have employed Plaintiff, Plaintiff has failed to make out a prima facie case under the McDonnell Douglas framework and also failed to make any showing that these claims can succeed under the alternative mixed motive analysis.

**II. FMLA and RIPFMLA (Counts 3 and 6)**

Plaintiff's FMLA and RIPFMLA claims against both Fairfield and CORE fail because it is undisputed that she could not have returned to work at the earliest until September 13, 2004, well after the expiration of the leave periods provided by these two statutes. Plaintiff's argument that she lost the benefit of Long Term Disability insurance benefits as a result of Fairfield's allegedly unlawful termination of her employment fails because she has proffered no evidence to support this contention. Accordingly, the Motions should be granted as to Counts 3 and 6.

**III. Retaliation Claims**

**A. Count 10 (Retaliation in Violation of Title VII and FMLA)**

**1. Exhaustion of Administrative Remedies**

Fairfield's argument that Plaintiff has failed to exhaust her administrative remedies as to Count 10 is rejected. Although the question is not free from doubt, the Court finds that Plaintiff's complaint of retaliation is reasonably related to and grows out of the discrimination charge which Plaintiff filed with the EEOC and RICHR.

**2. Title VII Retaliation Law**

**i. Protected Activity**

Plaintiff's complaint to Coppa and Lemlar about the statement allegedly made by Hutnick to Plaintiff is protected activity under Title VII.

**ii. Adverse Employment Action**

The adverse employment action taken after Plaintiff complained to Coppa and Lemlar is limited to her demotion and subsequent termination. It does not include the fact that Hutnick wrote a memorandum regarding Plaintiff's complaint and entered it into her personnel file.

**3. Finding Re Title VII Retaliation**

There is insufficient evidence in the record which would allow a factfinder to find by a preponderance of the evidence that either Plaintiff's demotion or termination were the result of retaliatory animus. Accordingly, Plaintiff's retaliation claim under Title VII fails.

**4. Finding Re FMLA Retaliation**

No reasonable factfinder could conclude on the evidence in this case that Plaintiff's termination was in retaliation for submitting medical forms. Therefore, Plaintiff's claim of retaliation in violation of the FMLA cannot succeed.

**5. Finding Re Count 10**

Because Plaintiff's claims of retaliation in violation of Title VII and the FMLA cannot succeed, Fairfield is entitled to summary judgment as to Count 10. Thus, Fairfield's Motion should be granted as to Count 10.

**B. Count 7 ("violation of public policy")**

Fairfield's Motion should be granted because Plaintiff has presented no argument in support of this cause of action. Plaintiff has, thus, waived this issue and conceded that Fairfield is entitled to summary judgment as to Count 7. In

addition, to the extent that Count 7 is a retaliation claim it also fails for the same reason Plaintiff's FMLA retaliation claim fails. To the extent that Count 7 is a claim for wrongful discharge, it fails because in Rhode Island there is no cause of action for wrongful discharge.

**IV. Counts 8 and 9**

**A. Count 8 (Breach of Contract)**

The Court finds no basis in the Agreement for any breach of contract or other claim pled in Count 8. Accordingly, Fairfield is entitled to summary judgment on Count 8.

**B. Count 9 (Estoppel)**

Plaintiff's attempt to import obligations from Fairfield's Policy Manual into the Agreement as against Fairfield fails. Fairfield's motion for summary judgment as to Count 9 should be granted.

**V. Claims Against Unidentified Defendants**

The claims against Defendants A, B, and C should be dismissed.

**Conclusion**

For the foregoing reasons, I recommend that Fairfield's Motion for Summary Judgment be granted as to all counts except Counts 1, 2, 4, and 5. However, as to those four counts, I recommend that Fairfield's Motion be denied only to the extent the claims pled in those counts are based on Plaintiff's demotion. To the extent that the claims pled in Counts 1, 2, 4, and 5 are based on Plaintiff's termination, I recommend that Fairfield's Motion be granted. I further recommend that CORE's Motion for Summary Judgment be granted and that the claims against Defendants A, B, and C be dismissed.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten

(10)[37] days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 8, 2007

[37] The ten days do not include intermediate Saturdays, Sundays, and legal holidays. See Fed. R. Civ. P. 6(a).